**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES L. TALADA III and MELODY LABELLA,

    Plaintiffs,

  v.

CITY OF MARTINEZ, CALIFORNIA; CITY OF MARTINEZ POLICE DEPARTMENT; CHIEF DAVE CUTAIA, Martinez Chief of Police; SERGEANT GARY PETERSEN, a Martinez Police Officer; COMMANDER MARK SMITH, a Martinez Police Officer; CITY OF RENO, NEVADA; CITY OF RENO POLICE DEPARTMENT; CITY OF RENO SWAT TEAM; CHIEF MICHAEL POEHLMAN, Reno Chief of Police; SERGEANT GREG CURRY, a Reno Police Officer; LIEUTENANT MICHAEL WHAN, a Reno Police Officer — SWAT Team; SERGEANT SCOTT DUGAN, a Reno Police Officer — SWAT Team; SERGEANT MICHAEL LESSMAN, a Reno Police Officer — SWAT Team; SERGEANT SEAN GARLOCK, a Reno Police Officer — SWAT Team; SERGEANT KEITH BROWN, a Reno Police Officer — SWAT Team; DETECTIVE MICHAEL TONE, a Reno Police Officer — Arresting Officer; DETECTIVE TOM BROOME, a Reno Police Officer;  GUARDSMARK GP, LLC, a California Corporation and Parent Corporation for Guardsmark, LLC; GUARDSMARK, LLC, a California Corporation; CHARLIE PARKER, a Guardsmark employee and Manager-In-Charge; COLIN MANUEL, a Guardsmark employee and Account Manager; CRISTINA AKESON, a Guardsmark employee and Security Guard; DAVID AKESON, an individual; CENTRAL CONTRA COSTA SANITARY DISTRICT ("CCCSD"), a Public Entity; RANDALL MUSGRAVES, Director of Administration and an employee of CCCSD; SHARI DEUTSCH, Safety and Risk Management Administrator and employee of CCCSD; RUTH BENNETT, Safety and Risk Management Technician and employee of CCCSD; CATHRYN FREITAS, Human Resources Director at

No. C 08-02771 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

| | |
|---|---|
| 1 | CCCSD; STEVEN LAREN, a Security Officer at CCCSD; JAMES M. KELLY, General Manager at CCCSD; ROBERT J. KOCHLY, Contra Costa County District Attorney; MARK PETERSON, Contra Costa County Senior Deputy District Attorney Sexual Assault Division; WILLIAM CLARK, Contra Costa County Deputy District Attorney Special Prosecutions Unit; ANDREA MORELAND, Contra Costa County Senior Investigator; CONTRA COSTA COUNTY OFFICE OF THE DISTRICT ATTORNEY, a public entity; CITY OF SACRAMENTO, CALIFORNIA; CITY OF SACRAMENTO POLICE DEPARTMENT; CHIEF RICK BRAZIEL, Sacramento Chief of Police; SERGEANT RICHARD GAUTIER, a Sacramento Police Officer; and DOES 1 through 100, inclusive, Defendants. |

## INTRODUCTION

In this civil-rights action arising from the arrest and subsequent release of plaintiff James L. Talada III, a man falsely identified as the infamous "NorCal Rapist," plaintiff Talada and his girlfriend plaintiff, Melody LaBella, allege 25 claims against 39 named defendants and 100 unnamed Does. Of the 39 named defendants, 28 have been dismissed from this action pursuant to stipulations with plaintiffs. The remaining named defendants move to dismiss on various grounds. For the reasons stated below, defendants' motions are **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

This action arises from the arrest and subsequent release of plaintiff Talada, a man falsely identified as the infamous NorCal Rapist by an anonymous police informant who plaintiffs allege is defendant Cristina Akeson. On October 15, 2008, plaintiffs filed a first amended complaint alleging the following well-pled facts which are accepted as true for the purposes of this order.

Plaintiff Talada, a real-estate agent, and plaintiff LaBella, an engineer for Central Contra Costa Sanitary District (CCCSD), have been in a personal relationship for some time. CCCSD outsourced security personnel from defendant Guardsmark. Defendant Cristina Akeson worked for Guardsmark as a security guard at CCCSD. With assistance from defendant David Akeson,

2

Cristina Akeson allegedly sexually harassed, stalked, and defamed plaintiff LaBella. This included initiating intimate conversations, seeking a menage-a-trois, giving her gifts such as a life-sized baby doll with blond hair and blue eyes like plaintiff LaBella and even sexual paraphernalia. And this was all in violation of defendant Guardsmark's policy against fraternization between customers and security personnel. In an attempt to cut off contact with Cristina Akeson, plaintiff LaBella got a restraining order.

