1  John F. Henning, Jr. (CA Bar No. 39968)
   John F. Henning III (CA Bar No. 188416)
2  HENNING & HENNING
3  244 California Street, Suite 612
   San Francisco, CA 94111
4  Tel: (415) 255-7675
   Fax: (415) 255-7676
5  Email: henninglawfirm@hotmail.com

6
   Attorney for Plaintiffs
7  JAMES L. TALADA, III and MELODY LaBELLA

8

9              UNITED STATES DISTRICT COURT

10       FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    (SAN FRANCISCO)

12

13  **JAMES L. TALADA III and**

14  **MELODY LABELLA, PLAINTIFFS.**            CASE NO.  C-08-02771 WHA

15       **v.**

16  **CITY OF MARTINEZ, CALIFORNIA; CITY**

17  **OF MARTINEZ POLICE DEPARTMENT;**         **PLAINTIFFS' SECOND**
                                                **AMENDED COMPLAINT FOR**
18  **CHIEF DAVE CUTAIA, Martinez Chief of**   **DAMAGES, DECLARATORY AND**
                                                **INJUNCTIVE RELIEF**
19  **Police; SERGEANT GARY PETERSON, a**

20  **Martinez Police Officer; COMMANDER MARK**
                                                **JURY TRIAL DEMANDED**
21  **SMITH, a Martinez Police Officer;**

22  **GUARDSMARK GP, LLC, a California**

23  **Corporation and Parent Corporation for**  **TRIAL DATE:  OCT 26, 2009**
                                                 **TIME: 7:30 AM**
24  **Guardsmark, LLC; GUARDSMARK, LLC, a**     **COURTROOM 9, 19TH FL.**
                                                 **HON. WILLIAM H. ALSUP**
    **California Corporation; CRISTINA AKESON, a**
25
    **Guardsmark employee and security guard; and**
26
    **DOES 1 through 100, inclusive,**
27
    **DEFENDANTS.**
28

                              1

1

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

2

PLAINTIFFS AND EACH OF THEM HEREBY DEMAND A JURY TRIAL IN THIS

3

MATTER.  COME NOW PLAINTIFFS JAMES LEONARD TALADA III and MELODY

4

LABELLA who allege based on information and belief that each and all the following are true

5

and correct to the best of their knowledge at all times relevant herein:

6

7

**PARTIES AND JURISDICTION**

8

1.      At all times relevant herein, Plaintiff James Talada III (hereinafter "Plaintiff Talada") is

9

an adult male and domiciled in the State of California, and this court may properly exert

10

jurisdiction over this Plaintiff.

11

2.      At all times relevant herein, Plaintiff Melody LaBella (hereinafter "Plaintiff LaBella") is

12

an adult female is domiciled in the State of California, and this court may properly exert

13

jurisdiction over this Plaintiff.  At all times relevant herein, Plaintiffs Talada and LaBella

14

(hereinafter cumulatively referred to as "Plaintiffs") live together and are engaged in a personal

15

relationship.

16

3.      For all the events described herein, each and all individual Defendants were acting both

17

or either within the course and scope of his/her professional duties, and/or in his/her individual

18

capacity.  Therefore, Plaintiffs sue each and all individual Defendants in this complaint in their

19

individual and official capacities.

20

4.      At all times relevant herein, Defendant CITY OF MARTINEZ (hereinafter "Martinez")

21

and Defendant MARTINEZ POLICE DEPARTMENT (hereinafter "MPD") are public entities,

22

duly organized and existing under and by virtue of the laws of the State of California, with

23

supervisory powers over the agencies under their control and supervision, including but not

24

limited to the Martinez Police Department and/or its entire police force.  Defendants Martinez

25

and MPD are domiciled in the State of California, and this court may properly exercise

26

jurisdiction over these Defendants.

27

5.      Plaintiff Talada is informed and believes and thereupon alleges, that at all times relevant

28

herein Defendant CHIEF DAVID CUTAIA (hereinafter "Cutaia") is a resident of the State of

2

1   California, is at all times mentioned herein a police officer for Defendant MPD, hired to help

2   MPD preserve peace and order and obligated to protect and respect the civil rights of persons he

3   encounters in the course of his professional duties, and is the Chief of Police of Defendant MPD,

4   with supervisory authority and control over all police officers working at the MPD – such

5   officers being directly and proximately liable for the harms done to Plaintiff Talada.  This

6   Defendant is domiciled in the State of California, and this court may properly exercise

7   jurisdiction over this Defendant.

8   6.      Plaintiff Talada is informed and believes and thereupon alleges, that at all times relevant

9   herein Defendant SERGEANT GARY PETERSON (hereinafter "Peterson") is at all times

10  mentioned herein a police officer for Defendant MPD, hired to help MPD preserve peace and

11  order and obligated to protect and respect the civil rights of persons he encounters in the course

12  of his professional duties, and is a supervising officer with supervisory authority and control over

13  police officers working beneath his command at the MPD – such officers being directly and

14  proximately liable for the harms done to Plaintiff Talada.  This Defendant is domiciled in the

15  State of California, and this court may properly exercise jurisdiction over this Defendant.

16  7.      Plaintiff Talada is informed and believes and thereupon alleges, that at all times relevant

17  herein Defendant COMMANDER MARK SMITH (hereinafter "Smith") is at all times

18  mentioned herein a police officer for Defendant MPD, hired to help MPD preserve peace and

19  order and obligated to protect and respect the civil rights of persons he encounters in the course

20  of his professional duties, and is a supervising officer with supervisory authority and control over

21  police officers working beneath his command at the MPD – such officers being directly and

22  proximately liable for the harms done to Plaintiff Talada.  This Defendant is domiciled in the

23  State of California, and this court may properly exercise jurisdiction over this Defendant.

24  8.      Therefore, all above Defendants shall hereinafter be referred to collectively as the "Police

25  Defendants."

26  9.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

27  times relevant herein, Defendant GUARDSMARK GP, LLC is a Delaware corporation

28  specializing in the provision of security personnel, doing business in and with several offices

3

located in the State of California, with one of its three USA headquarters locations at 9595 Wilshire Boulevard, Suite 300, Beverly Hills, California, 90212.  Plaintiffs are also informed and believe, and thereupon allege that at all times relevant herein, Defendant GUARDSMARK, LLC is a subsidiary of Defendant GUARDSMARK GP, LLC, and is also a Delaware corporation specializing in the provision of security personnel, doing business in and with several offices located in the State of California, with one of its three USA headquarters locations in the same above-noted Beverly Hills, California office.  This court may properly exercise personal jurisdiction over Defendants GUARDSMARK GP, LLC and GUARDSMARK, LLC (hereinafter collectively referred to as "Guardsmark") because these Defendants have availed themselves of the benefits and protections of the State of California during the course of their business in this State, and it does not offend traditional notions of substantial justice and fair play to exercise jurisdiction over Guardsmark.  Defendant Guardsmark possesses supervisory authority over all its employees, including but not limited to all its security personnel, account managers, and managers-in-charge.

10.     Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all times relevant herein, Defendant CRISTINA AKESON (hereinafter "Cristina Akeson"), is a resident of and domiciled in the State of California, and she is employed as a Security Guard through the Oakland, California branch office of Guardsmark.  This court may properly exercise personal jurisdiction over this Defendant based on her domicile in the State of California, and because she is an agent or employee of Guardsmark.

11.     Defendants Guardsmark, Cristina Akeson shall be hereinafter collectively referred to as the "Security Defendants."

12.     Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all times relevant herein, DOES 1 through 100, inclusive and each of them, is in some manner liable to Plaintiffs for the damages alleged herein.  Plaintiffs are either unaware or uncertain of the true identity, capacity, or liability of the Defendants sued herein as DOES 1 through 100, inclusive, and, therefore sue such Defendants by fictitious names.  If the court and/or the parties find it necessary, Plaintiffs will seek leave of court to amend this complaint to add their true names and

1    capacities when such is ascertained.  Defendants DOES 1 through 100, inclusive, shall be

2    hereinafter collectively referred to as the "Doe Defendants."

3    13.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

4    times relevant herein, in acting unreasonably, unlawfully, intentionally maliciously, or

5    negligently, or in failing to act according to the duties incumbent upon them by law, professional

6    standard, or within the confines of reasonableness, each and every Defendant conspired with,

7    and/or was the supervisor, employer, master, agent, employee, and/or representative of every

8    other Defendant, and therefore was acting within the course and scope of such relationship or

9    agency, and/or was acting in their individual capacity.

10   14.      In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted

11   under color of authority and/or under color of law.

12   15.      Venue is proper in this judicial district because the conduct complained of herein

13   occurred primarily in the City of Martinez, County of Contra Costa, State of California, and/or at

14   the direction of Defendants Martinez and MPD and its employees, representatives and/or agents.

15   Venue is also proper in this judicial district because Plaintiffs, who incurred harm at the hands of

16   Defendants, reside in Martinez, California.

17   16.      This court may properly exercise subject matter jurisdiction over this case based on

18   federal question jurisdiction because this suit alleges violations of Federal Statutory Law.

19   Further this court may properly exercise appellate jurisdiction over this matter because it was

20   removed from the Superior Court of California, where it was originally filed by Plaintiff Talada,

21   and removed to this court by Defendants Martinez, MPD, and MPD police officer defendants

22   individually.

23   17.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

24   times relevant herein, the Defendants and each of them maintained master-servant, employer-

25   employee, supervisor-supervisee relationships between and among them, and each of them,

26   thereby resulting in vicarious liability under the *respondeat superior* doctrine.

27   18.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

28   times relevant herein, certain of the above Defendants possessed supervisory authority over other

5

1   Defendants.

2   19.      Defendant Martinez supervises Defendant MPD, who is headed by Defendant Cutaia,

3   who in turn supervises Defendant Gary Peterson, Mark Smith, and Doe Defendants.

4   20.      Defendants Martinez, MPD, Cutaia, Gary Peterson, Mark Smith, and/or Doe Defendants

5   employed by Martinez have supervisory power, or otherwise directed, motivated, employed, or

6   had a similar type of master-servant, principle-agent relationship with all named and Doe

7   Defendants, so far as the effectuation of the warrant for, search and seizure, arrest,

8   imprisonment, and other actions against Plaintiffs.

9   21.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

10  times relevant herein, Defendant Guardsmark GP, LLC supervises its subsidiary, Guardsmark,

11  LLC, who in turn supervises Defendant Cristina Akeson.

12  22.      Plaintiffs Talada and LaBella are informed and believe, and thereupon allege that at all

13  times relevant herein, certain Doe Defendants are either supervisors or employees, and Plaintiffs

14  will amend this complaint upon leave of court when Plaintiffs ascertains their true identity,

15  capacity and liability.  Plaintiffs in good faith do not know the exact nature of the relationships

16  between and among the named and Doe Defendants.  Therefore, throughout this Complaint,

17  Plaintiffs will refer to any and all of the master, employer, supervisory, and/or administrator

18  Defendants, be they named or Doe Defendants, as the "Master Defendants," and to any and all of

19  the servant, employee, supervised, and/or agent Defendants, be they named or Doe Defendants,

20  as the "Servant Defendants."  If the court and/or the parties find it necessary, Plaintiffs will seek

21  leave of court to amend this complaint to clarify the true capacities and relationships of the

22  parties when such is ascertained.

23                                    **FACTUAL ALLEGATIONS**

24

25  23.      Pertinent facts of the case are as follows:

26          a.   Plaintiffs Talada and LaBella have been in a personal and intimate relationship, and

27               have been living together for some years in Martinez, CA.  Defendant Cristina

28               Akeson was a Guardsmark security guard at Plaintiff LaBella's place of work, Contra

6

1      Central Contra Costa Sanitary District (hereinafter "CCCSD").  Cristina Akeson has a

2      history of being sexually harassing, stalking, and/or defaming blonde women who are

3      employees of companies where she's worked as a security guard.  When she was

4      assigned to LaBella's place of work, Cristina Akeson began to prey upon blonde

5      women there, including upon LaBella, whom she nominally befriended, and

6      ultimately sexually harassed, gravely embarrassed, cultishly confused, stalked, and

7      defamed until Cristina Akeson was finally, albeit too late, transferred out of her work

8      at CCCSD.