According to the complaint, Cristina Akeson had been previously fired from other jobs for predatory behavior and she was caught stealing by CCCSD. Before plaintiff LaBella discovered Cristina Akeson's predatory workplace history, plaintiff LaBella allowed her to stay at her home. Cristina Akeson made sexual advances, such as leaving a whip on plaintiff's bed, and David Akeson delivered a bottle of "holy water" to rid plaintiff Talada's "evil spirt" from plaintiff LaBella's house. During one of plaintiffs' break-ups, defendant Cristina Akeson told co-workers that plaintiff Talada was a "bad" person and plaintiff LaBella was lucky to be rid of him.

Plaintiffs allege that Cristina Akeson sent an anonymous letter to a CCCSD employee saying that plaintiffs were under investigation for theft, rape, and murder. Plaintiffs also allege that Cristina Akeson falsely reported in an anonymous letter to the Martinez Police Department that plaintiff Talada was the NorCal Rapist.

After receiving the anonymous letter, defendant Officer Mark Petersen, a police officer for the Martinez Police Department, obtained an arrest warrant. Around February 5, 2007, the Martinez Police Department contacted the Sacramento and Reno Police Departments and asked them to respond to an arrest warrant obtained by defendant Petersen. The Martinez Police Department sought plaintiff Talada, who they suspected as the NorCal Rapist, a serial rapist who had been a fugitive for over fifteen years. The NorCal Rapist was alleged to have raped numerous women in Northern California since the 1990's. The NorCal Rapist was alleged to be a man in his mid-30's or early 40's, between 5'8" and 5'10" in height, weighing between 200 to 300 pounds, with a pot belly, and tattoos and scars on his forearm and forehead. Plaintiff Talada, on the other hand, was 5'10" and weighed 175 pounds, and he did not have a pot belly or

3

1  scars. On February 5, 2007, plaintiff Talada was arrested in Reno by the Reno Police
2  Department and Reno SWAT Team who were responding to the Martinez Police Department's
3  orders to arrest plaintiff Talada under a warrant. During the course of the arrest, the Reno
4  police ordered him to the ground with rifles pointed at him, handcuffed him, twisted his thumb,
5  and detonated a flash-bang grenade close to him. During an interrogation that day, Reno officers
6  looked at plaintiff Talada's arms and verified that he lacked any tattoos or scars. Defendant
7  Talada thereafter spent multiple days in solitary confinement in Reno without being read his
8  Miranda rights and while being denied access to an attorney. Defendant Talada was searched by
9  the police and had his DNA involuntarily taken. On February 9, 2007, plaintiff Talada was
10 released in Reno without any charges after plaintiff Talada's DNA was found to not have
11 matched that of the NorCal Rapist. Plaintiff Talada alleges that had the police immediately
12 verified that Talada lacked any tattoos or scars or any other physical characteristics associated
13 with the NorCal Rapist, then he would never have been unlawfully arrested, imprisoned, and
14 unconstitutionally violated.

15      On March 11, 2008, plaintiff Talada filed suit in state court. On June 4, the action was
16 removed to federal court. On October 15, plaintiff Talada filed a first amended complaint adding
17 plaintiff LaBella and alleging 25 claims against defendants. Talada individually alleges the first,
18 second, third, fifth, and fifteenth claims for: (i) false arrest/imprisonment; (ii) assault and
19 battery; (iii) negligence; (iv) negligent hiring, retention, supervision, training; and (v) civil
20 conspiracy and collusion. LaBella individually alleges the fourth, sixth, and sixteenth claims
21 for (i) negligence; (ii) negligent hiring, retention, supervision, training; and (iii) civil conspiracy
22 and collusion. Talada and LaBella jointly allege the seventh through fourteenth and seventeenth
23 through twenty-fifth claims for (i) intentional misrepresentation and nondisclosure of material
24 facts; (ii) negligent misrepresentation and nondisclosure of material fact; (iii) intentional
25 infliction of severe emotional distress; (iv) negligent infliction of severe emotional distress;
26 (v) conversion of personal property; (vi) trespass; (vii) intrusion upon seclusion, public
27 disclosure of private facts, and false light; (viii) unlawful and unfair business practice violation
28 of California Business and Professions Code Section 17200; (ix) violation of civil rights,

4

California Civil Code Section 52.1; (x) violation of civil rights under the Constitution of the state of Nevada; (xi) violation of civil rights protected under federal law, 42 U.S.C. 1983, 1985, 1986 and 1988, and under the constitutions of the states of California and Nevada; (xii) defamation of character; (xiii) exemplary and punitive damages; (xiv) declaratory relief — joint and several liability; (xv) declaratory relief — vicarious liability; (xvi) preliminary injunctions; and (xvii) permanent injunctions.