9   b.  For over two years, Cristina Akeson and other Guardsmark security guards were

10      complained about by CCCSD employees.

11  c.  Meanwhile, Cristina Akeson grew ever more frustrated in her predatory goals, and

12      continued to ramp up the attacks upon LaBella's fragile emotional well-being.

13      LaBella's financial hardships, struggles as a single-mother, her relationship with her

14      live-in boyfriend, Plaintiff Talada, and related self-esteem issues, made her a perfect

15      target for Cristina Akeson, and her cohort husband, David Akeson, who vigorously

16      sought a third in their ill-intended *ménage-a-trois*.

17  d.  Though Cristina Akeson was for a brief time successful in wedging a gap in the

18      relationship between Talada and LaBella by publicly defaming Talada to various

19      persons, she ultimately failed to replace Talada's and LaBella's genuinely loving and

20      supportive relationship with the ill-intended stratagems that Cristina Akeson, a

21      veritable wolf-in-sheep's-clothing, had been playing at.  Yes, LaBella finally awoke

22      to Cristina Akeson's subterfuge, and immediately cut off contact with her, ultimately

23      having to accent the point by way of a court-issued restraining order.

24  e.  Never discouraged, though, Cristina Akeson hatched and maliciously carried out a

25      wicked plan indeed:  She decided to issue a false report to the Martinez Police

26      Department that James Talada was the long-sought fugitive, the NorCal Rapist – a

27      man alleged to have a pot belly, tattoos, scars, and a dozen rape victims in his wake.

28      As insane as that sounds, Cristina Akeson's plan was far from the product of insanity

7

f.  Soon after receiving Cristina Akeson's maliciously false "informant's letter," certain of the named and Doe Defendants, these being officers of the Martinez Police Department, in concert with Sacramento and Reno Police Department officer Defendants, and some officers on the excessively forceful unit on duty of the Reno SWAT team, unlawfully, shamefully, and brutally arrested Mr. Talada in the centrally-located parking lot at his condominium/apartment complex at 2169A Kietzke Lane in Reno, Nevada (hereinafter referred to as the "Reno apartment"), falsely imprisoned him, and otherwise violated his privacy, *Miranda*, and other sacrosanct civil rights.  Had these Defendants simply done a modicum of fact checking into the well-known and well-published descriptors of the infamous NorCal Rapist, and compared such details with public information about Mr. Talada, or rather had the police officers simply knocked on Mr. Talada's front door, or pulled him over to ask him to roll up his sleeves and inspect his forehead for the infamous scars of the NorCal rapist, or had the police merely seen that Mr. Talada had never owned or driven an SUV, had a pot belly, or a resemblance to the NorCal Rapist, none of this degree of harm would have befallen Mr. Talada.

g.  Instead, Mr. Talada spent multiple days in solitary confinement in Reno, was never read his *Miranda* rights by anyone, was denied access to an attorney despite multiple requests to the police, was illegally searched by the police, was the victim of trespass and privacy invasion by the police, had his DNA involuntarily taken and publicized in a federal DNA bank, had his property seized by the police and to-date never returned, never saw a warrant despite asking for one, and was arrested by way of excessive force and humiliation by the Reno SWAT team, who detonated a flash-bang grenade in very close proximity to Mr. Talada, after he was already handcuffed and not resisting arrest in any way, in the center of his Reno, NV condo parking lot, in full view of his neighbors and community.

h.  Immediately during and/or after his arrest, police officers sealed off the Reno, NV home of Plaintiff Talada and his roommate, Terry Geis, and unlawfully searched and

1    seized the Martinez, CA and Reno, NV homes and/or personal property belonging to

2    the Plaintiffs.

3    i.   Despite all this intentionally inflicted damage to her victims, Cristina Akeson was

4         still not satisfied.  Possessing the otherwise unknown information about the damage

5         she had just done to Mr. Talada, having just thrown him raw into an arena of baited

6         police officers, Cristina Akeson did what she does best:  draft and send creepy letters

7         of destruction.  She sent defamatory and destructive letters to LaBella's coworkers

8         telling them that Mr. Talada and Ms. LaBella were under investigation for theft, rape

9         and murder, that Talada was an evil man, and that LaBella was a shiftless worker who

10        was being covered for by her boss.  She sent similarly defamatory letters about other

11        victims of hers at CCCSD to their coworkers.  This, after all, is Cristina's well-known

12        *modus operandi* during her inglorious tenure at Guardsmark.  She has a veritable

13        hallmark of patching together cryptic and anonymous letters, cutting and pasting

14        words from news media and sending them *Helter Skelter* style to victims and

15        coworkers, flaming the reputations of good people, yet always leaving traces of her

16        signature with each bit of crafted wickedness.

17   j.   Insistently violating restraining orders, Ms. Akeson has sent such harassing and

18        creepy communications to Ms. LaBella at her workplace as recently as April of 2008.

19   k.   Guardsmark still "secures" the CCCSD staff, thanks to contractual offers that can't be

20        refused.

21   l.   Police Defendants have yet to show Mr. Talada a warrant before this action was filed,

22        provide him back his seized property, or ever issue any sort of apology, despite

23        Plaintiff Talada's repeated requests.

24   m.   Non-plussed or persistently ignorant of their massive violations against the Plaintiffs,

25        the Police Defendants issued public statements on March 22, 2008 or thereabouts,

26        publishing in various local newspapers, such as the Contra Costa Times Newspaper,

27        the Martinez City Times Newspaper, and the online KCBS News, the face, name and

28        description of Plaintiff Talada, publicly insisting to his local community (upon whom

9

1    he is utterly dependent for work as a real estate agent) that good legal grounds did in
2    fact exist for his arrest as the suspected NorCal Rapist.

3    n.   For this and so much more, James Talada and Melody LaBella bring this Complaint -
4         to right the wrongs done to them, and to prevent the wrongs that will otherwise be
5         done to others.

6

7                           **STATEMENT OF FACTS**

8    24.    Plaintiff James Talada, lives and has lived on and off with his girlfriend, Plaintiff Melody

9    LaBella, since at least May of 2001 and they now reside together in California.  At all times

10   relevant herein and for the past 8 years, Plaintiff Melody LaBella, an engineer, works and has

11   worked at CCCSD, for whom Guardsmark provides and has provided security services during all

12   times relevant herein.

13   25.    On or about June of 2005, Cristina Akeson began working at CCCSD as a Guardsmark

14   security guard.

15   26.    Between the dates of December of 2005 and February of 2006, or thereabouts, Cristina

16   Akeson initiated and promoted personal "small talk" with Plaintiff LaBella at CCCSD, in

17   violation of the known-to-her Guardsmark policy against fraternization with clients by security

18   personnel – a policy that Plaintiff LaBella did not know and did not have any reason to know

19   until May 24, 2007.  On May 24, 2007, Plaintiff LaBella received information regarding

20   Guardsmark's anti-fraternization policy from CCCSD Defendant Randy Musgraves.

21   27.    Between the dates of February of 2006 and January 1, 2007, or thereabouts, Cristina

22   Akeson, a Guardsmark security guard at CCCSD, initiated and promoted more intimate

23   conversations and interactions with Plaintiff LaBella, which manifested a friendship of sorts

24   between the two women.  Soon after workplace conversations between Cristina Akeson and

25   LaBella became more personal, Cristina Akeson began to seriously confuse the nature of such

26   communications with Plaintiff LaBella, turning otherwise platonic, friendly, "coffee-break"

27   conversation that usually occurs between coworkers, such as LaBella was making with Cristina

28   Akeson, to an altogether different mode of interaction.  Cristina Akeson began to see such a line

10

of communication with Plaintiff LaBella as an opportunity to begin to sexually and psychologically prey upon her, as Cristina Akeson had done with former security clients at former places of work, from which she had been previously fired for such predatory behavior. Specifically over the course of the ensuing months, Cristina Akeson made multiple homosexual, vividly sadomasochistic, and blatant sexual advances towards Plaintiff LaBella, meanwhile pressuring and promoting Plaintiff LaBella to distance herself from her boyfriend, Plaintiff Talada, all until Cristina Akeson began to sexually harass, defame, and stalk Plaintiff LaBella.

28.     Between the months of May and August of 2006, or thereabouts, Cristina Akeson was caught stealing, by CCCSD employee Patty Wedemeyer, on CCCSD security videotape in the front lobby of CCCSD.  She then defaced her CCCSD security identity tag by changing her name on it to "Robin Steel" and gluing a chimpanzee photo over her identification picture.  In spite of such untrustworthy and unsafe behavior, CCCSD and Guardsmark permitted Cristina Akeson to continue to work at CCCSD.  Upon Defendant Cristina Akeson's removal from CCCSD offices in February 2007, Defendant Akeson surrendered her blackened-out CCCSD security identity tag to CCCSD Defendant Ruth Bennett, which Bennett retains in her possession at CCCSD.

29.     At the workplace at various points throughout 2006, Cristina Akeson would exhaustively decorate Plaintiff LaBella's office with live-cut flowers (from CCCSD property), and other decorations, left or gave very personal gifts considering the short length of time she'd known Plaintiff LaBella, such as a pair of glittery ladies sandals, as well as very egregious and highly embarrassing gifts for LaBella, such as a porcelain life-sized boy baby doll with blond hair and blue eyes (like Plaintiff LaBella) and even sexual paraphernalia, such as a double-ended dildo for mutual and simultaneous masturbation and sexual penetration.

30.     Cristina Akeson also preyed upon LaBella's fragile emotions by convincing her to distance herself from her boyfriend, Plaintiff Talada, and invited herself over to LaBella's home to help care for the grieving Plaintiff LaBella, who was very upset and confused about temporarily ending her relationship with her boyfriend, Plaintiff Talada.

31.     On November 5, 2006, the day on which Plaintiff LaBella, with Cristina Akeson's

11

aggressive backing, temporarily removed Plaintiff Talada from her home, Defendant Cristina Akeson invited herself to stay several nights at Plaintiff LaBella's house, and to sleep in Plaintiff LaBella's bed.  Plaintiff LaBella slept in a different room of the house to avoid the discomfort of sleeping in the same bed as Cristina Akeson – a person who Plaintiff LaBella could not yet clearly distinguish as a friend or foe.  Plaintiff LaBella did not know at this time the predatory and malicious workplace history of Defendant Cristina Akeson, and the negligence, recklessness, or intentional malice of Security Defendants and District Defendants in retaining such a predator as Cristina Akeson.

32.     By improperly hiring, training, supervising, and retaining Cristina Akeson, covering up from clients her unprofessional and unsafe past course of conduct in the workplace, and thereby presenting her to clients as a trustworthy and safe security guard, Guardsmark helped to proverbially disguise Cristina Akeson as "a wolf in sheep's clothing."

33.     Between November 6 and November 8, 2006, Cristina Akeson pressured Plaintiff LaBella to allow her to stay additional nights at her home, under the premise of helping LaBella to cope through the difficult time of breaking up with her boyfriend, Plaintiff Talada.  While at Plaintiff LaBella's home on November 6, 2006, Cristina Akeson made sexual advances towards LaBella, namely dousing LaBella's bed in perfume and leaving a personal massager and a sadomasochistic whip upon Plaintiff LaBella's night table next to her bed.  Cristina Akeson, without Plaintiff LaBella's consent or license, allowed David Akeson to trespass into Plaintiff LaBella's home on November 8, 2006 to deliver a bottle of "holy water" for the purpose of continuing to performing religious or cultish rituals using holy water and anti-"evil" voodoo-like prayers, allegedly and purportedly for the purpose of ridding Plaintiff Talada's "evil spirit" from Plaintiff LaBella's house  Also, during this time while in the solitude at Plaintiff LaBella's house, Cristina Akeson invaded Plaintiffs privacy by rummaging through Plaintiff Talada's personal belongings that remained in Plaintiff LaBella's house.  On November 8, 2006, Cristina Akeson turned over to LaBella a copy of Plaintiff LaBella's key that she had to gain entry into the LaBella home.

34.     During November of 2006 or thereabouts, Cristina Akeson defamed Plaintiff Talada in

speaking with Plaintiff LaBella on numerous occasions, communicating to LaBella that Talada is evil, dangerous, and untrustworthy.