Three motions to dismiss have been filed on behalf of the remaining defendants in this action: (1) City of Martinez, City of Martinez Police Department, Chief Dave Cutaia, Sergeant Gary Petersen, Commander Mark Smith; (2) Guardsmark GP, LLC, Guardsmark, LLC, Charlie Parker, and Colin Manuel; and (3) Cristina Akeson and David Akeson. All three motions are addressed below. In their oppositions, plaintiffs have withdrawn certain claims, and those claims are not addressed in this order.

## ANALYSIS

### 1. LEGAL STANDARD.

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007).[1]

### 2. INDIVIDUAL DEFENDANTS.

#### A. Defendant City of Martinez Police Department.

The Martinez defendants contend plaintiffs' first amended complaint must be dismissed as to the Martinez Police Department on the ground that it is not an entity capable of being sued

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities in this order.

5

1   because it is a department within the City of Martinez, not an entity in and of itself.  No legal

2   authority is cited in support of this contention.  The Ninth Circuit has held that police

3   departments in California are public entities pursuant to Section 811.2 and hence may be sued in

4   federal court pursuant to FRCP 17(b).  *Shaw v. State of California Dep't of Alcoholic Beverage*

5   *Control*, 788 F.2d 600, 605 (9th Cir. 1986).  Accordingly, this attack fails.

**B.     Defendants Martinez Police Chief Cutaia and Commander Smith.**

The Martinez defendants contend plaintiffs' first amended complaint must be dismissed as to Martinez Police Chief Cutaia and Commander Smith because no factual allegations of personal involvement by either defendant have been pled.

Of the 347 paragraphs of factual allegations in plaintiffs' 90-page first amended complaint, the following four contain specific references to one or both of these defendants (emphasis added):

> 7.  Plaintiff Talada is informed and believes and thereupon alleges, that at all times relevant herein *Defendant CHIEF DAVID CUTAIA (hereinafter "Cutaia")* is a resident of the State of California, is at all times mentioned herein a police officer for Defendant MPD, hired to help MPD preserve peace and order and obligated to protect and respect the civil rights of persons he encounters in the course of his professional duties, and is the Chief of Police of Defendant MPD, with supervisory authority and control over all police officers working at the MPD — such officers being directly and proximately liable for the harms done to plaintiff Talada. This Defendant is domiciled in the State of California, and this court may properly exercise jurisdiction over this Defendant.

\*          \*          \*

> 9.  Plaintiff Talada is informed and believes and thereupon alleges, that at all times relevant herein *Defendant COMMANDER MARK SMITH (hereinafter "Smith")* is at all times mentioned herein a police officer for Defendant MPD, hired to help MPD preserve peace and order and obligated to protect and respect the civil rights of persons he encounters in the course of his professional duties, and is a supervising officer with supervisory authority and control over police officers working beneath his command at the MPD — such officers being directly and proximately liable for the harms done to plaintiff Talada.  This Defendant is domiciled in the State of California, and this court may properly exercise jurisdiction over this Defendant.

\*          \*          \*

6

> 50. Defendant Martinez supervises Defendant MPD, who is *headed by Defendant Cutaia, who in turn supervises Defendant* Gary Peterson, *Mark Smith*, and Doe Defendants.
>
> 51. *Defendants* Martinez, MPD, *Cutaia*, Gary Peterson, *Mark Smith*, and/or Doe Defendants employed by Martinez have supervisory power, or otherwise directed, motivated, employed, or had a similar type of master-servant, principal [sic]-agent relationship with Defendants Reno, RPD, SWAT, Sacramento, SPD, CCCDA, and all named and Doe Defendants employed by Defendants Reno, RPD, SWAT, Sacramento, SPD and CCCDA in this Complaint, so far as the effectuation of the warrant for, search and seizure, arrest, imprisonment, and other actions against Plaintiffs.

Plaintiffs maintain these allegations as to defendants Cutaia and Smith suffice because they supervise other police officers. Plaintiffs argue that the failure of supervisory police officers to properly supervise is a ground for liability, for example, for a claim of negligent supervision under 42 U.S.C. 1983. "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

### C. Defendant David Akeson

Plaintiffs allege few facts tying defendant David Akeson to any of their claims. And those few facts are tenuous at best to support a claim against David Akeson. For instance, there are no facts supporting a claim that defendant David Akeson defamed plaintiffs. Plaintiffs summarily allege that Cristina Akeson sent a signed email from David Akeson's email account to another retired coworker (an email which is not alleged to relate at all to the claims at issue) that David Akeson delivered "holy water" to rid plaintiff Talada's "evil spirit" from plaintiff LaBella's house, and that Cristina and David Akeson conspired to sexually harass, defame, and stalk plaintiff LaBella (Compl. ¶¶ 60, 67, 82). Plaintiffs' opposition even acknowledges that the acts at issue are those primarily of Cristina Akeson and she is the one accused of sending the informant letter to the Martinez defendants (Opp. at 2). Accordingly, all claims against defendant David Akeson are **DISMISSED WITHOUT LEAVE TO AMEND**.