35.     Later during the month of November or early December of 2006, Cristina Akeson defamed Plaintiff Talada at Plaintiff LaBella's workplace by telling LaBella's coworker, Debbie Hinkson, that Talada was a "bad" person that LaBella was lucky to be rid of.

36.     On or about January 1, 2007, realizing the full measure of emotional and other damage slowly inflicted upon her by Cristina Akeson, Plaintiff LaBella stopped all contact with Cristina Akeson.

37.     Between January of 2007 and May of 2007, or thereabouts, Cristina Akeson greatly intensified her harassing, defaming, and stalking of Plaintiff LaBella, thus motivating Plaintiff LaBella to file a restraining order against Cristina Akeson, which was granted on May 25, 2007 by the Superior Court of California, County of Contra Costa.

38.     Plaintiffs are informed and believe, and thereupon allege that between January of 2007 and May of 2007, or thereabouts, Plaintiff LaBella learned from CCCSD coworkers and from Cristina Akeson's former coworker, Sue Meltzer, that Cristina Akeson had a history of sexually harassing, stalking, and defaming female clients at CCCSD, and at her prior places of employment, such as the Contra Costa County Regional Medical Center in Martinez and/or in Richmond, California, and also possibly at the Contra Costa Times Newspaper offices.

39.     Plaintiffs are informed and believe, and thereupon allege that between January of 2007 and May of 2007, or thereabouts, Cristina Akeson, wrote to Plaintiff LaBella and her employers and colleagues multiple anonymous, defamatory, harassing, and severely emotionally disturbing letters, using cut-and-pasted printed words from newspapers and other media print to create collaged anonymous letters, and anonymously typed notes, all with the intent and purpose of harassing, defaming, and stalking Plaintiff LaBella and trying to destroy Plaintiff LaBella's relationship with her live-in boyfriend, Plaintiff Talada.

40.     Specifically, in mid-February of 2007, on Cristina Akeson's last day at work before she took her two-week vacation to Puerto Vallarta, Mexico, Cristina Akeson sent an anonymous letter to Patty Wedemeyer, the CCCSD employee who caught Cristina Akeson stealing property

in the CCCSD lobby.  This letter defamed Plaintiffs Talada and LaBella, stating that both Talada and LaBella were under investigation for theft, rape and murder.  Patty Wedemeyer told CCCSD's Human Resources Director, Cathryn Freitas, that she felt that Cristina Akeson had sent the anonymous letter because of Cristina Akeson's previous, inappropriate, untrustworthy, and mentally-imbalanced behavior in the CCCSD workplace.

41.     Due to CCCSD employee Angela Taliani (Patty Wedemeyer's Supervisor) insistence, on February 24, 2007, CCCSD Security Officer Steve Laren called Guardsmark to inform that Cristina Akeson was no longer to provide security services at CCCSD.

42.     In March of 2007 or thereabouts, Plaintiff LaBella learned that Cristina Akeson had also been similarly sexually harassing and stalking another CCCSD coworker, namely Communication Services Manager Harriette Heibel, who had similarly fallen prey to Cristina Akeson's "false friend" snare during her time at CCCSD.  Cristina Akeson explicitly sexually accosted Harriette Heibel by telling her that her newly-pedicured toes looked "good enough to suck."  Cristina Akeson also redecorated Harriette Heibel's office and left gifts for her, which was in direct violation of Guardsmark's strict anti-fraternization policy.  Harriette Heibel told Plaintiff LaBella that she suspected that Cristina Akeson had recently contacted her to tell her that Akeson had a paper stolen a page out of Heibel's personal planner, with the phone numbers, names, and social security numbers of her, her son, and her husband.

43.     After Cristina Akeson was fired from her post at CCCSD in February of 2007 or thereabouts, Musgraves instructed Laren to contact Guardsmark to demand that Cristina Akeson return the paper belonging to Harriette Heibel, which she did in an envelope that also contained a rude comic strip and a fictitious newspaper article that implied that Heibel was leaving CCCSD because it was a "bad place to work."

44.     In May of 2007, Cristina Akeson sent a harassing and very disturbing anonymous letter to Plaintiff LaBella at her place of work in a Contra Costa Times Newspaper envelope.  Cristina Akeson had previously worked as a security guard at Contra Costa Times Newspaper..  Further, on May 7, 2007, Cristina Akeson sent a signed email (through husband David Akeson's email address) addressed to retired coworker Harriette Heibel's email address, after Akeson was

1   explicitly told that there was a "gag order" on her contacting any CCCSD employees.

2   45.    Plaintiffs are informed and believe, and thereupon allege that even after Plaintiff LaBella

3   was granted a restraining order against Cristina Akeson in May of 2007, Cristina Akeson

4   continued to harass, defame, and stalk Plaintiff LaBella, as most recently exhibited by Cristina

5   Akeson sending a similar harassing message communicated through a magazine article that made

6   similar accusations as were in the anonymous letter, dated May 4, 2007, that was sent via US to

7   Plaintiff LaBella at CCCSD.  As a direct result of this invasion of privacy and frightening

8   harassment, Plaintiff LaBella has suffered from severe emotional distress, fear for her personal

9   safety at work, and thus has had to request that CCCSD put a lock put on her office door to

10   prevent entry by Cristina Akeson or any persons affiliated or conspiring with her to harass, stalk,

11   and defame LaBella.

12   46.    Plaintiffs are informed and believe, and thereupon allege that, in an act of malicious

13   revenge and envy against Plaintiff LaBella and her boyfriend Plaintiff Talada, whose intimate

14   and loving relationship together Cristina Akeson explicitly always sought to destroy, Defendant

15   Cristina Akeson wrote a letter to Defendant Martinez Police Department between January and

16   February of 2007, or thereabouts, intentionally falsely, maliciously, recklessly, and/or

17   negligently accusing Plaintiff Talada of being the NorCal Rapist.

18   47.    In or about February of 2007, Plaintiffs are informed and believe, and thereupon allege

19   that, in an act of malicious revenge and envy against Plaintiff LaBella, Cristina Akeson via an act

20   of libel communicated via an anonymous written note to Plaintiff LaBella's General Manager,

21   James M. Kelly, at CCCSD that Plaintiff LaBella had failed to be at work during the month of

22   January of 2007, and that her immediate supervisor, "Don B.," had been covering-up for Plaintiff

23   LaBella's absence.  Such false and defamatory per se statements were made about Plaintiff

24   LaBella by Cristina Akeson, and as a direct and proximate result of Defendants and each of their

25   unlawful and tortious conduct, including their negligence, recklessness, malice and intentional

26   wrongdoing, as detailed in this Complaint.

27   48.    Plaintiffs are informed and believe, and thereupon allege that CCCSD employees had

28   made reports to CCCSD Safety and Risk Management Staff Ruth Bennett and Randy Musgraves

1    about the unlawful, and tortious conduct of Guardsmark security personnel in general and

2    Cristina Akeson in particular on numerous occasions between the years 2005 and 2008,

3    inclusive, or thereabouts.  District Defendants and each of them failed to adequately respond to,

4    investigate, address, and/or remedy such unlawful and tortious conduct.  Guardsmark's contract

5    with CCCSD has been renewed every year, despite continuing serious allegations and evidence

6    of unlawful and tortious conduct by Cristina Akeson and other Guardsmark security personnel

7    working at CCCSD, and despite serious objections made by Plaintiff LaBella.  Such continuing

8    intentionally, recklessly, maliciously, and/or negligent abuse of power, authority, and duty by

9    District Defendants and each of them have directly and proximately caused Plaintiffs' damages.

10   49.      Guardsmark had received numerous complaints about Cristina Akeson and other

11   Guardsmark security personnel working at CCCSD, as well as the prior places of employment of

12   Cristina Akeson.  Yet Guardsmark intentionally, maliciously, recklessly, and/or negligently

13   failed to properly and adequately respond to, investigate, address, and/or remedy such unlawful

14   and tortious conduct of Cristina Akeson and other of its employees, and thereby has directly and

15   proximately caused Plaintiffs' damages.

16   50.      Based on copies of anonymous letter, received in the interoffice mail at CCCSD by Patty

17   Wedemeyer, very shortly after Plaintiff Talada's arrest by Cristina Akeson to colleagues which

18   indicate Cristina Akeson's knowledge of the otherwise unknown and/or unknowable information

19   about Plaintiff Talada's arrest and investigations about Plaintiff by the MPD and RPD, and based

20   on Cristina Akeson's pattern of similar behavior of writing anonymous, defamatory, harassing,

21   and damaging letters, Plaintiff Talada is informed and believes and thereupon alleges that this

22   malicious, false, and misleading informant's letter to the MPD, SPD, and/or RPD was written by

23   Cristina Akeson, and that the Police Defendants and each of them still possess a copy of this

24   letter, which they negligently, recklessly, and/or intentionally failed to properly corroborate or

25   investigate, and which they improperly relied upon in seeking a warrant against Plaintiff.  Had

26   the Police Defendants and each of them simply questioned the validity of the suspiciously

27   altruistic anonymous letter they received (especially given that there was a highly publicized

28   $21,000 reward for tips leading to an arrest of the "NorCal Rapist") and/or properly sought to

16

1    corroborate Cristina Akeson's letter by investigating Talada with even the slightest bit of

2    investigative care, none of this damage against Plaintiff Talada would have occurred.

3    51.      As a direct result of the actions and/or omissions of Cristina Akeson and the Police

4    Defendants and each of them, along with the acts and/or omissions of other Defendants and each

5    of them, on or about February 5, 2007, Defendant Martinez Police Department, an entity of

6    Defendant Martinez, contacted both the Sacramento Police Department (SPD) and Reno Police

7    Departments, and specifically asked the SPD and RPD to respond to an arrest warrant that was

8    drafted by, and provided to them by, Defendant MPD.  The MPD was seeking Plaintiff Talada,

9    who they suspected may be the infamous "NorCal Rapist," a serial rapist who has been a fugitive

10   from justice for over fifteen years.  The SPD and RPD immediately began to follow Plaintiff

11   Talada's car, headed back to Reno in a rented car from a fun weekend visit with his girlfriend

12   and her family in Martinez, CA.

13   52.      According to widely distributed police sketches and descriptions easily available in

14   various police departments in the State of CA, as well as widely distributed throughout the

15   media, the NorCal Rapist is alleged to have raped numerous women in the Northern California

16   area since the 1990's.  He is alleged to be a man now in his mid-30s or early 40's in age.  He is

17   alleged to be between 5'8" and 5'10" in height.  He is alleged to be a heavy-set white male and

18   has been described by his victims as weighing between 200 to 300 pounds, with a noticeable pot

19   belly.  He is alleged to have significant scars and/or tattoos on his body, especially upon his left

20   forearm and/or forehead.  He is alleged to drive a white sports utility vehicle.  There are multiple

21   sketches alleged to be of the NorCal Rapist, and these are all public information resources widely

22   distributed throughout the internet and throughout the police departments of the State of

23   California, State of Nevada, and beyond.  Plaintiffs allege and believe that the City of Martinez,

24   the City of Sacramento, and the City of Reno each and all knew, or reasonably should have

25   known, all this identifying information and sketches of the NorCal Rapist, and also should have

26   known or did know that Plaintiff Talada did not reasonably match such basic and key

27   descriptions at all.

28   53.      The MPD arrest warrant, of which the City of Martinez informed the Sacramento and

17

1    Reno Police Departments, was improper as it was based upon information provided to the MPD

2    by a dubious informant – information that the MPD, SPD, RPD, and CCCDA all failed to

3    properly corroborate.  Had the MPD or any of the Police Defendants taken the very simple steps

4    to corroborate this information, they would have immediately seen that Plaintiff Talada was by

5    no means the fugitive from justice that they sought.

6    54.    Plaintiff's physical description is significantly different from that of the NorCal Rapist.