7

### 3. PLAINTIFF TALADA'S AND LABELLA'S STATE CLAIMS.

#### A. First Claim: False Arrest.

##### *(i) Martinez defendants.*

Plaintiff Talada's first state claim alleges false arrest against all defendants. False arrest is the unlawful arrest or detention of a person without a warrant or by an illegal warrant. Here, plaintiff alleges that defendant officer improperly obtained an arrest warrant without probable cause. Plaintiff alleges the arrest warrant was based on information provided by a dubious informant and the Martinez defendants failed to corroborate or investigate the information. Plaintiff also alleges his physical description is significantly different from that of the NorCal Rapist. The NorCal Rapist was reportedly between 5'8" and 5'10" in height, weighing between 200 to 300 pounds, with a pot belly, and has scars and/or tattoos on his body; he also drove a white sports utility vehicle. On the other hand, plaintiff was 5'10", weighed 170 pounds, without a pot belly or scars; plaintiff did not drive a white sports utility vehicle. Whether defendants had probable cause to arrest plaintiff is disputed, but a complaint should not be dismissed for a failure to state a claim unless it appears beyond a doubt that he can prove no set of facts in support of his claim. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). At this point, plaintiff's allegations are sufficient to state a claim.

##### *(ii) Defendants Guardsmark and Akeson.*

Although a false arrest claim is asserted against defendants Guardsmark and Akeson, plaintiff Talada does not allege any facts stating that defendants Guardsmark and Akeson falsely arrested him. Notably, plaintiff does not even address the claim for false arrest in the opposition against these defendants. Because plaintiff fails to allege facts to support a claim of false arrest against them and wholly fails to revive any claim on the opposition, plaintiff's first claim of false arrest against defendants Guardsmark and Akeson is **DISMISSED WITHOUT LEAVE TO AMEND**.

#### B. Second Claim: Assault and Battery.

Plaintiff Talada asserts his second claim of assault and battery against all defendants. To prevail on a claim for assault and battery against a police officer, plaintiff must establish that the officer used unreasonable force against him. *See Edson v. Anaheim,* 63 Cal. App. 4th 1269,

8

1273 (1998). Plaintiff alleges that defendants caused him "to be threatened and/or caused to be used, excessive and aggravated force without lawful excuse and justification" and defendants "caused to be committed, an actual, aggravated physical touching and battery." Plaintiff alleges the Reno defendants, who were dismissed by stipulation, arrested him. Plaintiff does not allege that the remaining defendants were present during the arrest. In his opposition, plaintiff argues that the Martinez defendants' issuance of a warrant without probable cause and directing of the Reno defendants to arrest him directly and proximately caused the assault and battery. This is counterfeit logic, for when officer A obtains an arrest warrant, officer A is not directing officer B, who happens to execute it, to beat up anyone. Furthermore, plaintiff does not even attempt to oppose the motions to dismiss by defendants Guardsmark and Akeson for this claim. Plaintiff Talada's second claim for assault and battery against all defendants is **DISMISSED WITHOUT LEAVE TO AMEND**, there being no possibility of a case as to this claim.

### C. Third, Fourth, Fifth and Sixth Claims: Negligence and Negligent Hiring, Retention, Supervision, and Training.

#### *(i)* *Martinez Defendants.*

Plaintiff Talada asserts claims of negligence and negligent hiring, retention, supervision, and training against the Martinez defendants. The Martinez defendants move to dismiss these claims on the ground that the claims lack a statutory basis. Section 815.2(a) of the California Government Code, however, is one such statute. Section 815.2 "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment." *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1180 (2003). A claim of false arrest and imprisonment is sufficient to support allegations of negligent acts, including negligent hiring and training. *See White v. Superior Court*, 225 Cal. App. 3d 1505, 1511 (1990). Given the foregoing statutory authority for a claim against a California government entity, this order finds the Martinez defendants' argument unpersuasive. Consequently, the Martinez defendants' motion to dismiss plaintiff's negligence claims is **DENIED**.