7    He is 5'10" tall, 175 pounds in weight, as stated in Plaintiff Talada's Washoe County Jail

8    booking information from his February 2007 arrest and incarceration, and has never had a pot

9    belly, any scars on his forearms or forehead, or any sports utility vehicle.  Further, Plaintiff can

10   prove via extremely strong documented evidence such as photographs, eyewitness testimony,

11   credit card records, phone records, and residential records that he was not nearly in the same

12   place and the same time as the places and times of the rapes allegedly committed by the NorCal

13   Rapist.

14   55.    Despite such easily ascertainable and verifiable public information about the physical and

15   geographic description of the NorCal Rapist and the physical and geographic description of the

16   Plaintiff, on or about February 5, 2007, at approximately 4:45 p.m., Plaintiff was arrested in the

17   City of Reno, State of Nevada by the Reno Police Department and/or the Reno SWAT Team

18   who were responding directly to the MPD's orders to arrest Plaintiff under a fugitive warrant.

19   During the course of such arrest, MPD, RPD, SPD, SWAT and police officers herein used

20   excessive force in unlawfully arresting Plaintiff Talada.  Specifically, they ordered Talada, a man

21   with no criminal record, to the ground, with rifles pointed at him, handcuffed Talada behind his

22   back, stood him up, and even though Talada did nothing to resist arrest, the arresting officer

23   twisted Talada's thumb, remarking, "We don't like smart-asses on SWAT" and another SWAT

24   officer detonated a flash-bang grenade dangerously close to Talada, leaving a ringing sound in

25   Talada's ears.  Immediately thereafter, Plaintiff was taken into custody and jailed at the Washoe

26   County detention facility.

27   56.    On February 5, 2007, two unidentified officers came into an RPD interrogation room in

28   which Plaintiff Talada was seated, and most importantly, asked him to roll up his shirt sleeves

18

and asked him if he had any tattoos or scars.  Upon verifying that Plaintiff Talada lacked any tattoos and/or scars, and also seeing that he lacked other physical descriptions associated with the NorCal Rapist, the two unidentified officers looked at each other, shook their heads to indicate that they had the wrong guy in custody.

57.     On February 9, 2007, Plaintiff was released in Reno without any charges by MPD or any other agency after Talada's DNA, which was obtained illegally, was found to not have matched that of the NorCal Rapist, and soon thereafter, Plaintiff Talada was released to himself – whereas a day or so before, there was a $2.5 million bail and then no bail whatsoever set for his release. Plaintiff alleges that had the Police Defendants immediately verified that Talada lacks any scars or tattoos, or had they conducted a simple and brief but necessary investigation to easily differentiate Talada from the NorCal Rapist based on their clearly disparate physical characteristics, they and each of them would never have unlawfully arrested, imprisoned and tortiously and unconstitutionally violated so egregiously Plaintiff Talada's rights.

58.     As a direct violation of Plaintiff's rights, the Police Defendants and each of them never read Plaintiff Talada his *Miranda* rights, unlawfully searched and seized Plaintiff's property, refused to provide him with an attorney despite his numerous requests for one, unlawfully and brutally arrested Plaintiff, falsely imprisoned him, unlawfully waited too long to permit him a phone call once in jail, and unlawfully waited too long to arraign Plaintiff and advise him of the reason, nature, and extent of his detention, among other tortious and constitutional violations which the Police Defendants and each of them committed against Plaintiff Talada.

59.     Furthermore, the Police Defendants and each of them violently arrested Plaintiff Talada, a man with no criminal record, by detonating a flash-bang grenade dangerously close to Talada, after he was already handcuffed and had not resisted arrest, unlawfully forced Plaintiff to spend four days in solitary confinement in Reno and five days in custody in Reno, and unlawfully took a DNA sample from Plaintiff Talada.

60.     Plaintiff suffered significant and severe harm as a direct result of such torts and statutory violations committed by the Defendants and each of them, jointly and severally.  Plaintiff Talada is informed and believes, and thereupon alleges that the actions directly and proximately causing

1    the harms suffered by Plaintiff Talada during his unlawful arrest and detainment, as well as

2    during the events leading to and from such arrest, were all done at the direction of the Police

3    Defendants, and each of them, and/or that all the Defendants are jointly and severally liable for

4    each and all the harms committed against Plaintiff Talada in this matter.

5    61.    Plaintiff Talada is informed and believes, and thereupon alleges, that his unlawful arrest

6    and imprisonment, among other violations of his person, property and rights, were directly and

7    proximately caused by an invalid, improperly obtained, improperly corroborated, improperly

8    investigated, and unlawfully effectuated warrant obtained and effectuated by the Police

9    Defendants and each of them, and was directly and proximately caused by the unlawful actions

10   of all the Defendants and each of them.

11   62.    Plaintiffs are informed and believe, and thereupon allege, that Defendants, and each of

12   them, acted with deliberate indifference, negligence, recklessness, intent, and malice in

13   conducting the acts and/or omissions that harmed Plaintiffs.

14   63.    Plaintiffs are informed and believe, and thereupon allege, that Defendants, and each of

15   them, maliciously, intentionally, recklessly and/or negligently included unverified and false

16   information in an anonymous letter and/or in a warrant on which the Police Defendants, and each

17   of them, negligently, improperly, unlawfully, recklessly, intentionally, and/or maliciously relied

18   in order to unlawfully arrest Talada, illegally search and seize Talada and his property and that of

19   Plaintiff LaBella, falsely imprison Talada, and otherwise commit a series of unlawful and

20   tortious actions against the Plaintiffs.  The vague and invalid warrant was for a crime that

21   Plaintiff Talada did not commit, and was for the arrest of a person who substantially and

22   obviously differed in physical appearance, geographical indicia, and biographical and criminal

23   background from Plaintiff Talada.  The Police Defendants and each of them failed to properly

24   compare the physical descriptions of the NorCal Rapist with that of Plaintiff Talada, for had they

25   done so, they would have seen that he did not possess any of the scars and/or tattoos or pot belly

26   that were the hallmark of the NorCal Rapist's physique.  Further, the warrant was substantially

27   based upon a crazed and/or malicious informant's signed letter.

28   64.    Plaintiffs are informed and believe, and thereupon allege that this incident is consistent

20

with pre-existing customs, policies, and/or practices of Defendants and each of them, which have included, but are not limited to: customs, policies, and/or practices of failing to provide any or adequate training, supervision and/or control of officers to prevent their use of excessive force, unreasonable searches, seizures and/or other misconduct; customs, policies and/or practices involving lack of appropriate tracking of officers who are involved in incidents such as this to ensure that they receive appropriate discipline, training and/or remedial action to prevent recurring similar conduct; customs, policies and/or practices which encourage, authorize and/or condone the use of excessive and unreasonable force and unreasonable searches and seizures; customs, policies and/or practices of encouraging, authorizing and/or condoning a veritable "Code of Silence" among the Defendants and the Defendant police officers; false reporting and/or other misconduct geared toward insulating members of the Defendants from civil and/or criminal liability for their on-duty misconduct that results in injuries or damages to citizens, such as Plaintiffs; negligent hiring, retention, training, and supervision of employees; failure to adequately respond to serious complaints about the safety and stability of employees; intentional, malicious, reckless, and/or negligent nondisclosure and misrepresentation of material facts about the safety, security, professionalism, quality, and character of employees; and other tortious and unlawful actions recounted in this complaint by each and all of the Defendants.

65.     As a direct and proximate result of each and all of Defendants' acts, Plaintiffs and each of them suffered injuries to their nervous system and person, all of which have caused, and continue to cause Plaintiffs severe emotional anguish, great mental, physical, and nervous pain and suffering, economic losses, monetary damages, attorney's fees, litigation costs, and significant damage to their personal and professional reputation, resulting in negative impacts to their career advancement, ability to attend work obligations, being overlooked for promotions, and/or resulting in emotional anguish that has negatively impacted the Plaintiffs', and each of their, ability to succeed professionally.  Plaintiffs are informed and believe, and thereupon allege that these injuries may result in some permanent damage to them.  As a result of those injuries Plaintiffs have suffered general and special damages.

66.     Plaintiff Talada filed an administrative claim against the City of Martinez in proper form

1   and within the applicable statutory period.  The City of Martinez rejected Plaintiff Talada's claim

2   and he now brings this action.

3

4                                        **FIRST CLAIM**

5                            **FALSE ARREST/IMPRISONMENT**

6        **(By Plaintiff Talada Against All Defendants Except the Guardsmark Defendants)**

7   67.      Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

8   above paragraphs as though fully set forth herein.

9   68.      Plaintiff Talada is informed and believes and thereupon alleges that Defendants and/or

10  each of them, acting individually and/or in concert with one another, with knowledge, intent,

11  malice aforethought, and/or reckless disregard of substantial harm and risk of injury reasonably

12  likely to occur to Plaintiff Talada, did the following acts, and/or intentionally, directly and

13  proximately caused the following acts to be done by co-Defendants:  stopped and frisked

14  Plaintiff Talada without reasonable suspicion; searched and seized Plaintiff Talada's property

15  without probable cause; and/or personally arrested and imprisoned the Defendant against his will

16  without probable cause.

17  69.      The acts and/or omissions of the Servant Defendants and/or each of them, individually

18  and/or while acting in concert with one another, as alleged herein, were done within the course

19  and scope of their employment, and thus the Master Defendants are therefore liable for said

20  unlawful search and seizure, false arrest and/or false imprisonment under the legal doctrine of

21  *respondeat superior.*

22  70.      Alternatively, the acts and/or omissions of the Defendants and/or each of them,

23  individually and/or while acting in concert with one another, as alleged herein, were done within

24  the individual capacity of such Defendants, and therefore such Defendants are individually liable

25  for the harms to Plaintiff Talada directly and/or proximately caused by such acts and/or

26  omissions.

27  71.      As a direct and proximate result of the unlawful search and seizure, false arrest and/or

28  false imprisonment by Defendants, and/or each of them, Plaintiff Talada suffered substantial

                                              22

1   harms, damages and injuries, including but not limited to physical and emotional injury, damage

2   to his reputation in his community, and a violation of his civil rights under the laws of the State

3   of California and of the United States of America.

4   72.     Plaintiff Talada is informed and believes and thereupon alleges that the conduct of

5   Defendants, and each of them, as alleged herein, was intentional, malicious, and/or oppressive.

6   As a result, Plaintiff Talada is entitled to an award of punitive and exemplary damages against

7   said Defendants and/or each of them, in amounts to be determined according to proof.

8   73.     WHEREFORE, Plaintiff Talada prays for damages against Defendants, and each of them,

9   as set forth in the Prayer below.

10

11                                    **SECOND CLAIM**

12                                       **NEGLIGENCE**

13                  **(By Plaintiff Talada Against Police Defendants)**

14  74.     Plaintiff Talada hereby realleges and incorporates each and every allegation set forth in

15  all the above paragraphs as though fully set forth herein.

16  75.     Plaintiff Talada is informed and believes, and thereupon alleges, that Defendants and/or

17  each of them acting individually and/or acting in concert, and/or while acting within the course

18  and scope of their employment, owed Plaintiff Talada a duty to use due care at or about the times

19  of the aforementioned acts and/or omissions.  Police Defendants owed Plaintiff Talada a duty to

20  use due care to preserve order, protect his civil rights under State and Federal law, use reasonable

21  force, to be properly trained and aware of the law to safeguard the public and persons such as

22  Plaintiff Talada, and maintain his security and safety in a reasonable manner at all times.

23  Security Defendants owed Plaintiff Talada a duty to use due care to maintain his safety and

24  security, to be properly trained and aware of the law to safeguard the public and persons such as

25  Plaintiff Talada, to not violate his rights under State and Federal law, and to safeguard Plaintiff

26  Talada by ensuring the reasonable hiring, supervision, training, and retention of security

27  personnel who would not harass, malign, or otherwise harm persons with whom they came into

28  contact by the privilege, authority, and power of their professional position.

76.     As a result of Defendants' and each of their aforementioned unlawful acts and/or omissions, Plaintiff Talada is informed and believes and thereupon alleges that said Defendants and/or each of them, individually and/or while acting in concert with one another, negligently breached said duty to use due care.  The Defendants and each of them directly and proximately caused the damages and harm suffered by the Plaintiffs.

77.     The Defendants and each of them knew or reasonably should have known their reasonable duties owed to Plaintiff Talada, and negligently breached such duties.