9

### *(ii)* *Defendants Guardsmark.*

Both plaintiffs assert claims of negligence and negligent hiring, retention, supervision and training against defendants Guardsmark, the security guard company. Defendant Guardsmark contends that it is not liable for negligence under the doctrine of respondeat superior. An employer may be liable for torts its employee commits while acting within the scope of his employment under the doctrine of respondeat superior. Under California law, the test to determine whether an employee's acts were committed during the scope of employment includes (1) whether the act was either required by the employer or "incidental" to the employee's duties; and (2) whether the employee's misconduct was reasonably foreseeable by the employer (even if not "required" or "incidental"). *See Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481–82 (2003); *Alma W. v. Oakland Unified School Dist.*, 123 Cal. App. 3d 133, 139 (1981). Defendants argue that plaintiffs' claims fail to meet this test.

To support their claim that defendants acted within the scope of their employment, plaintiffs allege defendant Cristina Akeson is a security guard for defendant Guardsmark and that defendants owed a duty of care to maintain their safety and security and to ensure reasonable hiring, supervision, training and retention. Plaintiffs also allege that defendants had "actual and/or constructive notice and knowledge of the propensities of [defendant Cristina Akeson] to commit the above described acts to abuse their position and authority" (Compl. ¶ 159). Plaintiffs allege that defendant Cristina Akeson, for example, had a "history of being sexually harassing, stalking, and/or defaming" (Compl. ¶ 60).

Nevertheless, it is difficult to fathom that defendant Cristina Akeson's harassing conduct falls within the scope of her employment. Ordinarily, this would be dismissed at the pleading stage. One circumstance that counsels against this is that the harassee was a customer of Guardsmark and arguably at the pleading stage Cristina Akeson was using her job to harass LaBella and her employer was arguably on notice thereof. It is one further step removed that the letter accusing plaintiff Talada of being the NorCal Rapist was connected to the harassment scheme directed at LaBella. While all the foregoing seems like a stretch, it is sufficiently, if

10

barely, within the realm of possibility under the liberal pleading stage to let this claim go forward.

### *(iii)* *Defendant Akeson.*

Both plaintiffs also assert negligence claims against defendant Cristina Akeson. Akeson asserts that the negligence claims should be dismissed because plaintiffs failed to show any statutory basis for the negligence claims, but Akeson has not cited to any authority that a statutory basis is required to assert a claim against her. In the absence of legal authority, defendant Akeson's motion to dismiss on this basis is **DENIED**.

### D. Ninth Claim: Intentional Infliction of Emotional Distress.

Plaintiffs Talada and LaBella assert a claim of intentional infliction of severe emotional distress against defendants. "The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Plaintiffs allege in conclusory fashion that defendants' "conduct described in this Complaint was extremely severe and outrageous and done with the intent of causing, or reckless disregard to the probability of causing, severe emotional distress." Plaintiffs, however, fail to allege what specific conduct is at issue for this claim. While one only needs to provide a short and plain statement to support a claim, that short and plain statement must give fair notice of the claim. Plaintiffs' allegations with respect to this claim do not provide such notice. Accordingly, both plaintiffs' ninth claim against all defendants is **DISMISSED**.

### E. Tenth Claim: Negligent Infliction of Emotional Distress.

There is no independent tort of negligent infliction of emotional distress under California law. *See Delfino v. Agilent Technologies, Inc.* 145 Cal. App. 4th 790, 818 (Cal. App. 6th Dist. 2006). As amendment would be futile, both plaintiffs' tenth claim of negligent infliction of emotional distress is **DISMISSED WITHOUT LEAVE TO AMEND**.

### F. Eleventh, Twelfth and Thirteenth Claims: Conversion, Trespass, and Invasion of Privacy.

Plaintiff Talada asserts a claim of conversion, trespass, and invasion of property against the Martinez defendants. The Martinez defendants assert this claim should be dismissed because defendants' actions were based on a valid search and arrest warrant. As stated, plaintiff Talada sufficiently alleges the arrest warrant was invalid, subject to proof. Accordingly, the Martinez defendants' motion to dismiss plaintiff Talada's eleventh, twelfth, and thirteenth claims is **DENIED**.

The Martinez defendants also argue that plaintiff LaBella's remaining state tort claims must be dismissed because she failed to file a state tort claim and plaintiff Talada's state tort claim notice cannot serve as proper notice for LaBella's state claims. Plaintiff LaBella's state law tort claims against the Martinez defendants are barred unless she presented them to the Martinez defendants before commencing suit. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Section 911.2 of the California Government Code requires timely notice to a public entity before legal action is commenced, and "such claims must be presented to the government entity no later than six months after the cause of action accrues." *Shirk v. Vista Unified School Dist.*, 42 Cal. 4th 201, 205 (Cal. 2007). Plaintiff must allege facts demonstrating or excusing her failure to comply with filing a claim. Plaintiff LaBella does not allege that she filed a claim with the Martinez defendants within six months after her state tort causes of action accrued. Accordingly, plaintiff LaBella's remaining state law tort claims — twelfth and twentieth causes of action — as asserted against the Martinez defendants are **DISMISSED**.