78.     Plaintiff Talada is informed and believes and thereupon alleges that at the time of the aforementioned acts and/or omissions, Defendants and/or each of them were acting in their individual capacity and are individually liable for all harms sustained by Plaintiff Talada, and/or were acting within the course and scope of their employment and the employer, administrative, supervisory, master, and similarly situated Defendants and each of them are liable as *respondeat superior* for the negligence of Defendants who were acting within the course and scope of their employment.

79.     Defendants and each of them proximately and directly caused the Plaintiffs' and each of their injuries, harm, and damages.  As a result of the negligence of said Defendants, and each of them, Plaintiff Talada suffered the damages and injuries as described herein.

80.     WHEREFORE, Plaintiff Talada prays for damages against Defendants, and each of them, as set forth in the Prayer below.


**THIRD CLAIM**

**NEGLIGENCE**

**(By Plaintiff LaBella Against Guardsmark Defendants and Does 1-100)**

81.     Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

82.     Plaintiff LaBella is informed and believes, and thereupon alleges, that Security Defendants and Doe Defendants, and each of them acting individually and/or acting in concert, and/or while acting within the course and scope of their employment, owed Plaintiff LaBella a

duty to use due care at or about the times of the aforementioned acts and/or omissions.  Security Defendants each owed Plaintiff LaBella a duty to use due care to maintain her safety and security, to be properly trained and aware of the law to safeguard the public and persons such as Plaintiff LaBella, to not violate her rights under State and Federal law, and to safeguard Plaintiff LaBella by ensuring the reasonable hiring, supervision, training, and retention of security, police and/or legal personnel who would not harass, malign, or otherwise harm persons with whom they came into contact by the privilege, authority, and power of their professional position.

83.     As a result of Defendants' and each of their aforementioned unlawful acts and/or omissions, Plaintiff LaBella is informed and believes and thereupon alleges that said Defendants and/or each of them, individually and/or while acting in concert with one another, negligently breached said duty to use due care.  The Defendants and each of them directly and proximately caused the damages and harm suffered by the Plaintiffs.

84.     The Defendants and each of them knew or reasonably should have known their reasonable duties owed to Plaintiff LaBella, and negligently breached such duties.

85.     Defendants and each of them proximately and directly caused the Plaintiffs' and each of their injuries, harm, and damages.  As a result of the negligence of said Defendants, and each of them, Plaintiff LaBella suffered the damages and injuries as described herein.

86.     WHEREFORE, Plaintiff LaBella prays for damages against Defendants, and each of them, as set forth in the Prayer below.

### FOURTH CLAIM

### NEGLIGENT HIRING, RETENTION, SUPERVISION, TRAINING

### (By Plaintiff Talada Against Police Defendants and Does 1-100)

87.     Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

88.     Plaintiff Talada is informed and believes, and thereupon alleges, that Defendants and each of them owed the public in general, and Plaintiff Talada in particular, a duty to use reasonable and due care in carefully hiring, retaining, training, and supervising their agents,

servants, and/or employees, owed Plaintiff Talada a duty of due care to continuously review and evaluate the competency and fitness of their agents, servants and/or employees, and to insure that their agents, servants and/or employees are fit and competent for the tasks for which they were hired.

89.     Plaintiff Talada is informed and believes, and thereupon alleges, that prior to the events described herein above, the Master Defendants and each of them had actual and/or constructive notice and knowledge of the propensities of their respective Servant Defendants to commit the above described acts and to abuse their position and authority, and such Master Defendants failed to take sufficient reasonable steps to prevent such negligence and intentional abuse of power and the resultant harm, in complete disregard of the rights and safety of the public in general and of Plaintiff Talada in particular.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

90.     Plaintiff Talada is informed and believes, and thereupon alleges, that by hiring, employing, and retaining their respective Servant Defendants to a position of trust and special authority with the public, the Master Defendants and each of them, held their respective Servant Defendants out to the public in general and to Plaintiff Talada in particular, as reasonably competent and trustworthy.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

91.     Plaintiff Talada is further informed and believes, and thereupon alleges, that Master Defendants and each of them had a duty to reasonably and properly supervise their servants, agents, and/or employees because such of their respective Servant Defendants were in a unique position of trust, confidence, power, and authority, under which the public in general, and Plaintiff Talada in particular, should be able to reasonably suppose themselves to be safe from wrongful conduct, excessive force, abuse of power, and harm.

92.     Plaintiff Talada reasonably relied upon such representations and reasonable expectations of Defendants, and as a direct and proximate result of each and every Defendants' negligence, Plaintiff Talada suffered injury and sustained harm and damages.

93.     Plaintiff Talada is informed and believes, and thereupon alleges, that Master Defendants

and each of them negligently, carelessly, recklessly, and/or in any other actionable manner, failed to properly hire, train, and ensure the character, quality, ability, fitness and competence of their respective Servant Defendants.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

94.     Plaintiff Talada is further informed and believes, and thereupon alleges, that the Master Defendants and each of them failed to reasonably and properly monitor, retain, and supervise their respective Servant Defendants in order to reasonably insure that the public in general and Plaintiff Talada in particular would be protected from wrongful conduct, abuse of power, excessive force, and harm.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

95.     Plaintiff Talada is informed and believes, and thereupon alleges, that Master Defendants and each of them did nothing to stop their respective Servant Defendants from using excessive force, even after they knew, or should have known, of their respective Servant Defendants' deviant propensities.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

96.     Master Defendants and each of them negligently, carelessly, and recklessly hired, employed, retained, trained, supervised, assigned, controlled, and negligently, carelessly, and recklessly failed to adequately discipline their respective Servant Defendants, even though the Master Defendants, and each of them, knew, or in the exercise of reasonable diligence should have known, that their respective Servant Defendants had a propensity for using unnecessary, unreasonable, excessive force, and were otherwise vicious and unfit to be given the responsibilities with which their professional positions were imbued.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff Talada.

97.     The Defendants and each of them knew or should have known their duties owed to Plaintiff Talada, and negligently breached such duties

98.     The conduct of the Servant Defendants and each of them described in this Complaint was done within the course and scope of their employment, agency and/or service for their respective Master Defendants and each of them, and under color of their authority.  Therefore, the Master

27

1  Defendants, and each of them, are vicariously liable for such unlawful conduct of their respective

2  Servant Defendants under California Government Code §§ 815.2, 815.3, and 820 and under

3  other laws.

4  99.     Alternatively, the unlawful conduct of the Defendants and each of them was done in their

5  individual capacity, and so the Defendants and each of them is individually liable for the injuries

6  they directly and/or proximately caused Plaintiff Talada by way of such unlawful conduct.

7  100.     The Master Defendants and each of them negligently, carelessly, and/or with a reckless

8  disregard for the safety of the public in general and of Plaintiff Talada in particular, employed

9  and supervised their respective Servant Defendants, and assigned said Defendants to duties

10  which enabled each of them to use unreasonable, unnecessary and excessive force against

11  Talada.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff

12  Talada.  The Defendants and each of them directly and proximately caused the damages and

13  harm suffered by the Plaintiffs.

14  101.     By way of their above-detailed actions and omissions, Defendants and each of them

15  directly and proximately caused the injuries, harm and damages to Plaintiff Talada, and Plaintiff

16  Talada has actually suffered such injuries, harm, and damages, as detailed in this Complaint.

17  102.     WHEREFORE, Plaintiff Talada prays for damages against Defendants, and each of them,

18  as set forth in the Prayer below.

19

20                              **FIFTH CLAIM**

21              **NEGLIGENT HIRING, RETENTION, SUPERVISION, TRAINING**

22                **(By Plaintiff LaBella Against Guardsmark and Does 1-100)**

23  103.     Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

24  above paragraphs as though fully set forth herein.

25  104.     Plaintiff LaBella is informed and believes, and thereupon alleges, that Defendants and

26  each of them owed the public in general, and Plaintiff in particular, a duty to use reasonable and

27  due care in carefully hiring, retaining, training, and supervising their agents, servants, and/or

28  employees, owed Plaintiff LaBella a duty of due care to continuously review and evaluate the

28

competency and fitness of their agents, servants and/or employees, and to insure that their agents, servants and/or employees are fit and competent for the tasks for which they were hired.

105.     Plaintiff LaBella is informed and believes, and thereupon alleges, that prior to the events described herein above, the Master Defendants and each of them had actual and/or constructive notice and knowledge of the propensities of their respective Servant Defendants to commit the above described acts and to abuse their position and authority, and such Master Defendants failed to take sufficient reasonable steps to prevent such negligence and intentional abuse of power and the resultant harm, in complete disregard of the rights and safety of the public in general and of Plaintiff LaBella in particular.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff LaBella.

106.     Plaintiff LaBella is informed and believes, and thereupon alleges, that by hiring, employing, and retaining their respective Servant Defendants to a position of trust and special authority with the public, the Master Defendants and each of them, held their respective Servant Defendants out to the public in general and to Plaintiff LaBella in particular, as reasonably competent and trustworthy.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff LaBella.

107.     Plaintiff LaBella is further informed and believes, and thereupon alleges, that Master Defendants and each of them had a duty to reasonably and properly supervise their servants, agents, and/or employees because such of their respective Servant Defendants were in a unique position of trust, confidence, power, and authority, under which the public in general, and Plaintiff LaBella in particular, should be able to reasonably suppose themselves to be safe from wrongful conduct, abuse of power, and harm.

108.     Plaintiff LaBella reasonably relied upon such representations and reasonable expectations of Defendants, and as a direct and proximate result of each and every Defendants' negligence, Plaintiff LaBella suffered injury and sustained harm and damages.

109.     Plaintiff LaBella is informed and believes, and thereupon alleges, that Master Defendants and each of them negligently, carelessly, recklessly, and/or in any other actionable manner, failed to properly hire, train, and ensure the character, quality, ability, fitness and competence of

29

1    their respective Servant Defendants.  Thus, the Defendants and each of them breached the duties

2    they owed to Plaintiff LaBella.

3    110.    Plaintiff LaBella is further informed and believes, and thereupon alleges, that the Master

4    Defendants and each of them failed to reasonably and properly monitor, retain, and supervise

5    their respective Servant Defendants in order to reasonably insure that the public in general and

6    Plaintiff LaBella in particular would be protected from wrongful conduct, abuse of power, and

7    harm.  Thus, the Defendants and each of them breached the duties they owed to Plaintiff

8    LaBella.

9    111.    Plaintiff LaBella is informed and believes, and thereupon alleges, that Master Defendants

10   and each of them did nothing to stop their respective Servant Defendants from acting unlawfully,

11   unprofessionally, dangerously, wrongfully, and/or tortiously, even after they knew, or should

12   have known, of their respective Servant Defendants' deviant propensities.  Thus, the Defendants

13   and each of them breached the duties they owed to Plaintiff LaBella.

14   112.    Master Defendants and each of them negligently, carelessly, and recklessly hired,

15   employed, retained, trained, supervised, assigned, controlled, and negligently, carelessly, and

16   recklessly failed to adequately discipline their respective Servant Defendants, even though the

17   Master Defendants, and each of them, knew, or in the exercise of reasonable diligence should

18   have known, that their respective Servant Defendants had a propensity for acting unlawfully,

19   unprofessionally, dangerously, wrongfully, and/or tortiously, and were otherwise dangerous and

20   unfit to be given the responsibilities with which their professional positions were imbued.  Thus,

21   the Defendants and each of them breached the duties they owed to Plaintiff LaBella.

22   113.    The Defendants and each of them knew or should have known their duties owed to

23   Plaintiff LaBella, and negligently breached such duties.

24   114.    The conduct of the Servant Defendants and each of them described in this Complaint was

25   done within the course and scope of their employment, agency and/or service for their respective

26   Master Defendants and each of them, and under color of their authority.  Therefore, the Master

27   Defendants, and each of them, are vicariously liable for such unlawful conduct of their respective

28   Servant Defendants under California Government Code §§ 815.2, 815.3, and 820 and under

30

1  other laws.

2  115.   Alternatively, the unlawful conduct of the Defendants and each of them was done in their

3  individual capacity, and so the Defendants and each of them is individually liable for the injuries

4  they directly and/or proximately caused Plaintiff LaBella by way of such unlawful conduct.