### G. Twentieth Claim: Defamation.

#### *(i) Martinez defendants.*

As discussed in section 3.F. above, plaintiff LaBella's twentieth claim for defamation against the Martinez defendants is **DISMISSED**.

With respect to plaintiff Talada's defamation claim, the Martinez defendants argue that they are shielded by immunity under Sections 818.8 and 822.2 of the California Government Code. Statutory immunity of governmental entities for misrepresentation under the California

12

1  Tort Claims Act is limited to misrepresentations of a financial or commercial character.
2  Contrary to the Martinez defendants' contention, plaintiff is not barred from asserting a claim of
3  defamation. This claim is not financial or commercial in nature and, therefore, defendants are
4  not entitled to the statutory immunity under Sections 818.8 and 822.2.

5  The Martinez defendants also argue that plaintiff failed to plead any facts that they
6  knowingly and intentionally publicized false statements about Talada without reasonable ground
7  to believe them to be true. To the contrary, plaintiff Talada alleges the Martinez defendants
8  intentionally and knowingly made defamatory statements. For instance, plaintiff alleges that
9  defendant Peterson told others that he was totally sure that Talada was the NorCal Rapist.
10 Plaintiff also alleges that the Martinez defendants issued public statements, including publishing
11 in newspapers, that good legal grounds existed for Talada's arrest as the suspected NorCal
12 Rapist. Besides alleging he is not the NorCal Rapist, plaintiff claims the arrest warrant that
13 ultimately led to his arrest was invalid because it was allegedly obtained without probable cause
14 and in the absence of corroboration or investigation. At the pleading stage, this is enough to
15 support a claim for defamation and to allege that defendants knowingly and intentionally
16 publicized false statements without reasonable grounds to believe they were true in light of an
17 arrest warrant they allegedly knew or suspected was improper. The Martinez defendants' motion
18 to dismiss plaintiff Talada's twentieth claim for defamation is **DENIED**.

19 *(ii)   Defendants Guardsmark and Akeson.*

20 Arguing that the defamation claim should be dismissed, defendant Cristina Akeson
21 asserts that the amended complaint does not state any facts to support the claim. In particular,
22 defendant contends that plaintiffs only tie her to the claim based on the existence of an
23 anonymous letter for which there are no substantive facts linking it to her. The complaint alleges
24 that defendant Cristina Akeson sent LaBella's co-workers anonymous written letters saying that
25 LaBella shirked her duties, was untrustworthy, and failed to work during January 2007, and that
26 both plaintiffs were under investigation for theft, rape, and murder. Although the letters were
27 anonymous, plaintiff alleges that defendant Cristina Akeson sent them. At this stage of a motion
28 to dismiss, all allegations in the complaint must be accepted as true.

Defendant Cristina Akeson's motion to dismiss both plaintiffs' twentieth claim for defamation is **DENIED**.

### H. Martinez Defendants' Assertion of State Law Immunity.

The Martinez defendants claim immunity from state-law liability. "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6.

Two other code sections also govern the scope of public officers' liability for common-law torts under California law. Section 815.2(a) of the California Government Code provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." Section 820(a) of the California Government Code provides that "[e]xcept as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person." Accordingly, the California Court of Appeal has explained that this establishes two principles:

> (1) unless they are granted specific statutory immunity, a public entity and its employees are liable in tort for the same causes of action that could be brought against a private person; and
>
> (2) absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party.

*Lueter v. California*, 94 Cal. App. 4th 1285, 1300 (2002). Furthermore, "California law denies immunity to police officers who use excessive force in arresting a suspect." *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002). Immunity also does not extend to false arrest and false imprisonment claims. Cal. Gov. Code § 820.4; *Asgari v. City of Los Angeles*, 15 Cal. 4t 744, 752 (1997). Accordingly, the Martinez defendants' assertion that they are immune from suit for false arrest and other torts flowing therefrom is incorrect.

The Martinez defendants also assert immunity under California Government Code Section 820.4, which provides "[a] public employee is not liable for his act or omission,

exercising due care, in the execution or enforcement of any law." In asserting their negligence claims, plaintiffs allege there was not due care. Section 820.4, therefore, does not provide immunity for the Martinez defendants. Because the Martinez defendants cannot establish that their employees are immune from liability based on the facts plaintiffs allege, their immunity defenses fail at the pleading stage. Cal. Gov. Code § 815.2(b).