5  116.   The Master Defendants and each of them negligently, carelessly, and/or with a reckless

6  disregard for the safety of the public in general and of Plaintiff LaBella in particular, employed

7  and supervised their respective Servant Defendants, and assigned said Defendants to duties

8  which enabled each of them to act unlawfully, unprofessionally, dangerously, wrongfully, and

9  tortiously against LaBella.   Thus, the Defendants and each of them breached the duties they

10  owed to Plaintiff LaBella.  The Defendants and each of them directly and proximately caused the

11  damages and harm suffered by the Plaintiffs.

12  117.   By way of their above-detailed actions and omissions, Defendants and each of them

13  directly and proximately caused the injuries, harm and damages to Plaintiff LaBella, and Plaintiff

14  LaBella has actually suffered such injuries, harm, and damages, as detailed in this Complaint.

15  118.   WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as set

16  forth in the Prayer below.

17

18  **SIXTH CLAIM**

19  **INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS**

20  **(By Plaintiff Talada against Police Defendants, Cristina Akeson and Does 1-100; and by**

21  **Plaintiff LaBella Against Cristina Akeson and Does 1-100)**

22  119.   Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

23  above paragraphs as though fully set forth herein.

24  120.   Plaintiffs are informed and believe, and thereupon allege, that the Defendants' and

25  each of their conduct described in this Complaint was extremely severe and outrageous, and

26  done with the intent of causing, or reckless disregard to the probability of causing, severe

27  emotional distress, and did actually cause severe emotional distress to Plaintiffs.

28  121.   Plaintiffs allege that by doing the acts described in this Complaint, Defendants and

31

1   each of them intentionally and maliciously misused and took advantage of their power and

2   authority as guardians of the public trust, as police officers, security professionals, public

3   entities, and/or private entities with a professional standard of due care owed to the public

4   and to the Plaintiffs in the conduct of their duties.

5   122.    Plaintiffs further allege that due to the trust and authority given to public entities,

6   police officers and security personnel by virtue of their position and duty to safeguard the

7   public and uphold the law, Defendants and each of them had a special relationship with

8   Plaintiffs and owed a duty of care to Plaintiffs who reasonably and detrimentally relied upon

9   said Defendants to act according to such professional duties and responsibilities to the public

10  in general and to Plaintiffs  in particular.  By committing the acts and omissions described in

11  this Complaint, Defendants and each of them breached said duty of care.  The Defendants

12  and each of them directly and proximately caused the damages and harm suffered by the

13  Plaintiffs.

14          a.Plaintiff Talada alleges that Cristina Akeson engaged in intentional infliction of

15  emotional distress by causing Talada to be falsely arrested by the Police Defendants as the

16  "Nor-Cal Rapist," and to suffer the distress and shame of being falsely arrested and

17  incarcerated, and to also thereby suffer a distressed relationship with Melody LaBella.

18          b.Plaintiff Talada alleges that the Police Defendants engaged in intentional infliction

19  of emotional distress by recklessly arresting Plaintiff Talada as the Nor-Cal Rapist even

20  though Police Defendants knew or should have know Talada was not the Nor-Cal Rapist, and

21  by causing Talada to be incarcerated due to this false arrest; and by issuing statements

22  regarding the arrest to various media which proclaimed that Talada was arrested as the Nor-

23  Cal Rapist.

24          c. Plaintiff LaBella alleges that Cristina Akeson engaged in intentional infliction of

25  emotional distress by doing the following: 1) writing and sending a defamatory letter to the

26  Martinez Police Department which falsely accused James Talada as a rapist for the purpose

27  of causing Talada to be arrested and thereby causing emotional distress to La Bella (e.g.,

28  Para. 23(e) and (f) of this Complaint); 2) writing and sending the defamatory and harassing

32

letters (described above at Para. 23(i)) and (j) to LaBella's place of work which was done for the purpose of causing LaBella to suffer emotional distress due to the false accusations and disturbing content of such letters.

123.    The Defendants and each of them knew or reasonably should have known their reasonable duties owed to Plaintiffs, and negligently breached such duties

124.    Defendants and each of them proximately and directly caused the Plaintiffs' and each of their injuries, harm, and damages.  As a result of the unlawful intentional actions of said Defendants, and each of them, Plaintiffs and each of them suffered the damages and injuries as described herein.

125.    The aforementioned acts of the Servant Defendants and each of them were done by them knowingly, intentionally, and maliciously for the purpose of harassment, oppression, and inflicting injury upon Plaintiffs, and in reckless, wanton, and callous disregard of Plaintiffs' safety, security and civil rights.  By reason thereof, Plaintiffs claims exemplary and punitive damages from said Defendants in an amount according to proof at trial.

126.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as set forth in the Prayer below.

## SEVENTH CLAIM

### CONVERSION OF PERSONAL PROPERTY

#### (By Plaintiff Talada Against Police Defendants and Does 1-100)

127.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

128.    At all times herein mentioned, and in particular on or about February 5, 2007, plaintiff was owner, and still is owner, entitled to the possession of various articles of personal property which the Defendants unlawfully took, or intentionally, directly and proximately caused to be taken, via trespass, without a valid or lawfully effectuated warrant

33

1    and without valid consent, from the person of Plaintiff Talada and from Plaintiff Talada's

2    Martinez, CA home and from Talada's Reno apartment, as well as from the same Martinez,

3    CA home of Plaintiff Talada's girlfriend, Melody LaBella.  Despite Plaintiff Talada's

4    multiple requests for the return of such personal property, Defendants who converted such

5    property, or who caused the conversion of such property, have refused to return such

6    property.

7    129.    On or about February 6, 2007, in Martinez, California and in Reno, Nevada, the

8    above-mentioned personal property was very personal and confidential in nature to Plaintiff

9    Talada and had a nominal monetary value of less than $100.

10   130.    The Defendants, and each of them, converted each and all this above-mentioned

11   personal property of Plaintiff Talada with malice, intent, knowledge, bad faith, oppression

12   and fraud.

13   131.    As a direct and proximate result of such conversions by the Defendants and each of

14   them, Plaintiff has suffered economic loss and monetary damages.

15   132.    As a remedy, Plaintiff prays this court to order the Defendants to pay him restitution

16   for the conversions of the above-mentioned personal property plus the legal rate of interest,

17   plus punitive damages.

18   133.    WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

19   set forth in the Prayer below.

20

21                              **EIGHTH CLAIM**

22                                **TRESPASS**

23        **(By Plaintiffs Talada Against all Defendants Except Guardsmark)**

24   134.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

25   above paragraphs as though fully set forth herein.

26   135.    Defendants, and each of them, have actually and/or constructively trespassed, or

27   intentionally, recklessly, and/or negligently caused others to so trespass, upon Plaintiff

28   Talada and Plaintiff LaBella's Martinez, CA home and Talada's Reno apartment.

136.    At all times relevant herein, Plaintiffs LaBella and Talada were respectively in legal possession of LaBella's Martinez, CA home and Talada's Reno apartment.  Plaintiffs both now live in LaBella's Martinez, CA home.

137.    On or about February 5, 2007, Police Defendants, all Defendants, and each of them, without Plaintiff Talada's or Plaintiff LaBella's voluntary and intelligent consent, license or authority, and against the clearly manifested will of Plaintiff Talada, knowingly, intentionally, recklessly, and/or negligently entered, or knowingly, intentionally, recklessly, and/or negligently caused others to unlawfully enter, onto Plaintiff Talada's Martinez, CA and Reno, NV property and unlawfully searched and seized, or knowingly, intentionally, recklessly, and/or negligently caused others to unlawfully search and seize, personal property articles belonging to Plaintiff Talada, without a validly effectuated warrant and without valid consent.

138.    On or about November 7 of 2006, Defendants Cristina Akeson and David Akeson, all Defendants, and each of them, without Plaintiff LaBella's consent, license or authority, and against the clearly manifested will of Plaintiff LaBella, knowingly, intentionally, recklessly, and/or negligently entered, or knowingly, intentionally, recklessly, and/or negligently caused others to unlawfully enter, onto Plaintiff LaBella's Martinez, CA property and/or into portions of said property otherwise clearly and reasonably prohibited to them, and unlawfully searched and/or seized, or knowingly, intentionally, recklessly, and/or negligently caused others to unlawfully search and/or seize, personal property articles belonging to Plaintiff LaBella and Plaintiff Talada.

139.    Defendants', and each of their, trespass has directly and proximately caused injury to Plaintiffs and each of them by depriving them of their respective absolute property right to exclude whomsoever they choose from their respective properties.

140.    Defendants and each of them knew or should have known that they were illegally trespassing, or knowingly, intentionally, recklessly, and/or negligently causing others to unlawfully trespass, upon Plaintiffs' respective properties.

141.    Plaintiff Talada was unlawfully arrested and/or falsely imprisoned at the time of said

35

trespass, therefore he was incapable of notifying the Defendants and each of them to immediately cease and desist from such trespass on or about February 5, 2007.  Plaintiff Talada however has since asked the Police Defendants on multiple occasions for a copy of their warrant, and he has never been shown any such copy at any time.

142.    Plaintiff LaBella was not at home and had no reason to know, and did not know, of the trespass of the Akeson's and each and all of the Defendants at the time of said trespass; therefore, she was not capable of notifying the Akeson's and each and all of the Defendants to immediately cease and desist from such trespass on or about November 7 of 2006.

143.    As a direct and proximate result of the Defendants' and each of their trespassory conduct as alleged in this complaint, Plaintiffs were deprived of their respective use, possession and enjoyment of their respective homes for a period of about one day, incurring general and other damages as a result thereof, as detailed in this Complaint.

144.    Defendants and each of them knowingly, intentionally, maliciously, and oppressively trespassed upon Plaintiffs' respective homes, or knowingly, intentionally, maliciously, and oppressively caused others to so trespass.  Therefore, Plaintiffs pray this Court to levy exemplary and punitive damages against Defendants and each of them for such malicious, intentional, and oppressive trespass.

145.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as set forth in the Prayer below.


## NINTH CLAIM

### INVASION OF PRIVACY:  INTRUSION UPON SECLUSION,

### PUBLIC DISCLOSURE OF PRIVATE FACTS, AND FALSE LIGHT

### (By Plaintif Talada Against all Defendants Except Guardsmark; by Plaintiff LaBella

### Against Cristina Akeson and Does 1-100)

146.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

147.    Plaintiff Talada is informed and believes, and thereupon alleges, that Plaintiff Talada

1    maintained a reasonable expectation of privacy in his Martinez, California and Reno apartment

2    homes, in his rented automobile, upon his person, and throughout his personal belongings and

3    effects maintained at his home, at the Martinez, California home of Melody LaBella, his

4    girlfriend, upon his person, and in his rented automobile.

5    148.    Defendants and each of them knowingly, intentionally, maliciously, recklessly, and/or

6    negligently did, or similarly caused to be done, the following actions:  (a) <u>Intrusion upon</u>

7    <u>Seclusion</u>:  Defendants and each of them unlawfully, personally, physically, and electronically

8    invaded the privacy of Plaintiffs' respective homes, person, automobile, belongings, and/or

9    effects, and thereby unreasonably intruded upon the seclusion and solitude of Plaintiffs in a

10   manner that a reasonable person would find highly offensive; (b) <u>Public Disclosure of Private</u>

11   <u>Facts:</u> Defendants and each of them widely displayed to members of the public private facts

12   about Plaintiffs, private facts about searched and/or seized properties, itemized lists of searched

13   areas in Plaintiffs' zones of privacy, and/or Plaintiff Talada's genetic information and DNA

14   samples, thereby publicly disclosing private facts about Plaintiffs in a manner that a reasonable

15   person would find highly offensive; and (c) <u>False Light:</u>  Defendants and each of them

16   unlawfully and brutally arrested Plaintiff Talada at the centrally-located parking lot of his Reno,

17   Nevada apartment home, using excessive force, publicly communicating hostile words of caution

18   to the public about Plaintiff Talada, and via clear words and actions communicated to the public

19   positioned around the situs of the arrest, and via publications on or about March 22, 2008 in local

20   newspapers such as the Contra Costa Times Newspaper, the Martinez City Times Newspaper,

21   and the KCBS online news website, that Plaintiff Talada is a dangerous person worthy of a large

22   and aggressive police response, including that by the MPD, RPD, SPD, CCCDA, and SWAT,

23   thereby misleading the public about the true character of Plaintiff Talada; and Defendants and

24   each of them unlawfully cast Plaintiff LaBella in the public light as a person supporting and

25   romantically intertwined with Plaintiff Talada who is a dangerous potential felon and a "bad"

26   and "evil" man.