**4.     PLAINTIFF TALADA'S AND LABELLA'S FEDERAL CLAIMS.**

   **A.     Nineteenth Claim:  Violation of Civil Rights.**

      *(i)     LaBella's Claims under 42 U.S.C. 1983.*

Plaintiff LaBella alleges all defendants, except David Akeson, violated her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. 1983. Section 1983 is not a source of substantive rights so plaintiff LaBella must allege she was deprived of federal rights secured by the constitution. The complaint states:

> P LaBella's civil rights were violated as indicated in the above paragraphs, particularly with respect to her rights of privacy, right against unlawful search and seizure, due process rights, right to be safe in her person and at her place of work, and property rights. . . .

(Compl. ¶ 294). These allegations are merely conclusory legal conclusions rather than factual allegations. For example, plaintiff has not even stated what First Amendment right (*e.g.*, freedom of religion) was violated much less stated facts to support a violation of any First Amendment right. Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which she bases her claim, plaintiff must set out sufficient factual matter to outline the elements of her claim. Plaintiff LaBella's nineteenth cause of action asserting violations of her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under Section 1983 is **DISMISSED**.

      *(ii)     Talada's Claims under 42 U.S.C. 1983*

         **(1)     Martinez Defendants.**

            *(a)     Monell claim.*

The Martinez defendants assert plaintiff cannot set forth facts to support a Section 1983 claim, because a municipality cannot be held liable under Section 1983 on a respondeat superior

15

theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). When execution of a government's policy or custom inflicts an injury, the public entity is liable under Section 1983. *Ibid.* Plaintiff alleges that defendants had a policy and practice of employing and retaining employees who had propensities for abusing authority, maintained grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the unlawful conduct of employees, including with respect to illegal acts, and inadequately supervised, trained and controlled their employees. It is well-established that "a city can be liable under [Section] 1983 for inadequate training of its employees." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff's allegations as to defendants' policies that led to injury, while bare, are sufficient at the motion to dismiss stage of litigation. "In this circuit, a claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988).

### *(b)     Qualified Immunity.*

A determination as to an officer's entitlement to qualified immunity involves a two-pronged inquiry. *First*, a determination whether the factual allegations, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. The first prong mirrors the substantive summary judgment inquiry on the merits of the constitutional claim. *Second*, an inquiry into whether the plaintiff alleges a deprivation of a constitutional right and was that right clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry is wholly objective, and defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant. *Sorrels*, 290 F.3d at 970.

The Martinez defendants argue they are immune from liability under qualified immunity because officer Peterson was reasonable in requesting the arrest warrant. The Martinez defendants also argue that Talada's assertions that he was not in the same places as the NorCal Rapist does not negate probable cause. Plaintiff Talada contends the warrant was obtained without probable cause or in other words the officer was not objectively reasonable in his conduct. While a ruling on the issue of qualified immunity should be made early in the proceedings, based on the four corners of the complaint, this order cannot conclude it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted and thus this order is unable to resolve this issue in the defendants' favor at the motion to dismiss stage of litigation. Accordingly, the Martinez defendants' motion to dismiss plaintiff's federal causes of action on this basis is **DENIED**.[2]

### (2) Defendants Guardsmark and Akeson.

In their nineteenth cause of action, plaintiffs assert violation of their civil rights under 42 U.S.C. 1983, which provide a cause of action for deprivations of federal rights by persons acting under the color of state law. Plaintiffs' federal claims are predicated on the theory that defendants are state actors acting on behalf of a government body.

In some circumstances, private parties may be considered state actors for Section 1983 purposes. They are not state actors unless "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. Whether such a 'close nexus' exists depends on whether the

---

[2] The Martinez defendants request judicial notice of matters of public record, including Talada's government tort claim, the complaints, and search and arrest warrants. Under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record without converting a 12(b)(6) motion to a summary judgment motion. *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Defendants acknowledge that the allegations set forth in defendant Petersen's affidavit presented to obtain the warrant cannot be considered for the truth of the matters asserted therein to the extent they are disputed. In their opposition, plaintiffs state the arrest warrant was secured on the basis of false statements or misleading omissions. It is unclear from the opposition what the false statements were. Contrary to the Martinez defendants' assertion, it is also not clear from the complaint whether plaintiff Talada disputes the facts presented in defendant Petersen's affidavit presented to obtain the warrant. In the complaint, plaintiff alleges the warrant was based on information from an informant that was not properly corroborated. The complaint also states the defendants "included unverified and false information in an anonymous letter and/or in a warrant" (Compl. ¶ 101). In an abundance of caution, this order declines the invitation to consider the allegations set forth in the affidavit for their truth in a motion to dismiss.