27   149.    Plaintiffs reasonably object to such highly offensive intrusion upon their solitude,

28   highly offensive public disclosure of private facts about them, and highly offensive false light

1   publications maliciously, intentionally, and/or recklessly made by the Defendants and each of

2   them on or about February 5, 2007 (as pertains to Plaintiff Talada) and on or about

3   November of 2006 through April of 2008 (as pertains to Plaintiff LaBella).

4   150.    As a direct and proximate result of each and every above-detailed invasion of privacy

5   by the Defendants and each of them, Plaintiffs' respective privacy rights and interests have

6   been significantly harmed, and thereby Plaintiffs and each of them have in fact suffered

7   actual, general, and other damages as indicated in this Complaint.

8   151.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as

9   set forth in the Prayer below.

10

11                              **TENTH CAUSE OF ACTION**

12        **VIOLATION OF CIVIL RIGHTS, CALIFORNIA CIVIL CODE § 52.1**

13   **(By Plaintiff Talada Against all Defendants Except Guardsmark; by Plaintiff LaBella**

14                    **Against Cristina Akeson and Does 1-100)**

15   152.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

16   above paragraphs as though fully set forth herein.

17   153.    Defendants and each of them are state actors, acting on behalf of a governmental body,

18   and are each and all subject to regulation under the California and United States Constitutions,

19   which prohibit state actors from violating the Civil Rights of all persons.  District Defendants

20   and Police Defendants are public entities and are thus state actors serving governmental

21   functions.  Security Defendants are agents of public entities and are performing duties at

22   CCCSD, thereby having stepped into the role of a state actor and performing the typically public

23   governmental functions of providing security for a public entity.  Thus, Security Defendants are

24   state actors for all intents and purposes of the facts underlying this Complaint.

25   154.    In doing the acts and/or omissions as alleged heretofore in this Complaint, Defendants

26   and each of them intentionally, maliciously, recklessly, and/or negligently caused Plaintiff

27   Talada to be subjected to the violation of his rights under the United States and/or California

28   Constitutions, including, but not limited to, the right to be free from unreasonable searches and

seizures, the right to due process of law, the right to equal protection of the law, the right to be free from bodily harm, and the right to privacy, and specific rights under the Constitution of the State of California, Article I, Section 1 (i.e., property rights, safety rights, privacy rights), Sections 7 and 29 (i.e., due process right), Section 11 (i.e., habeas corpus rights), Section 13 (i.e., right against unreasonable search and seizure), Section 17 (i.e., right against cruel and unusual punishment and imprisonment), among other California civil rights.

155.    In doing the acts and/or omissions as alleged heretofore in this Complaint, Defendants intentionally, maliciously, recklessly, and/or negligently caused Plaintiff LaBella to be subjected to the violation of her rights under the United States and/or California Constitutions, including, but not limited to, the right to be free from unreasonable searches and seizures, the right to due process of law, the right to equal protection of the law, the right to be free from bodily harm, and the right to privacy, and specific rights under the Constitution of the State of California, Article I, Section 1 (i.e., property rights, safety rights, privacy rights), Sections 7 and 29 (i.e., due process right), Section 13 (i.e., right against unreasonable search and seizure), among other California civil rights.

156.    As a direct and proximate result of said Defendants' violation of Plaintiffs' and each of their constitutional rights, Plaintiffs incurred damages as alleged in this Complaint and are also entitled to an award of statutory damages under California Civil Code Sections 52 and 52.1.

157.    The aforementioned acts of Defendants and each of them were done by them knowingly, intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury upon Plaintiffs, and in reckless, wanton, and callous disregard of Plaintiffs' safety, security, and Civil Rights.  By reason thereof, Plaintiffs claim exemplary and punitive damages from said Defendants in an amount according to proof at trial.

158.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as set forth in the Prayer below.

## ELEVENTH CLAIM
### VIOLATION OF CIVIL RIGHTS PROTECTED

39

**UNDER FEDERAL LAW (42 U.S.C. §§ 1983 and 1988)**

**AND UNDER THE CONSTITUTION**

**OF THE STATE OF CALIFORNIA**

**(By Plaintiff Talada against Police Defendants and Does 1-100)**

159.     Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

160.     Police Defendants and each of them are state actors, acting on behalf of a governmental body, and are each and all subject to regulation under the California and United States Constitutions, which prohibit state actors from violating the Civil Rights of all persons.  District Defendants and Police Defendants are public entities and are thus state actors serving governmental functions.  Security Defendants are agents of public entities and are performing duties at CCCSD, thereby having stepped into the role of a state actor and performing the typically public governmental functions of providing security for a public entity.  Thus, Security Defendants are state actors for all intents and purposes of the facts underlying this Complaint.

161.     The unlawful use of force, assault, battery, unlawful arrest, unlawful searches and seizure of both Plaintiff's person and property, intentional infliction of emotional distress, intentional misrepresentation and nondisclosure of material facts by Police Defendants and each of them, trespass, invasion of privacy, false imprisonment, failure to issue *Miranda* warnings, denial of access to an attorney despite Plaintiff Talada's multiple requests during a police investigative interrogation, and other unlawful actions fully described in this Complaint that were taken against Plaintiff Talada by the Defendants and each of them was unconstitutional, without cause or justification, excessive and illegal, and in violation of Plaintiff's constitutional rights to be free from excessive, unreasonable, and unjustified force against his person and free from unlawful searches and seizures in violation of civil rights protected under the Constitution of the State of California, Article I, Section 1 (i.e., property rights, safety rights, privacy rights), Sections 7 and 29 (i.e., due process right), Section 11 (i.e., habeas corpus rights), Section 13 (i.e., right against unreasonable search and seizure), Section 17 (i.e., right against cruel and unusual punishment), among other California civil rights; and in violation of the civil rights protected under the

Constitution of the State of Nevada, Article I, Section 1 (i.e., inalienable rights, property rights, safety rights, privacy rights), Section 5 (habeas corpus), Sections 6 and 7 (no excessive bail, proof required to set bail, no cruel and unusual punishment and imprisonment), Section 8 (i.e., due process rights, right to an attorney, *Miranda* rights, property seizure rights), Section 18 (i.e., right against unreasonable searches and seizures), among other Nevada civil rights.

162.   Plaintiff Talada further alleges that the Police Defendants acting with malice, intent, and/or with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general and of Plaintiffs Talada in particular, knowingly maintained, enforced, and applied a policy and practice of:

a.   Employing and retaining employees who Defendants and each of them at all times herein knew, or reasonably should have known, had dangerous propensities for abusing and/or neglecting their authority and committing acts of excessive force among other unlawful acts and omissions;

b.   Inadequately supervising, training, controlling, assigning, and disciplining employees who Defendants and each of them knew, or in the exercise of reasonable care should have known, had the afore-described propensities and character traits;

c.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the unlawful and unprofessional conduct of such employees, including with respect to illegal acts and acts of excessive force; and

d.   Fostering and encouraging a policy, pattern, and practice of violence through their official positions that directly and proximately resulted in the excessive force and unlawful actions against Plaintiffs.

163.   At all times prior to February 5, 2007, the Master Defendants and each of them knew or should have reasonably known that their respective Servant Defendants and each of them had a propensity to act unlawfully, and/or to fail to prevent, despite their duty to do so, such unlawful conduct, including but not limited to, excessive, unreasonable and/or unjustified use of force and unlawful searches and seizures; yet, the Master Defendants failed to adequately hire, train, retain, monitor, supervise, and discipline their respective Servant Defendants.

41

164.    The Master Defendants and each of them have as a matter of policy, custom and/or practice, with deliberate and reckless indifference, failed to properly sanction or discipline their respective Servant Defendants and each of them for violations of the law and the constitutional rights of citizens, and the Master Defendants have unlawfully tolerated, ratified, permitted, concealed, failed to disclose, failed to reasonably discover, and/or condoned systematic misuse of force, power and authority, and violations of the law, by their respective Servant Defendants, thereby intentionally, maliciously, recklessly, and/or negligently causing them to engage in said unlawful conduct.

165.    The Master Defendants and each of them had knowledge that some or all of the wrongs described in detail above, were about to be committed, had the power to prevent or aid in the prevention of commission of said wrongful acts and by reasonable diligence could have prevented the aforementioned wrongs done, but neglected and/or refused to prevent, or aid in the prevention of commission of said wrongs done.

166.    As a direct and proximate result of Defendants' and each of their actions, Plaintiff Talada deprived of rights, privileges, and immunities under the the laws of the States of California, in particular, the rights to be secure in one's person, to be free from unjustified, unauthorized and/or excessive use of force, to be free from unlawful searches and seizures, to be free from unreasonable invasions of privacy, trespass, assault, battery, unlawful arrest, false imprisonment, and other violations of law enumerated and specifically described in this Complaint, in violation of 42 U.S.C. § 1983; protected under the Constitution of the State of California, Article I, Section 1 (i.e., property rights, safety rights, privacy rights), Sections 7 and 29 (i.e., due process right), Section 11 (i.e., habeas corpus rights), Section 13 (i.e., right against unreasonable search and seizure), Section 17 (i.e., right against cruel and unusual punishment), among other California civil rights.

167.    As a direct and proximate result of Defendants' and each of their actions, Plaintiffs suffered the injuries and damages described herein.

168.    Plaintiff Talada is informed and believe and thereupon allege that the conduct of the Defendants and each of them was intentional, malicious, oppressive, and/or done with a

42

1  conscious or reckless disregard for the rights of Plaintiffs Talada.  As a result, Plaintiff Talada

2  entitled to recover all damages provided for the violation of these rights and his personal injuries,

3  including but not limited to, general and special damages according to proof, punitive damages,

4  costs of suit and attorney fees under 42 U.S.C. § 1988.

5  169.     WHEREFORE, Plaintiff Talada pray for damages against Defendants, and each of them,

6  as set forth in the Prayer below.

7

8                                       **TWELFTH  CLAIM**

9                              **DEFAMATION OF CHARACTER**

10  **(By Plaintiff Talada Against all Defendants Except Guardsmark; by Plaintiff LaBella**

11                       **Against Cristina Akeson and Does 1-100)**

12  170.     Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

13  above paragraphs as though fully set forth herein.

14  171.     Plaintiffs having, prior to the publication and communication of defamatory

15  statements by the Defendants and each of them, enjoyed a good reputation both generally and

16  in their respective professional occupations, hereby allege that Defendants and each of them

17  intentionally, knowingly, recklessly, maliciously, and/or negligently made, and/or

18  intentionally, knowingly, recklessly, maliciously, negligently, and/or proximately and

19  directly caused others to make, a false and defamatory statement concerning and specifically

20  naming the Plaintiffs and each of them, including but not limited to entirely false, libelous,

21  slanderous, libelous per se, and slanderous per se statements and communications about, of,

22  concerning, and specifically naming the Plaintiffs to third-persons, who so understood the

23  false statements to be about the Plaintiffs and/or each of them.

24  172.     Specifically, on or about February of 2007, or thereabouts, as well as on other dates

25  noted above, Defendants, and each of them, intentionally, knowingly, maliciously,

26  recklessly, and/or negligently published and/or communicated, and/or similarly caused others

27  to so publish and/or communicate, false, written, defamatory, and per se defamatory

28  statements about the Plaintiffs and each of them to third persons, including other employees

43

at CCCSD, Guardsmark, and other third persons, communicating that Plaintiff LaBella is professionally untrustworthy, sexually promiscuous, sadomasochistic, and kinky, and/or that Plaintiffs LaBella and/or Talada had potentially committed crimes of moral turpitude, namely rape, theft, and/or murder.

173.    For example, on or about February 5, 2007, Defendant Sergeant Gary Peterson of MPD told Terry Geis in person outside the RPD investigations room that the Police Defendants and each of them were totally sure that they had found the NorCal Rapist, and that Plaintiff Talada was him.  Specifically, after a lengthy interview with Terry Geis, during which Sergeant Gary Peterson asked Terry Geis numerous questions, Terry Geis asked Sgt. Gary Peterson if there was any way that Talada was not the NorCal Rapist, and Sergeant Gary Peterson responded, "no."

174.    Also, the Police Defendants and each of them issued public statements on March 22, 2008 or thereabouts, publishing in various local newspapers, such as the Contra Costa Times Newspaper, the Martinez News Gazette Newspaper, and the online KCBS News, the name and description of Plaintiff Talada, publicly insisting to his local community (upon whom he is utterly dependent for work as a real estate agent) that good legal grounds did in fact exist for his arrest as the suspected NorCal Rapist.

175.    Further, in or about February of 2007, Plaintiffs are informed and believe, and thereupon allege that, in an act of malicious revenge and envy against Plaintiff LaBella, Cristina Akeson via an act of libel communicated via an anonymous written note to Plaintiff LaBella's General Manager, James M. Kelly, at CCCSD the Plaintiff LaBella had been shirking her professional duties at CCCSD, that LaBella is an untrustworthy employee, that she had failed to be at work during the month of January of 2007, and that her immediate supervisor, "Don B.," had been covering-up for Plaintiff LaBella's absence.  Such entirely false and defamatory per se statements were made about Plaintiff LaBella by Cristina Akeson, and as a direct and proximate result of Defendants and each of their unlawful and tortious conduct, including their negligence, recklessness, malice and intentional wrongdoing, as detailed in this Complaint.

176.    Further, in mid-February of 2007, on Cristina Akeson's last day at work before she took her two-week vacation to Puerto Vallarta, Mexico, Cristina Akeson sent an anonymous letter, via

interoffice mail, to Patty Wedemeyer, the CCCSD employee who caught Cristina Akeson on videotape stealing property in the CCCSD lobby.  This letter defamed Plaintiffs Talada and LaBella, stating that both Talada and LaBella were under investigation for theft, rape and murder.  Patty Wedemeyer told CCCSD's Human Resources Director, Cathryn Freitas, that she felt that Cristina Akeson had sent the anonymous letter because of Cristina Akeson's previous bizarre, mentally-imbalanced and unlawful behavior in the CCCSD workplace.  Cathryn Freitas immediately dismissed that there was a problem and ignored the problem.

177.     In each and every above instance of defamatory conduct, the Defendants and each of them intentionally, knowingly, maliciously, recklessly, and/or negligently uttering, publishing, or otherwise communicating such false and defamatory statements against the Plaintiffs and each of them, knew or should have known, maliciously intended, or showed reckless disregard that that they were defaming the Plaintiffs, that the statements were about and concerning the Plaintiffs, that the person to whom such statements were communicated or published understood or would reasonably be expected to understand that such defamatory false statements were about and concerning Plaintiff Talada and/or LaBella specifically, that the statements were false, that the statements would proximately and directly cause damage to the Plaintiffs, and that there was no legal justification or privilege to utter such defamatory statements.

178.     These libelous and entirely false statements are per se defamatory, as they are libelous on their face, attribute crimes of moral turpitude, sexual lasciviousness, and professional untrustworthiness to the Plaintiffs and/or each of them, and clearly expose the Plaintiffs and each of them to hatred, contempt, ridicule, and obloquy to all persons who read and/or heard the defamatory statements at CCCSD, Guardsmark, and other third persons.

179.     As a direct and proximate result of the above-described publication, Plaintiffs and each of them have suffered loss of their respective professional and personal reputation, shame, mortification, severe emotional injury and distress, pain and suffering, economic loss, loss of professional opportunities, and other damages, all to their respective damage in an amount to be established by proof at trial.

180.     The above-described publications, and each of them, were not privileged because they

were published by Defendants and each of them with intent, malice, hatred, ill will, reckless disregard, and/or aggravated negligence toward the Plaintiffs and each of them, and the intent to injure each of the Plaintiffs; such publications and each of them are not privileged because they are not protected by any US Constitutional First Amendment rights; and/or such publications and each of them are not protected by any privileges maintained by police officers or public entities engaged in ministerial functions, because such defamatory statements and publications were communicated, published or otherwise uttered by public officers and entities in blatant and abject breach of legal and ministerial duties incumbent upon them by the laws of the USA, California, and/or Nevada.

181.    The aforementioned acts of Defendants and each of them were done by them knowingly, intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury upon Plaintiffs and each of them, and in reckless, wanton, and callous disregard of Plaintiffs' and each of their reputation, emotional well-being, peace and security.  By reason thereof, Plaintiffs and each of them claim exemplary and punitive damages from said Defendants in an amount according to proof at trial.

182.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as set forth in the Prayer below.

## RESPONDEAT SUPERIOR

183.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

184.    Based on information and belief, Plaintiffs assert in good faith the following allegations within all of the above causes of action:

185.    Wherever the individual Defendants and each of them did not act in their individual capacities alone, in all matters, events and dates applicable herein, the Servant Defendants and each of them acted within the scope of their professional duties and on behalf of, at the direction of, and for the benefit of their respective Master Defendants. The conduct of the Servant Defendants and each of them described in this Complaint was done within the course and scope of their employment, agency and/or service for their respective Master Defendants

and each of them, and under color of their authority.  The Master Defendants and each of them consciously disregarded, authorized, and/or ratified the conduct of their respective Servant Defendants.  Accordingly, the Master Defendants and each of them, are liable as *respondeat superior* for the acts of their respective Servant Defendants who were acting within the course and scope of their employment. Therefore, the Master Defendants, and each of them, are vicariously liable for such unlawful conduct of their respective Servant Defendants under California Government Code §§ 815.2, 815.3, and 820.

186.    Alternatively, the unlawful conduct of the Defendants and each of them was done in their individual capacity, and so the Defendants and each of them is individually liable for the injuries they directly and/or proximately caused Plaintiff Talada by way of such unlawful conduct.

187.    For the reasons specified in this complaint, Plaintiffs pray this Court to hold the Master Defendants and each of them fully vicariously liable for the herein-alleged tortious and unlawful conduct of their respective Servant Defendants.

188.    WHEREFORE, Plaintiffs pray for damages against Defendants, and each of them, as set forth in the Prayer below.

## DAMAGES

189.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the above paragraphs as though fully set forth herein.

190.    Plaintiffs are informed and believe, and thereupon allege, that the Defendants' and each of their conduct described in this Complaint was extremely severe and outrageous, and done with the intent of causing, or reckless disregard to the probability of causing, severe emotional distress, and did actually cause severe emotional distress to Plaintiffs.

191.    Plaintiffs have also sustained damages by way of loss of earnings, medical expenses, lost future income, loss of reputation, court costs, and attorneys fees, as well as general damages.

## **PRAYER**

47

1   192.    Plaintiffs hereby reallege and incorporate each and every allegation set forth in all the

2   above paragraphs as though fully set forth herein.

3   193.    Defendants and each of them intentionally, oppressively, unduly burdensomely,

4   fraudulently, and maliciously caused injury to Plaintiffs and each of them by doing the

5   specific unlawful and intentionally tortious acts enumerated and specifically described in this

6   Complaint, including but not limited to Assault and Battery, Unlawful Arrest, False

7   Imprisonment, Invasion of Privacy, Intentional Infliction of Severe Emotional Distress,

8   Intentional Misrepresentation and Nondisclosure of Material Facts, Trespass, Conversion of

9   Personal Property, Intentional Violation of Plaintiff Talada's Civil Rights under State of

10  California and Federal laws, and/or Defamation.

11  194.    Per California Civil Code §3294, Plaintiffs and each of them hereby pray this court to

12  levy punitive and exemplary damages against the Defendants and each of them for their

13  malicious, oppressive, unduly burdensome, and intentional actions against Plaintiffs, as noted

14  with specific detail in each of the Paragraphs in this Complaint.  The exact amount of such

15  punitive damages is to be determined by the court in its discretion and based upon evidence

16  submitted by Plaintiffs at trial.

17  195.    Mindful of the public's and Plaintiffs' right to be protected from the unlawful

18  practices and policies of the Defendants, and each of them, Plaintiffs pray this court to issue a

19  preliminary mandatory injunction to each and all of these Defendants to uphold the civil

20  rights of all persons with whom these Defendants come into contact in their professional

21  dealings, to allow post-judgment discovery by the Plaintiffs and/or by Special Masters, to

22  assign and order Special Masters to conduct exhaustive and unhindered quarterly reviews of

23  citizens' reports of civil rights and personal safety violations by these entities, and for such

24  Special Masters to make quarterly reports of such investigations to this court to educate this

25  court so that this court may properly fashion effective and remedial court orders to ensure

26  that the civil rights and personal safety of all persons coming into contact with these

27  Defendants are upheld.

28  196.    Therefore, this court should grant both the Preliminary Mandatory and Prohibitive

48

1  Injunctions against the Defendants and each of them.

2  197.    Mindful of the public's and Plaintiffs' right to be protected from the unlawful

3  practices and policies of the Defendants, and each of them, Plaintiffs pray this court to issue a

4  permanent mandatory injunction to each and all of these Defendants to uphold the civil rights

5  of all persons with whom these Defendants come into contact in their professional dealings,

6  to allow post-judgment discovery by the Plaintiffs and/or by Special Masters, to assign and

7  order Special Masters to conduct exhaustive and unhindered quarterly reviews of citizens'

8  reports of civil rights and personal safety violations by these entities, and for such Special

9  Masters to make quarterly reports of such investigations to this court to educate this court so

10  that this court may properly fashion effective and remedial court orders to ensure that the

11  civil rights and personal safety of all persons coming into contact with these Defendants are

12  upheld.

13  198.    For the reasons specified in this complaint, in all matters, events and dates applicable

14  herein, and because each and every Defendant has acted in their individual capacity, and/or

15  under color of law or authority, and/or as the employee, agent, and/or servant of other

16  Defendants, and has knowingly, intentionally, maliciously, fraudulently, and/or in reckless

17  disregard of a likely and significant risk of substantial harm to Plaintiffs, acted to injure

18  Plaintiffs in each and every manner indicated in each and every of the causes of action in this

19  Complaint, and because it would unreasonably and unduly burden Plaintiffs to parse out

20  liability among the various tortfeasor Defendants, Plaintiffs pray this Court to declare each

21  and every individual Defendant in this complaint to be Jointly and Severally Liable for any

22  and all damages to Plaintiffs as addressed in this Complaint and its Prayer.

23  199.    The conduct of the Servant Defendants and each of them described in this Complaint was

24  done within the course and scope of their employment, agency and/or service for their respective

25  Master Defendants and each of them, and under color of their authority.  The Master Defendants

26  and each of them consciously disregarded, authorized, and/or ratified the conduct of their

27  respective Servant Defendants.  Accordingly, the Master Defendants and each of them are liable

28  as *respondeat superior* for the acts of their respective Servant Defendants who were acting

49

within the course and scope of their employment. Therefore, the Master Defendants, and each of them, are vicariously liable for such unlawful conduct of their respective Servant Defendants under California Government Code §§ 815.2, 815.3, and 820 and under other laws.

200.    Alternatively, the unlawful conduct of the Defendants and each of them was done in their individual capacity, and so the Defendants and each of them is individually liable for the injuries they directly and/or proximately caused Plaintiffs by way of such unlawful conduct

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For consequential and incidental damages according to proof;

4.    For damages for pain and suffering according to proof;

5.    For punitive and exemplary damages according to proof;

6.    For interest at the legal rate on all sums due;

7.    For reasonable attorney's fees as allowed by law and according to proof;

8.    For costs of suit and expert fees pursuant to applicable statutes;

9.    For declaratory relief as indicated herein;

10.    For injunctive relief as indicated herein;

11.    For such other and further relief as the court deems just and proper.

Respectfully submitted,

Dated: March 5, 2009          HENNING & HENNING

_____/s/_____
John F. Henning, Jr.
John F. Henning III
Attorneys for Plaintiffs
JAMES TALADA, III and MELODY LaBELLA