1  State has exercised coercive power or has provided such significant encouragement, either overt
2  or covert, that the choice must in law be deemed to be that of the State." *American Mfrs. Mut.*
3  *Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

4  CCCSD outsourced security personnel from Guardsmark, including defendant Cristina
5  Akeson. Plaintiffs allege that defendants Guardsmark and Akeson "are agents of public entities
6  and are performing duties at CCCSD, thereby having stepped into the role of a state actor and
7  performing the typically public governmental functions of providing security for a public entity.
8  Thus, Security Ds are state actors for all intents and purposes" (Compl. ¶ 292). A plausible
9  argument may be made that a security guard employed as an agent by the state acted under color
10 of state law or as a private security guard she was given the authority of state law. *See Reed v.*
11 *Philadelphia Hous. Auth.,* 372 F. Supp. 686, 689 (E.D. Pa. 1974) ("assault by a security guard
12 employed by a state agency can be treated in the same manner as an assault by a police officer").
13 As all inferences must be drawn in favor of plaintiffs at the stage of a motion to dismiss,
14 plaintiffs have adequately pled that defendants Guardsmark and Akeson are state actors.
15 Defendants' motion to dismiss on this basis is **DENIED**.

16           **B.**     **Claims under the United States Constitution.**

17                 *(i)*     *First Amendment.*

18 Plaintiff Talada's First Amendment claim suffers from the same deficiency as plaintiff
19 LaBella's claim. Plaintiff Talada merely asserts that he was deprived of his First Amendment
20 right, but he does not allege any facts to support this bare assertion. Plaintiff Talada's First
21 Amendment claim is **DISMISSED**.

22                 *(ii)*     *Fourth and Fourteenth Amendments.*

23 To the extent, plaintiff asserts claims under the Fourth and Fourteenth Amendments
24 based on any alleged excessive force used during the arrest by the Reno defendants, plaintiff's
25 claim fails for the same reasons stated above regarding the assault and battery claim. The
26 remaining defendants cannot logically be responsible for the amount of force used by the
27 arresting Reno officers. Accordingly, plaintiff's claims under the Fourth and Fourteenth
28 Amendment as to excessive force are **DISMISSED**.

18

### *(iii)* *Fifth Amendment.*

Plaintiff Talada alleges a violation of his rights under the Fifth Amendment. The Fifth Amendment due process clause and equal protection component apply only to actions of the federal government and not actions of local governments. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Plaintiff does not allege that any defendants are federal actors. Accordingly, plaintiffs have failed to state a claim alleging a violation of the Fifth Amendment. Because plaintiff cannot cure the defect in their Fifth Amendment claim, it is **DISMISSED WITHOUT LEAVE TO AMEND**.

### *(iv)* *Eighth Amendment.*

Plaintiffs also allege a violation of their rights under the Eighth Amendment. An allegation that the use of excessive force during an arrest violated the Eighth Amendment right not to be subjected to cruel and unusual punishment does not state a claim on which relief can be granted. The Eighth Amendment does not apply until after there has been an adjudication of guilt. *See Bell v. Wolfish*, 441 US 520, 535 (1979). Plaintiff Talada was released a few days after his arrest and was never subject to an adjudication of guilt. Plaintiff Talada's Eighth Amendment claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### C. Claims under 42 U.S.C. 1985 and 1986.

The victim of a conspiracy has a cause of action against one or more of the conspirators under 42 U.S.C. 1985. A claim under Section 1985 prohibits conspiracies that interfere with certain civil rights. A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient. The amended complaint here contains legal conclusions but fails to allege any facts to support a claim of conspiracy. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

"Section 1986 imposes liability on every person who knows of an impending violation of Section 1985 but neglects or refuses to prevent the violation. A claim can be stated under Section 1986 only if the complaint contains a valid claim under Section 1985." *Id.* at 626.

1  Because plaintiffs fail to state a claim under Section 1985, their claim under Section 1986 also
2  fails. Accordingly, both plaintiffs' claims under Sections 1985 and 1986 are **DISMISSED**.

### 5. PLAINTIFF TALADA'S AND LABELLA'S CLAIMS FOR RELIEF.

Defendant Akeson moves to strike plaintiffs' twenty-first through twenty-fifth causes of action because the purported causes of action are remedies that are more appropriately addressed in a prayer for relief. Plaintiffs concede that these causes of actions are remedies but contend they were inadvertently mislabeled. Accordingly, plaintiffs' twenty-first through twenty-fifth claims are **DISMISSED**.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART**. Within **FOURTEEN CALENDAR DAYS**, plaintiffs may file a motion on a normal 35-day track seeking to cure the foregoing deficiencies (except as to claims dismissed without leave to amend) and appending to the motion a proposed amended complaint. The motion should explain why each stab at stating a claim is effective. Leave to amend is otherwise denied. There shall be no other motion practice directed at the pleadings. Counsel should await summary judgment to present their further points.

**IT IS SO ORDERED.**

Dated: February 12, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE