1
2
3
4

Ali Ebrahimzadeh, Esq.
Prometheus:  A Social Justice Law Firm
PO Box 1742
Santa Cruz, CA 95061-1742
Tel: 510-910-3198
PrometheusLaw@Gmail.com

5

Ali Ebrahimzadeh, *Interested Party IN PRO PER*.

6
7
8
9
10
11

UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

12
13

JAMES TALADA, III AND
MELODY LABELLA,

CASE NO.  3:08-CV-02771- WHA

14

PLAINTIFFS.

ALI EBRAHIMZADEH'S NOTICE OF OPPOSITION, OPPOSITION

15

v.

TO CRISTINA AKESON'S AND DAVID AKESON'S MOTION FOR

16
17

CITY OF MARTINEZ, Martinez
Police Department, CHIEF DAVE

SANCTIONS, DECLARATION OF ALI EBRAHIMZADEH, AND

MEMORANDUM OF POINTS AND AUTHORITIES

18

CUTAIA, Martinez Chief of Police,

19

SARGEANT GARY PETERSON or

HEARING DATE:   JAN. 7, 2010

20

DOE 1, a Martinez Police Officer,

TIME:  8:00 AM

21

CRISTINA AKESON, DAVID

22

AKESON, and DOES 2 through

COURTROOM 9, 19TH FL.
HON. WILLIAM H. ALSUP
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA

23

50, inclusive,

24
25

DEFENDANTS.

26
27
28

1

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ……………………………………………………………………3

1. NOTICE OF OPPOSITION ……………………………………………………………....7

2. STATEMENT OF THE ISSUES TO BE DECIDED…………………….…………………7

3. DECLARATION OF FACTS……………………………………………………………7

4. MEMORANDUM OF POINTS AND AUTHORITIES ……………………………………14

    a. SANCTIONS UNDER FRCP RULE 11 MAY NOT BE FAIRLY OR LEGALLY IMPOSED AGAINST ME……………………………………………………………………………14

    b. SANCTIONS UNDER 28 USC §1927 ("§1927") MAY NOT BE EQUITABLY OR LEGALLY IMPOSED AGAINST ME………………………………………………………………22

    c. SANCTIONS UNDER THE COURT'S INHERENT POWERS MAY NOT BE FAIRLY OR LEGALLY IMPOSED AGAINST ME…………………………………………………………24

    d. IN DETERMINING REASONABLE SANCTIONS UNDER THE INHERENT POWERS OF THE COURT, THE COURT MUST FIRST DETERMINE IF LESSER REMEDIES WOULD BEFIT THE SANCTIONABLE CONDUCT, INCLUDING NONMONETARY REMEDIES……………………………………………………………………………29

    e. THE AKESON'S AND MR. POSTAR'S KNOWING FAILURE TO ABIDE BY THE REQUIREMENTS OF THESE THREE DIFFERENT SANCTIONING THEORIES IS SANCTIONABLE…………………………………………………………………….30

    f. THE AKESON'S AND THE PLAINTIFFS SIGNED A STIPULATED AGREEMENT WHICH FORBIDS THIS MOTION FOR SANCTIONS………………………………………………30

    g. THE AKESON'S MOTION FOR SANCTIONS IS BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL. …………………………………………………………30

5. PRAYER ……………………………………………………….......................................31

Ali Ebrahimzadeh's Opposition to Cristina and David Akeson's Motion for Sanctions

1

**TABLE OF AUTHORITIES**

2

<u>CASES:</u>

3

**US SUPREME COURT**

4

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*

5

     (1991) 498 US 533, 551, 111 S.CT. 922, 933............................…..........................14, 16

6

*Chambers v. NASCO, Inc.* (1991) 501 US 32, 54..............................................................24-26, 28

7

*Roadway Express, Inc. v. Piper* (1980) 447 US 752, 764-766.…..........................….........................23

8

**US COURTS OF APPEAL**

9

**Ninth Circuit**

10

*Barber v. Miller* (9th Cir. 1998) 146 F3d 707, 711...................................................................21, 27

11

*B.K.B. v. Maui Police Dept.* (9th Cir. 2002) 276 F3d 1091, 1107.....................................................22

12

*Buster v. Greisen* (9th Cir. 1997) 104 F3d 1186, 1190.......................................................................19

13

*California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*

14

     (9th Cir. 1987) 818 F2d 1466, 1472.....................................................................17

15

*Clark v. Yosemite Community College Dist.* (9th Cir.1980) 785 F.2d 781, 786-787..........................30

16

*Greenberg v. Sala* (9th Cir.1987) 822 F.2d 882, 887........................................................................17

17

*Hamer v. Career College Ass'n* (9th Cir. 1992) 979 F2d 758, 759......................................................16

18

*Hamilton Copper & Steel Corp. v. Primary Steel, Inc.*

19

     (9th Cir. 1990) 898 F2d 1428, 1429-1430.........................................................29

20

*Hernandez v. City of El Monte* (9th Cir. 1998) 138 F3d 393, 399......................................................29

21

*Holgate v. Baldwin* (9th Cir. 2005) 425 F3d 671, 675.......................................................................19

22

*In re Keegan Mgmt. Co., Secur. Litig.* (9th Cir. 1996) 78 F3d 431, 436.............................................22

23

*Jensen v. Electric Co.* (9th Cir.1989) 873 F.2d 1327, 1330...............................................................16

24

*King v. Idaho Funeral Services Ass'n* (9th Cir. 1988) 862 F2d 744, 747, 748.....................................17

25

*Leon v. IDX Systems* (9th Cir. 2006) 464 F3d 951, 959......................................................................24

26

*Mendez v. County of San Bernardino* (9th Cir. 2008) 540 F3d 1109, 1131-1132................................26

27

*Mir v. Little Company of Mary Hospital* (9th Cir. 1988) 844 F2d 646, 653..........................................16

28

*Newton v. Thomason* (9th Cir. 1994) 22 F3d 1455, 1463-1464.........................................................20

3

1  *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*

2        (9th Cir. 2000) 210 F3d 1112, 1118……………………………………………………………22

3  *Pan-Pacific & Low Ball Cable Television Co. v. Pacific Union Co.*

4        (9th Cir. 1993) 9887 F2d 594, 596………………………………………………………14

5  *Primus Automotive Fin'l Svcs., Inc. v. Batarse* (9th Cir. 1997) 115 F3d 644, 649, 650……………26, 28, 29

6  *Radcliffe v. Rainbow Const. Co.* (9th Cir. 2001) 254 F3d 772, 789……………………………………21

7  *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*

8        (9th Cir. 2003) 339 F3d 1146, 1150………………………………………………………21

9  *Salstrom v. Citicorp Credit Svcs., Inc.* (9th Cir. 1996) 74 F3d 183, 185…………………………..………23, 28

10  *Townsend v. Holman Consulting Corp.* (9th Cir. 1990) 914 F2d 1136, 1140, 1142………………16, 20

11  *Zaldivar v. City of Los Angeles* (9th Cir. 1986), 780 F2d 823, 831……………………………........16, 20

12  **Other Circuits**

13  *Bonilla v. Volvo Car Corp.*  (1st Cir. 1998) 150 F3d 88, 93………………………………………28

14  *Bradgate Assocs, Inc. v. Fellows, Read & Assocs., Inc.* (3rd Cir. 1993) 999 F2d 745, 752…..…………16

15  *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*

16        (4th Cir. 2004) 369 F3d 385, 397-398……………………………………………………21

17  *Claiborne v. Wisdom* (7th Cir. 2005) 414 F3d 715, 723………………………………………22

18  *Elliott v. Tilton* (5th Cir. 1995) 64 F3d 213, 216.....................................................................21

19  *FDIC v. Conner* (5th Cir. 1994) 20 F3d 1376, 1384………………………….....…………………21

20  *Gaiardo v. Ethyl Corp.* (3rd Cir. 1987) 835 F2d 479, 483………………………………………18

21  *Gillette Foods Inc. v. Bayernwald-Fruchteverwertung, GmbH*

22        (3rd Cir. 1992) 977 F2d 809, 814, fn. 9………………………………………………28

23  *Handeen v. Lemaire* (8th Cir. 1997)112 F3d 1339, 1245, fn. 8………………………………………21

24  *Hill v. Norfolk & W. R. Co.* (7th Cir. 1987) 814 F.2d 1192, 1206……………………...………24

25  *Hoffmann-LaRoche, Inc. v. Invamed Inc.* (Fed. Cir. 2000) 213 F3d 1359, 1364-1365…………………16

26  *Hutchinson v. Pfeil* (10th Cir. 2000) 208 F3d 1180, 1186-87………………………………27, 28

27  *Kamen v. American Tel. & Tel. Co.* (2nd Cir. 1986) 791 F2d 1006, 1013…………………………18

28  *Lipsig v. National Student Marketing Corp.* (DC Cir. 1980) 663 F2d 178, 181…………………………24

4

*Methode Electronics, Inc. v. Adam Technologies, Inc.* (7th Cir 2004) 371 F3d 923, 927................27, 28

*Martin v. Automobili Lamborghini Exclusive, Inc.* (11th Cir. 2002) 307 F3d 1332, 1337....................30

*Mickle v. Morin* (2nd Cir. 2002) 297 F3d 114, 126............................................................25

*Morda v. Klein* (6th Cir. 1989) 865 F2d 782...............................................................18

*New York News, Inc. v. Kheel* (2nd Cir. 1992) 972 F2d 482, 488............................................21

*Nyer v. Winterthur Int'l* (1st Cir. 2002) 290 F3d 456, 459.................................................21

*Oliveri v. Thompson* (2nd Cir. 1986) 803 F2d 1265, 1277...................................................18

*Proctor & Gamble Co. v. Amway Corp.* (5th Cir. 2002) 280 F.3d 519, 525....................................24

*Riddle v. Egensperger* (6th Cir. 2001) 266 F.3d 542, 556..................................................24

*Shepherd v. American Broadcasting Cos., Inc.* (DC Cir. 1995) 62 F3d 1469, 1477............................24

*Smith et al. v. Our Lady of the Lake Hospital, Inc. et al.*

        (5th Cir, 1992) 960 F.2d 439, 465.............................................................17

*Southern Leasing Partners, Ltd. v. McMullan* (5th Cir. 1986) 801 F2d 783, 788.............................18

*In re Tutu Wells Contamination Litig.* (3rd Cir. 1997) 120 F3d 368, 379...................................25

**FEDERAL DISTRICT COURTS**

*Jones v. Nesom* (E.D. Cal., 2009) 2009 WL 3698509 at 4....................................................30

*Maddox v. E.F. Hutton Mortg. Corp.,* 723 F. Supp. 1246, 1248 (M.D.Tenn. 1989).......................15, 17

**CALIFORNIA COURTS OF APPEAL**

*County of Imperial v. Farmer, Sinclair* (Cal.App. 4 Dist., 1988) 205 Cal.App.3d 479, 486, fn. 3.............31

*Southwell v. Mallery, Stern & Warford* (1987) 194 Cal.App.3d 140, 144.....................................31

**OTHER STATE COURTS IN THE 9TH CIRCUIT'S JURISDICTION**

*Kootenai Elec. Co-op. Inc. v. Lamar Corp* (Idaho, 2009) WL 3153077 at 4....................................30

<u>**STATUTES:**</u>

FEDERAL RULES OF CIVIL PROCEDURE, RULE 8.................................................................19

FEDERAL RULES OF CIVIL PROCEDURE, RULE 9.................................................................19

FEDERAL RULES OF CIVIL PROCEDURE, RULE 10................................................................19

FEDERAL RULES OF CIVIL PROCEDURE, RULE 11..........................................................8, 13--28

28 USC 1927.......................................................................................8, 13, 22-28

1

**OTHER:**

2   Advisory Committee Notes to Rule 11 (1983) 97 FRD 165, 199……………………………………16

3   Committee Notes on Amendments to FRCP (1993) 146 FRD 401, 589……….……………………13, 16

4   House Conf. Rep. No. 96-1234, 96th Cong., 2nd Sess. 8,

5           *reprinted in* 1980 U.S. Code Cong. & Admin. News 2716, 2782-83………………………24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ali Ebrahimzadeh's Opposition to Cristina and David Akeson's Motion for Sanctions

## NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR SANCTIONS,

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

I, Ali Ebrahimzadeh, Esq., hereby oppose David and Cristina Akeson's ("the Akeson's") Motion for Sanctions ("Motion").   This Opposition is based on the facts and arguments contained herein, the documents attached hereto, and on facts and arguments that I will present at the Hearing for this Motion.

## STATEMENT OF THE ISSUES TO BE DECIDED

Whether the court's sparingly-used inherent sanctioning powers can be manipulated by the Akeson's to overcome their substantively and procedurally faulty and bad faith Motion for statutory sanctions, *especially given that their prior identical Sanctions Motion was denied, I have conducted no work on this case since November 19, 2008, and the Akeson's provide no new or valid basis for this re-filed Motion.* **NO.**
Whether I am substantively liable for sanctions under any of these sanctioning theories, given the very limited *authority* and *scope* of my representation for Plaintiffs, *given that the Plaintiffs knowingly filed the incomplete FAC in Pro Per and against my advice, and given the fact that I performed all work in objective and subjective good faith, as noted in the Court's Order denying the prior identical Sanctions Motion.* **NO.**

## DECLARATION OF ALI EBRAHIMZADEH

I, Ali Ebrahimzadeh, declare as follows.  I am an attorney licensed to practice in the Federal District Court for the Northern District of CA and the courts of the State of CA. I am an interested party in this case. If called upon to testify, I am able to testify competently regarding the matters set forth in this declaration. Having personal knowledge of all the facts herein, I declare under penalty of perjury by the laws of the USA that all the facts in this Declaration and its exhibits are true and correct to the best of my knowledge, and that all exhibits and attachments hereto are true and accurate representations of what they purport to be.

Plaintiffs *in Pro Per* made several allegations in their First Amended Complaint ("FAC"), which they filed on October 15, 2008 despite my explicit and confirmed advice on October 14, 2008 (See my 10/14/08 email to Plaintiffs, Exh. A). Prior to September 2008, I had never worked for either Plaintiff as their attorney. They had filed their *original* Complaint in this matter *in Pro Per,* which was drafted by their prior limited scope representation attorney, Tiffany O'Conner, and only named a few Martinez defendants.  By way of three brief and very limited-scope representation contracts with the Plaintiffs, I worked for them for a total of about **six** (6) weeks in the entirety of this action.  On the evening of September 8, 2008, I formed the first

7

explicit and very limited scope representation contract with Mr. Talada, alone, to make a Special Appearance for him at the Initial Case Management Conference ("CMC") on September 10, 2008 and to spend one hour reviewing the related CMC pleadings filed by the parties in the case at that time, but to conduct no other work whatsoever on his behalf. (Relevant portions of contract attached as Exh. B).  At that CMC, the court provided Mr. Talada a copy of the FRCP and Rules of Court, which Mr. Talada told me he immediately read.  On or about September 22, 2008, the Plaintiffs and I formed a second limited scope representation contract for me to draft the FAC and Initial Disclosures for the Plaintiffs which they would, in their sole discretion, verify, sign, file, serve and present *in Pro Per* by the October 16, 2008 deadline. (Relevant portions of contract attached as Exh. C).  In this contract, I wrote that I would not necessarily complete the FAC or Initial Disclosures by October 16, 2008, and that I may require more time than that to so complete these documents.  By this contract, Plaintiffs would be "solely responsible for the **procedurally correct** and timely filing and service of any such documents," and it would remain *outside* of my contractual duties and powers to advise Plaintiffs "on how to correctly file and serve such documents." By the explicit terms of our contract, it remained entirely in Plaintiffs' discretion **whether** and **how** to verify, sign, file, serve and present the FAC, and by implication, to know about and comport with FRCP Rule 11 ("Rule 11"), 28 USC §1927, and all other procedural requirements of the law incumbent upon them alone in signing, filing and presenting any pleadings in this action.  I reminded Plaintiffs of this before they filed the FAC (Exh. A).

During my drafting of the FAC, Plaintiffs provided me with extensive factual allegations regarding the Akeson's and other Defendants. <u>I reasonably investigated the facts and began drafting the FAC, but never completed it by the time the Plaintiffs filed it against my advice (Exh. A).</u>  As specifically directed and limitedly authorized by Mr. Talada, I also immediately informally asked for and received from the Martinez Defendants' attorneys the probable cause warrant and affidavit relating to Mr. Talada's arrest, including information about the note allegedly sent by Mrs. Akeson.  I interrogated the Plaintiffs about all the facts of this case, grilling them about Mr. Talada's arrest and their allegations and interactions with the Akeson's.  Plaintiffs reviewed, analyzed, and entirely oversaw the drafting of various revisions of the FAC, insisting that it was as complete as possible in naming all reasonably culpable defendants and reasonably alleging all relevant facts.  Plaintiffs ultimately agreed to draft by themselves a significant part of the Initial Disclosures. (See Plaintiff's 10/2/08 email to me, Exh. D). Plaintiffs repeatedly asked me to provide them

8

1   the completed FAC before the October 16, 2008 deadline so that they could review and analyze the FAC,

2   and in their sole discretion, verify, sign, file and serve it *in Pro Per*, because the Court had already told

3   them at the CMC that it would not likely grant any extension of time to file another amended Complaint

4   beyond October 16, 2008, despite my requests at that CMC. (See relevant portions of CMC transcript, Exh.

5   D.1). Plaintiffs reasonably believed that if they failed to file the FAC by this deadline, they may be time-

6   barred to ever sue the Akeson's and other added defendants, whom they reasonably and sincerely

7   believed had committed legal wrongs against them.

8          During my three (3) weeks of work on the FAC, I worked tirelessly on this case alone, and I

9   performed about **150** hours, billing about **130** hours, of review, analysis, and investigations of all the

10  Plaintiffs' narrative, documentary and physical evidence and factual allegations against the Akeson's and

11  other Defendants in the FAC, researching the relevant law, and drafting the 90-page FAC and hefty volume

12  of Initial Disclosures including substantial factual information linking the Akeson's to the causation of

13  damages against Plaintiffs. (See my 10/16/08 attorney-client bill, Exh. E). I did not have the time nor my

14  clients' authority or financial backing, per our limited scope representation contract, to formally interview the

15  four dozen defendants named in the FAC, nor any other potential witnesses, prior to the FAC's drafting.

16  Specifically, I did not have the time or authority to locate and interview the Akeson's <u>nor could I reasonably</u>

17  <u>expect some measure of a *confession* from them in this "swearing contest" situation</u>.  Further, Plaintiffs

18  communicated to me that the Akeson's went to significant efforts to minimize the evidence of their

19  wrongdoings during the course of their actions against Plaintiffs and especially at the restraining order

20  hearing filed by Ms. LaBella against Mrs. Akeson, and that the Akeson's took great pains to erase any

21  fingerprints on documentary evidence and otherwise obscure any proof of their alleged conspiratorial plans.

22  <u>More so, Mr. Postar later refused such interviews.</u>

23          As detailed in the Plaintiffs' FAC, Initial Disclosures, and various opposition briefs to the Akeson's

24  Motions to Dismiss and Summary Judgment Motion, the Plaintiffs have pointed to multiple facts forming at

25  least a reasonable basis for each cause of action in the FAC against the Akeson's.  Given all this, and

26  given my dozens of hours of intense investigations of such facts and my drafting work, all in a 3-week time

27  crunch, I reasonably relied upon my clients while drafting the FAC.  At that same time, I also reasonably

28  expected the Akeson's to not be forthcoming about their alleged conspiratorial conduct in this matter, just

1    as they have allegedly ignored the Plaintiffs' discovery requests, and just as they destroyed their laptop

2    computer that would have assisted the Plaintiffs in making their full case against the Akeson's.

3         On October 14, 2008, I provided the Plaintiffs, per their request, with the most recent copy of the

4    FAC that I had drafted, immediately telling them via telephone conversation and email communication that

5    same day that the FAC and the Initial Disclosures were not at all yet completed and finalized by me, that I

6    wanted to conduct further work on the FAC, and that if they filed and served the FAC as-is, they did so at

7    their own peril including the possibility of having the FAC dismissed or being sanctioned for it (Exh. A).

8    Plaintiffs wrote me back via email on the same day acknowledging my warnings, including that the FAC

9    was not complete, that they understood the risk of sanctions or dismissal, and that they were going to file it

10   anyway at their own risk on or before 10/16/08 to comply with the court's filing deadline. They did so, before

11   I had the opportunity to fully complete drafting and editing the FAC and the Initial Disclosures.  (Exh. A).

12        Further, Plaintiffs had every right per our contract to redraft the FAC before filing it. In their sole

13   discretion, Plaintiffs reviewed and analyzed the FAC, signed it, signed a Verification on the FAC, and filed

14   and served the verified FAC *in Pro Per*.  By way of the dozens of documents, hours of Plaintiffs' narratives,

15   and scores of reasonably persuading items of evidence that I had carefully investigated, I had been given

16   every reason to believe that the Plaintiffs' factual allegations were true and sincere, and I reasonably

17   believed that all the causes of action in the FAC that I was drafting were warranted as to each and every

18   Defendant named therein, including the Akeson's.  Yet, I wanted to carefully continue such investigations

19   and my drafting efforts to complete the FAC and Initial Disclosure to my professional satisfaction.  Plaintiffs

20   did not heed my advice nor give me the opportunity to do so (Exh. A).  Contrary to Mr. Postar's allegations,

21   I did not request any specific sum of damages in any pleading, but rather asked for damages per proof.

22        On or about October 29, 2008, the Plaintiffs and I formed our third limited scope representation

23   contract for me to conduct discovery as to all defendants in this matter, and no other work whatsoever

24   (relevant portions of that contract are attached, Exh. F); I provided timely notice of such to opposing

25   counsel (See 5/15/09 Decl. of R. Postar). I performed over **130** hours of work under this third contract,

26   billing about **115** hours for such work. (See my 11/20/08 attorney-client bill, Exh. G). I contacted opposing

27   counsel seeking to conduct discovery of their clients.  For example, in early *November* of 2008, I called the

28   Akeson's attorney, Mr. Postar.  Contrary to his spurious argument that I should have interviewed his clients

1  early in the case, Mr. Postar told me that he would not grant me any access to his clients for depositions or

2  to any information in their possession until the discovery stage was formally opened against his clients,

3  which turned out to be *after my termination* from the case.  He also said that his clients were not yet

4  interested in any negotiations with the Plaintiffs.  I immediately began to draft discovery requests against

5  the Akeson's and several other Defendants.  I was terminated 3 weeks later, having never had the

6  opportunity to conduct any discovery against the Akeson's.

7        My drafts of initial discovery requests were directed to many Defendants, including the Akeson's.

8  Per this third limited scope representation contract, I made a Special Appearance for Mr. Talada at his

9  Deposition on 11/19/08 ("Talada Deposition"). During the midday break at the Talada Deposition, Mr.

10  Talada and I agreed that, although he was very satisfied with my work, he would terminate our attorney-

11  client contract as of the end of the Talada Deposition that day, 11/19/08.  Mr. Talada and I agreed that we

12  would formally inform opposing counsel of this at the recommencement of the Deposition that afternoon;

13  and we did exactly this. This is how I was terminated on 11/19/08 (See 11/20/08 email from Plaintiffs to me

14  confirming my termination, Exh. H). I notified all parties via email by 11/20/08 of the fact that I was no

15  longer the Plaintiffs' attorney (See 11/20/08 email from me to attorneys, Exh. I). Since 11/19/08, I have not

16  been the Plaintiffs' attorney.  After that date, I never had the opportunity nor authority to conduct any

17  discovery that I had drafted, conduct any depositions, nor do any other work in the matter.  On 11/20/08,

18  the Akeson's filed their Motion to Dismiss.  Plaintiffs had the sole duty to respond to this.

19        My authority to do any work outside of the limited scope contracts was also very limited even

20  *during* the six weeks of my representation for the Plaintiffs, since they always remained *in Pro Per* and

21  solely responsible for all work outside of the very limited scope of my representation.  It was the Plaintiffs'

22  sole duty to conduct any pre-filing (and, for an intermediary time between our contracts, any post-filing)

23  interviews of the Defendants; to abide by all rules of law in verifying, signing, filing and serving the FAC; to

24  reply to all the Defendants' filed responses to the FAC, including their Motions to Dismiss; and to represent

25  themselves at all other hearings and trial, among all other work outside of my 3 limited contracts with them.

26        The only additional work that I performed for Plaintiffs was that during November 2008 -- upon

27  Plaintiffs' explicit direction, payment and granting of very limited and necessary authority for me to do so -- I

28  communicated to specific Defendants hand-chosen by the Plaintiffs that the Plaintiffs wished to dismiss the

1   actions as to those Defendants and for them to provide to Plaintiffs, through me, a copy of Stipulated

2   Agreements to that effect.  After Plaintiffs filed the FAC, I advised the Plaintiffs to dismiss many of the

3   Defendants and to seek the court's permission to amend the FAC, but the Plaintiffs did not ever hire me to

4   seek the court's leave to amend the FAC. They were adamant about keeping the Akeson's in the case, as

5   is clear from their intense efforts against the Akeson's here. Through my very limited help, Plaintiffs did

6   dismiss many defendants for various good reasons.  As directed by Plaintiffs, I conveyed such Stipulated

7   Agreements to Plaintiffs once I received them from the Defendants, and the Plaintiffs in some measure

8   communicated directly with these Defendants and represented themselves in signing the Stipulated

9   Agreements to dismiss the action against such chosen Defendants.  It was during the pendency of such

10  Stipulated Agreements and dismissals that I was terminated by Plaintiffs on November 19, 2009.

11       In their sole discretion, Plaintiffs and their attorney-of-record, Mr. Henning, continued to litigate

12  against the remaining Defendants, including the Akeson's, and to have Mr. Henning amend the FAC in

13  various ways, including to strike the conspiracy claim as to Cristina but not David Akeson, thereby alleging

14  that he acted as a sole party in a conspiracy, yet failing to otherwise amend the FAC as necessary to avoid

15  dismissal.  Mr. Henning's amended FAC, which Mr. Postar alleges is problematic in his 1/16/09 letter to Mr.

16  Henning and in his present Motion, was filed by Plaintiffs well after they terminated me on 11/19/08.

17       On February 12, 2009, Mr. Akeson's 12(b) Motion to Dismiss was granted.  Tellingly, the court did

18  not, *sua sponte* nor by motion, grant Mr. Akeson any costs, fees, or sanctions to be imposed against me,

19  Plaintiffs, or their attorney-of-record, Mr. Henning.  Now, 14 months after the allegedly offending pleading

20  was filed *in Pro Per* by Plaintiffs, 13 months since my termination, and 10 months after Mr. Akeson's

21  dismissal from the case, for no stated reason whatsoever to justify such *untimely* filing of this Motion, the

22  Akeson's re-file this identical Motion alleging that the Court should implement its sparingly-used inherent

23  powers to unfairly overcome extremely crucial procedural requirements in Rule 11 and §1927 against me.

24       Mr. Akeson's prior Motion for Sanctions against me was denied by this Court on 7/9/09, which

25  found that I did not act in any sanctionable way as to Mr. Akeson, since it is reasonable for a diligent

26  attorney in my circumstances at the time of my work for the Plaintiffs to include Mr. Akeson as a Defendant.

27  The Court's 7/9/09 Order states that it is reasonable for an attorney in my position at the time to draft the

28  FAC's allegations against Mr. Akeson, if only due to his role as Mrs. Akeson's husband, not to mention

1    other facts that the FAC alleges tying the Akeson's actions together.  Thus, Mr. Akeson's alleged liability

2    can reasonably flow from that of his wife.  <u>By denying Mr. Akeson's Motion for Sanctions against me and by

3    denying the Motion to Dismiss the case against Mrs. Akeson, the Court implicitly notes that the drafting of

4    the FAC against Mrs. Akeson is even less open to any sanctions, especially since the allegations and

5    evidence against her reasonably seemed even stronger that that against Mr. Akeson at the time of the

6    FAC's drafting</u>.  Further, the Court's 9/10/09 Order Regarding the Defendants' Motions for Summary

7    Judgment lays out many triable issues-of-fact against Mrs. Akeson, showing that the FAC is not baseless.

8    This Court's 10/20/09 Order re: Requests for Admission reiterates that the Plaintiff's case is not baseless.

9    Finally, the fact that Mrs. Akeson's Motion for Dismissal was largely denied by the Court provides further

10   grounds to show that my work in drafting the FAC against the Akeson's is not sanctionable, since if it were

11   wholly baseless, frivolous and in bad faith, the FAC would never have proceeded past the Dismissal phase

12   of this case's litigation against Mrs. Akeson.  Tellingly, at the 1/14/09 Hearing on the Akesons' Motion to

13   Dismiss, in responding to Mr. Postar's wild notion that the entire FAC against Mrs. Akeson is void of any

14   basis and should be dismissed, the Court reprimanded Mr. Postar by reminding him of the FRCP's *notice*

15   pleading requirements and noting that the FAC against Mrs. Akeson largely complies with such minimal

16   requirements, and thus it is <u>not</u> in any part baseless (See 1/14/09 transcript, Exh. J, pp. 7 and 8).

17                          **MEMORANDUM OF POINTS AND AUTHORITIES**

18                                      **STATEMENT OF FACTS**

19   I incorporate herein all the facts in the above Declaration of Ali Ebrahimzadeh as the Statement of Facts for

20   this Memorandum.  I swear under penalty of perjury and by the laws of the USA and the State of California

21   that the facts in the Declaration of Ali Ebrahimzadeh and all its exhibits, and all the facts in this

22   Memorandum and its exhibits, are true and correct to the best of my knowledge, and that all exhibits and

23   attachments hereto are true and accurate representations of what they purport to be.

24                                            **ARGUMENT**

25   I. **SANCTIONS UNDER FRCP RULE 11 MAY NOT BE FAIRLY OR LEGALLY IMPOSED AGAINST ME.**

26   A. **RULE 11 IS ONLY APPLICABLE TO PARTIES WHO SIGN, FILE, PRESENT, OR ADVOCATE THE**

27   **OFFENDING PLEADING, SO THEREFORE RULE 11 SANCTIONS DO NOT APPLY TO ME.**  FRCP

28   11(b); Committee Notes on Amendments to FRCP (1993) 146 FRD 401, 589. **Firstly**, I did not sign the

                                                    13

FAC; Plaintiffs signed, filed, presented and advocated it. [*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* (1991) 498 US 533, 551, 111 S.CT. 922, 933 ("*Business Guides*"), holding that a party who signs the pleading in question is subject to FRCP 11 certification standard, and has "an affirmative duty to conduct a reasonable inquiry into the facts and law before filing"; *Pan-Pacific & Low Ball Cable Television Co. v. Pacific Union Co.* (9th Cir. 1993) 9887 F2d 594, 596, holding that the court may **not** sanction the attorney and rather may find the client alone to be responsible for the Rule 11 violation, even in situations where the attorney signed the offending paper, where the discretion or authority of the attorney is limited by certain restrictions).] My contractual authority over what was to be done with the FAC after I drafted it was totally restricted, as detailed in the Statement of Facts above. **Secondly**, I did not file the FAC. **Thirdly**, I did not present the FAC to the Court, nor did I serve it to any Defendants: Plaintiffs filed and served it *in Pro Per*. **Fourthly**, I did not advocate the FAC as to the Akeson's because I never negotiated any settlement on behalf of my clients with them, I did not serve them with any discovery requests or depose them, and I did not file, serve or present the FAC against them.

B. **TO THE BEST OF MY KNOWLEDGE AND BELIEF, FORMED AFTER AN INQUIRY THAT IS VERY COMPETENT AND VERY REASONABLE UNDER THE CIRCUMSTANCES, ALL THE FACTUAL CONTENTIONS IN THE FAC AGAINST THE AKESON'S HAVE EVIDENTIARY SUPPORT, OR LIKELY WOULD HAVE HAD EVIDENTIARY SUPPORT AFTER A REASONABLE OPPORTUNITY FOR FURTHER INVESTIGATION OR DISCOVERY.** FRCP 11(b)(3) and (4). Rule 11 requires only *some* basis for the FAC. Rule 11 only sanctions pleadings wholly lacking in any basis whatsoever. Clearly, the FAC I drafted has a basis for each cause of action, as detailed in the FAC itself and implicitly or explicitly reiterated in this Court's 7/9/09 Order denying sanctions and this Court's comments to Mr. Postar at the 1/14/09 Motion to Dismiss hearing (See Exh. J, pp. 7 and 8). *Id*. Also, where an attorney is faced with a swearing context between his client and the other party, it is reasonable and necessary for the attorney to find his client to be more credible, even when confronted with potentially deficient evidence in support of the client. *Maddox v. E.F. Hutton Mortg. Corp.* (M.D.Tenn. 1989) 723 F. Supp. 1246, 1248 ("*Maddox*") (where client gave attorney a suspicious-looking and falsified contract that was patched together ex-post-facto by the client in support of his own case, attorney's minimal investigation time and ultimate pre-filing reliance upon his client's factual allegations do not violate Rule 11's requirements of reasonable pre-filing

14

inquiry and investigations; in such cases, the client alone may by liable for "inherent powers" sanctions).  In my pre-filing inquiry of Plaintiffs' factual proof of their allegations, I conducted about **150** hours of investigations, billing **130** hours, similar to the attorney in the *Maddox* case, but I performed such work in a per-force very short time-period of 3 weeks.  Compared with the minimal work of the unsanctioned attorney in the *Maddox* case, I reasonably investigated and relied upon my clients' alleged facts in drafting the FAC and performing all my work, especially as concerns the Akeson's.  More so, I informed my clients that I needed more time to complete the FAC and advised them to not file the incomplete FAC; yet they refused to heed my warning about possible sanctions, and then chose to file the FAC as-is. (Exh. A). Thus, I am not liable if the FAC as-filed is lacking sufficient evidentiary support, because I was not given the opportunity nor authority by Plaintiffs to conduct such further necessary investigations and preparation of the FAC.

1. **I CONDUCTED A PREFILING EXAMINATION OF THE FACTS AGAINST THE AKESON'S THAT IS REASONABLE UNDER THE CIRCUMSTANCES AND IN CONSIDERATION OF MULTIPLE RELEVANT FACTORS.**  Multiple factors should be considered in determining whether my actions were reasonable under the circumstances. *Zaldivar v. City of Los Angeles* (9th Cir. 1986), 780 F2d 823, 831 ("*Zaldivar*"); *Hoffmann-LaRoche, Inc. v. Invamed Inc.* (Fed. Cir. 2000) 213 F3d 1359, 1364-1365 ("*Hoffmann*"); *Business Guides* at 550; *Hamer v. Career College Ass'n* (9th Cir. 1992) 979 F2d 758, 759 ("*Hamer*"); Advisory Committee Notes to Rule 11 (1983) 97 FRD 165, 199 ("Notes").  **Firstly**, as discussed above, I had little pre-filing time, opportunity and authority for investigation of the facts against the Akeson's, and the Plaintiffs filed the FAC *in Pro Per* before I completed it and against my advice (Exh. A). See *Zaldivar; Hoffmann; Hamer;* Notes.  **Secondly**, I reasonably relied on my clients' allegations against the Akeson's, given the "swearing contest" nature of the facts and the limited time of my pre-filing work. *Id.* **Thirdly**, under the circumstances, I sincerely and reasonably believed the FAC as to the Akeson's to maintain a plausible view of the law and expected further discovery to substantiate the allegations against them. *Id.*.  **Fourthly**, the facts regarding the Akeson's were complex. I researched and drafted the FAC as reasonably as possible given such factual complexity and given the time and authority limits the Plaintiffs placed on me. *Id.* **Fifthly**, the Akeson's controlled the abundance of the relevant facts, and at such pre-discovery stages in the litigation as the FAC's drafting, it is fair to grant me leeway to make allegations against the Akeson's - and their intent, knowledge and purpose in allegedly damaging Plaintiffs - that may not be fully grounded in fact

15

1   at the time of the FAC's drafting. *Zaldivar; Hoffmann; Hamer;* Notes. **Sixthly**, any reasonable and

2   competent attorney, to be safe, would have joined the Akeson's to the FAC, included the claims asserted

3   against the Akeson's, and made the allegations against the Akeson's that I did in drafting the FAC, given

4   the same time pressures and factual complexity (See 7/9/09 Court Order Denying Sanctions). *Townsend v.*

5   *Holman Consulting Corp.* (9th Cir. 1990) 914 F2d 1136, 1142 ("*Townsend*"); *Mir v. Little Company of Mary*

6   *Hospital* (9th Cir. 1988) 844 F2d 646, 653. **Seventhly**, the Plaintiffs were far better positioned than me at

7   the time to investigate and allege the facts supporting the FAC, by virtue of their first-hand and *exclusive*

8   knowledge of the Akeson's wrongful actions. *Business Guides* at 550. **Eighthly**, judged at the time-

9   pressured context in which I drafted the FAC, my dozens of hours of inquiry and investigations into the

10  factual allegations concerning the Akeson's were reasonable. [*Bradgate Assocs, Inc. v. Fellows, Read &*

11  *Assocs., Inc.* (3rd Cir. 1993) 999 F2d 745, 752 (Court should avoid "hindsight" review, and consider the

12  circumstances and time-pressures in which the offending pleading was drafted); *Jensen v. Electric Co.* (9th

13  Cir.1989) 873 F.2d 1327, 1330 (**11 hours** of pre-filing inquiry is reasonable for Impleader filing); *Greenberg*

14  *v. Sala* (9th Cir.1987) 822 F.2d 882, 887 (**100 hours** of total pre-filing inquiry is reasonable for filing of

15  Complaint); *Maddox* at 1248 (M.D.Tenn.1989); *Smith et al. v. Our Lady of the Lake Hospital, Inc. et al*. (5th

16  Cir, 1992) 960 F.2d 439, 482. ("*Smith*").] **Ninthly**, even though the FAC that I drafted under great time-

17  pressure may not explicitly state a part of the Rule 11(b)(3) language that the Plaintiffs' factual allegations,

18  pled on information and belief, are "likely to have evidentiary support after a reasonable opportunity for

19  further investigation or discovery," the FAC's good faith omission of this phrase cannot be legally or

20  equitably used to sanction me because:  (a) I advised the Plaintiffs that the FAC was incomplete and

21  should not be filed as-is, but they failed to heed my advice and filed it *in Pro Per* nonetheless (Exh A); and

22  (b) I lacked the authority and duty, per contract, to: file, serve and present the FAC itself; to formally amend

23  and re-file the FAC; and to reasonably conduct discovery as to the Akeson's (because of my termination).

24  In researching and drafting the FAC, I reasonably and sincerely believed that Plaintiffs' factual allegations

25  would have further evidentiary support after a reasonable opportunity for discovery by the Plaintiffs or

26  myself (if I were later hired and actually permitted to do so; but instead I was terminated before reasonably

27  having such an opportunity).

28  **2.  IN DRAFTING THE FAC, I SOUGHT ALL REASONABLY AVAILABLE CREDIBLE INFORMATION**

16

1   **TO DRAFT THE PLAINTIFFS' ALLEGATIONS AGAINST THE AKESON'S IN THE FAC, SUCH**

2   **INFORMATION CONSISTING OF DIRECT NARRATIVE, DOCUMENTARY AND PHYSICAL EVIDENCE**

3   **AGAINST THE AKESON'S, AND REASONABLE INFERENCES BASED UPON SUCH EVIDENCE**

4   **AGAINST THE AKESON'S, AS REQUIRED BY LAW.**  *California Architectural Building Products, Inc. v.*

5   *Franciscan Ceramics, Inc.* (9th Cir. 1987) 818 F2d 1466, 1472.  The Akeson's baseless Motion claims that

6   there were "no" facts alleged against them, or that I "knew" that any such facts lacked all credibility, and

7   that I intentionally or recklessly failed to investigate and rather in bad faith and unreasonably presented a

8   factually "baseless" FAC.  **The Akeson's allegations are entirely false.  Firstly**, for reasons noted

9   above, I could not interview the Akeson's or any defendants before the filing of the FAC; yet I did

10  aggressively review and analyze all reasonably available relevant evidence in drafting the FAC, though I

11  did not have the opportunity to finish my work (Exh. A).  *King v. Idaho Funeral Services Ass'n* (9th Cir. 1988)

12  862 F2d 744, 747.  **Secondly**, Plaintiffs and I sincerely and reasonably believed that critical information to

13  evidence the factual and legal allegations against the Akeson's may very likely be in the possession of the

14  Akeson's or their attorney.  It was clear, as noted above in the Statement of the Facts, that neither the

15  Akeson's nor Mr. Postar would make such information or opportunities for investigation and discovery

16  available to me or the Plaintiffs during my representation.  [See *Kamen v. American Tel. & Tel. Co.* (2nd Cir.

17  1986) 791 F2d 1006, 1013, and *Morda v. Klein* (6th Cir. 1989) 865 F2d 782 – holding that the court may

18  properly refuse to sanction a party where the opposing party had refused access to material information

19  that would further substantiate the factual allegations of the party facing Rule 11 sanctions.].  **Thirdly**, by

20  spending about **150** hours, billing 130 hours, of extensive inquiry and analysis into the relevant records and

21  prior history of the case, including all the reasonably available facts underpinning the legal allegations

22  against the Akeson's, it is clear that I did not, by any means, blindly rely upon allegations made by my

23  clients in the performance of my duties.  [*Oliveri v. Thompson* (2nd Cir. 1986) 803 F2d 1265, 1277, holding

24  that an attorney is not required to "pass judgment on the credibility of his client on pain of a monetary

25  sanction"; *Southern Leasing Partners, Ltd. v. McMullan* (5th Cir. 1986) 801 F2d 783, 788, holding that

26  where counsel takes time to examine relevant records and the prior history of the case before filing suit,

27  counsel may not be properly sanctioned for failure to reasonably conduct pre-filing inquiry.]  **Fourthly**, just

28  because the case against the Akeson's was partially dismissed on February 12, 2009 or thereafter

1   dismissed via Summary Judgment and Settlement, it does not automatically, usually, or even fairly mean

2   that Rule 11 sanctions are justified.  [*Gaiardo v. Ethyl Corp.* (3rd Cir. 1987) 835 F2d 479, 483, holding that

3   "[l]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being

4   on the unsuccessful side of a ruling or judgment."].  Such dismissal should not and does not bear

5   negatively upon me in any way, as I had very little to do with the representation of Plaintiffs in this case –

6   having had such limited powers throughout my brief **six weeks** of limited-authority work for them – and

7   having had no duty, authority or opportunity to complete the drafting, file, serve, advocate, or amend the

8   FAC, to conduct discovery against the Akeson's, or in any way to review, analyze, or respond to the

9   Akeson's Motion to Dismiss or any other of their Motions, save this very one.

10   C.  **ALL THE PLAINTIFFS' ALLEGATIONS IN THE FAC AGAINST THE AKESON'S WERE**

11   **WARRANTED BY EXISTING LAW.**  The Ninth Circuit combines the "evidentiary support" grounds for Rule

12   11 sanctions, discussed above, with the "[not] warranted by existing law" ground for such sanctions into a

13   single category called "frivolous" filings.  [See *Buster v. Greisen* (9th Cir. 1997) 104 F3d 1186, 1190, and

14   *Holgate v. Baldwin* (9th Cir. 2005) 425 F3d 671, 675, holding that <u>"frivolous" filings are those that are both</u>

15   <u>"baseless" and "made without reasonable and competent inquiry."</u>]  I fully incorporate herein my arguments

16   above.  The FAC does not seek to reverse, modify or extend existing law or to establish new law.  The

17   question here regards factual sufficiency and the pre-filing inquiry of such facts. The 1/14/09 transcript of

18   the Akeson's Motion to Dismiss hearing shows the Court reminding Mr. Postar of the factual sufficiency of

19   the FAC at that stage (See Exh. J, pp. 7 and 8). The 2/12/08 Order of this Court on the Akeson's Motion to

20   Dismiss states that there are multiple "well-pled" factual allegations against the Akeson's.  The FAC against

21   the Akeson's is not "baseless."  The 7/9/09 Order denying Sanctions implicitly reiterates this point. I

22   reasonably and competently conducted pre-filing inquiry under the circumstances, as noted in the sections

23   above.  Like this Court implies in its 7/9/09 Order and stated in the 7/9/09 Hearing on the identical prior

24   version of this Motion for Sanctions:  as any good attorney under the circumstances would have done, I

25   sincerely and reasonably believed that the FAC that I drafted for the Plaintiffs sufficiently alleged facts to

26   substantiate all the claims against the Akeson's, namely that the Akeson's had the requisite intent and took

27   actions to conspire together to damage Plaintiffs by plotting and carrying out the conspiracy against the

28   Plaintiffs.  The FAC contains well-pled facts against the Akeson's, but I cannot be sanctioned just because

18

1  it was partially dismissed for lack of *sufficient* facts to satisfy FRCP 8-10, since FRCP 11 demands more.[1]

2  **D. ALL THE PLAINTIFFS' ALLEGATIONS IN THE FAC AGAINST THE AKESON'S WERE FILED *IN***

3  ***PRO PER* FOR A VERY PROPER PURPOSE.  FURTHERMORE, IN PEFORMING MY DUTIES FOR THE**

4  **PLAINTIFFS, I DID NOT IN ANY WAY KNOWINGLY, RECKLESSLY, OR OTHERWISE IMPROPERLY**

5  **HARASS THE AKESON'S, CAUSE THEM UNNECESSARY DELAY IN LITIGATING THIS ACTION, NOR**

6  **NEEDLESSLY AND IMPROPERLY INCREASE THEIR COST OF LITIGATION.  Firstly**, a finding of

7  "frivolousness" is prerequisite to a finding of "improper purpose."  *Townsend* at 1140.  I did not act

8  frivolously in this action, as detailed in this Memo.  **Secondly**, since my drafting of the FAC and my 6

9  weeks total of very limited work on behalf of the Plaintiffs against the Akeson's and other Defendants was

10 not "frivolous," and rather was based on reasonably and competently investigated facts and law, the

11 Akeson's have failed to properly substantiate that I served any improper purpose by performing any of my

12 work for Plaintiffs. My drafting of the FAC and any other work that I did for Plaintiffs was done with a proper

13 purpose, both objectively and subjectively.  *Zaldivar v. City of Los Angeles* (9th Cir. 1986) 780 F2d 823,

14 830; *Newton v. Thomason* (9th Cir. 1994) 22 F3d 1455, 1463-1464; *Townsend* at 1140 (holding that there is

15 no "improper purpose" in filing a pleading that is "well grounded in fact and warranted by existing law" and

16 thus the presenter of such a pleading cannot be sanctioned under Rule 11, regardless of the pleader's

17 subjective intent.)  **Thirdly**, all the work I did for my clients relating to the Akeson's was reasonably,

18 competently and in good faith performed to remedy the legal wrongs allegedly caused to Plaintiffs by the

19 Akeson's.  I worked as *quickly* and *reasonably* as possible on behalf of my clients to draft the FAC which

20 they filed in its incomplete form *in Pro Per*, in their own discretion, and against my advice - thus I did not

21 improperly delay this litigation.  **Fourthly, I called Mr. Postar soon after the Plaintiff's filing of the FAC to**

22 **negotiate a settlement with the Akeson's.  Mr. Postar told me then that his clients were not yet open to**

23 **negotiations with, nor discovery by, the Plaintiffs.  Thus, the Akeson's unnecessarily prolonged the action**

24 **and caused unnecessary expense and stress, since a reasonable settlement may have likely been reached**

---

26 [1] Certainly, the FAC meets the minimal Notice rules of pleading, according to FRCP Rules 8, 9 and 10,
27 which are significantly less demanding than the comparable rules of procedure in California, for example.
Read in conjunction with these three preceding Rules, it is evident that Rule 11 seeks to aggressively, but
with Due Process and 21-day notice, enforce such relatively minimal standards of "notice pleading" by
28 punishing only those pleadings that are utterly *baseless* and *patently* devoid of fact and merit – not merely
pleadings that are insufficient and/or *dismissable* under Rule 12.

Ali Ebrahimzadeh's Opposition to Cristina and David Akeson's Motion for Sanctions

1    between the parties in November of 2008 rather than December of 2009.  **Finally,** I did not sign, file or

2    present any pleadings in this action as to the Akeson's, nor did I serve or otherwise present any discovery

3    as to the Akeson's.  It cannot be at all reasonably argued that I multiplied the pleadings in this action – I did

4    not present nor multiply any pleadings <u>at all</u> as to the Akeson's.  I never even finished drafting the Akeson

5    discovery that I was in the midst of preparing for Plaintiffs at the time of my termination.

6         E.   **THE AKESON'S MOTION FOR SANCTIONS UNDER RULE 11 IS PROCEDURALLY**

7    **BARRED.  Firstly,** the Akeson's failed to timely comply with the 21-Day "Safe Harbor" Provisions of Rule

8    11(c)(2) as to me, and thus his motion for Rule 11 Sanctions is procedurally barred against me.  A motion

9    for sanctions under Rule 11 may not be filed until 21 days after it is served.  FRCP 11(c)(2).  This crucial

10   "21-day Safe Harbor" period provides the party with the opportunity to correct the allegedly offending

11   pleading by withdrawing or otherwise curing its defects.  If the party cures the offending pleading, the other

12   party may not file the Rule 11 sanctions motion.  FRCP 11(c)(2); *Barber v. Miller* (9th Cir. 1998) 146 F3d

13   707, 711 ("*Barber*").  This 21-day Safe Harbor period is **mandatory** and is an "absolute prerequisite" for

14   filing Rule 11 sanctions motions; such sanctions cannot be imposed absent **proof of a *timely* letter or**

15   **communication** from the sanctioning party to the allegedly offending party, specifically threatening to file a

16   motion for Rule 11 sanctions unless the offending pleading is specifically corrected.  *Radcliffe v. Rainbow*

17   *Const. Co.* (9th Cir. 2001) 254 F3d 772, 789; *Elliott v. Tilton* (5th Cir. 1995) 64 F3d 213, 216 (**"21-day "safe**

18   **harbor" warning is "mandatory" and shall not be excused by *any earlier warnings* to the opposing**

19   **party by the sanctioning party** (emphasis added)).  Thus, not only did the Akeson's utterly fail to timely

20   provide such a communication to me, but even their January 16, 2009 warning letter to Plaintiffs (which

21   was sent to them and not me, two months <u>after</u> my termination from this case) or their August 7, 2009 letter

22   to me does not meet the Safe Harbor requirements.  *Id.*  <u>It makes absolutely no sense for Mr. Postar to</u>

23   <u>send me on August 7, 2009 or thereabouts a Rule 11 "21-day letter," since I could do nothing to ameliorate</u>

24   <u>any allegedly sanctionable conduct concerning the Akeson's because I have not been any party's attorney</u>

25   <u>in this case for well over *a whole year*.  The time for such a 21-day letter would have been during the</u>

26   <u>pendency of my work for the Plaintiffs, if ever.  The Akeson's failed to provide such meaningful notice.</u> *Id.*

27   **Secondly, a party may not serve or file a Rule 11 motion for sanctions after the dismissal of that**

28   **party from the case, because to do so would <u>deprive the offending party of a fair opportunity to</u>**

20

1   __correct the offending pleading.__  *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.* (4th Cir. 2004)

2   369 F3d 385, 397-398; *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC* (9th Cir. 2003)

3   339 F3d 1146, 1150 (no jurisdiction to issue Rule 11 sanctions after case is dismissed).  Rule 11 sanctions

4   must be sought by motion in the pending case; and since the Akeson's failed to do so, their motion is

5   procedurally barred.  *Handeen v. Lemaire* (8th Cir. 1997)112 F3d 1339, 1245, fn. 8. This Court's potential

6   granting of permission to Mr. Akeson at the 7/9/09 Sanctions Hearing to bring another Motion for Sanctions

7   after a trial (and only if __no__ evidence were adduced __at trial__ against Mrs. Akeson), and the Court's same

8   Order for me to preserve any evidence (ostensibly in case such is subpoenaed by any other party in a new

9   Sanctions Motion), may not be fairly interpreted to allow the Akeson's to re-file the *identical* Sanctions

10   Motion against me now, since I have done nothing in this case for months even before the first Motion, and

11   at any rate, a Motion for Sanctions is not to be dependent on the outcome at trial or any dismissal. *Gaiardo*

12   *v. Ethyl Corp.* (3rd Cir. 1987) 835 F2d 479, 483. The Akeson's case is dismissed.  This redundant Motion is

13   untimely. They lack standing to bring Rule 11 sanctions.  *Nyer v. Winterthur Int'l* (1st Cir. 2002) 290 F3d

14   456, 459; *New York News, Inc. v. Kheel* (2nd Cir. 1992) 972 F2d 482, 488.  I cannot be equitably or legally

15   sanctioned under Rule 11 for two reasons: (a) the Akeson's failed to ever provide me with a legally valid

16   21-day Safe Harbor communication; and (b) even if the Akeson's had *hypothetically* communicated such

17   notice to me, it would be impossible for me to do anything to cure the allegedly offending pleading, since I

18   always lacked any power, duty or authority to file, serve, withdraw, amend, or dismiss the FAC as to the

19   Akeson's or any other party.  __Thirdly,__ Rule 11's procedural requirements are essential to Due Process and

20   the credible application of sanctions thereunder.  So it is inappropriate that Mr. Postar now asks this Court

21   to so lightly use its lofty inherent powers to unjustifiably waive such rules in the face of Due Process law.

22   II.  __SANCTIONS UNDER 28 USC §1927 ("§1927") MAY NOT BE EQUITABLY OR LEGALLY IMPOSED__

23   __AGAINST ME.__  __Firstly, I did not act unreasonably or vexatiously in this matter, nor did I multiply the__

24   __proceedings at all.__  Section 1927 allows parties to sanction an attorney "who so multiplies the proceedings

25   in any case" by acting both "unreasonably and vexatiously." 28 USC §1927 (emphasis added).  Section

26   1927 is __strictly construed__ because of its penal nature. *FDIC v. Conner* (5th Cir. 1994) 20 F3d 1376, 1384.

27   As strictly construed, I did not "multiply" the proceedings, having not filed any pleadings nor conducted any

28   discovery against the Akeson's.  "Unreasonable and vexatious" conduct requires a __subjective__ showing of

1  bad faith in the Ninth Circuit, and "knowing" or "reckless" conduct suffices to show subjective bad faith.

2  *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.* (9th Cir. 2000) 210 F3d 1112, 1118.  <u>The attorney's</u>

3  <u>actions must be both performed in subjective bad faith and must also be "frivolous" (i.e., objectively</u>

4  <u>unreasonable) or made knowingly, thereby intending to harass.</u>  *B.K.B. v. Maui Police Dept.* (9th Cir. 2002)

5  276 F3d 1091, 1107; *In re Keegan Mgmt. Co., Secur. Litig.* (9th Cir. 1996) 78 F3d 431, 436.  Both

6  subjectively and objectively, I did not act vexatiously, frivolously, in bad faith, or unreasonably, as detailed

7  above, and there is no evidence to the contrary. I reasonably, competently and timely conducted all my

8  limited scope work for Plaintiffs to serve the proper purpose of remedying the wrongs allegedly committed

9  by the Akeson's against them. **Secondly, Section 1927 sanctions are only available against the**

10  **attorney who commits the sanctionable act, here allegedly the filing of the FAC and the failure to**

11  **dismiss it.**  Section 1927 sanctions are **not vicariously attributable** to law firms, co-counsel, or other

12  attorneys who did not sign, file or present the offending pleading, or against attorneys who lack the

13  authority, power or duty to withdraw or cure it.  **In short, §1927 is not delegable and not imputable to**

14  **others.**  *Claiborne v. Wisdom* (7th Cir. 2005) 414 F3d 715, 723.  For this reason, §1927 cannot apply to me

15  in this case.  I did not sign, file, or present any pleadings as to the Akeson's, nor did I have the authority,

16  power or duty to sign, file, present, withdraw or amend the FAC – the Plaintiffs and/or Mr. Henning did.

17  Plaintiffs were not my subordinates, such as associates are to superior attorneys in a law firm, nor were

18  Plaintiffs my agents, bound by contract or law to do as I dictate.  They exercised their own discretion in all

19  their noted actions, were bound to abide by the FRCP (a copy of which they were duly provided at the CMC

20  by the Court), and any sanctionable behavior of theirs shall not be vicariously attributed or delegated to me,

21  especially when I advised them against filing the incomplete FAC (Exh. A).  *Id.*  **Thirdly, I was terminated**

22  **by Plaintiffs before I could even formally conduct any discovery for them against the Akeson's.**  I

23  could not dismiss the lawsuit or otherwise amend the FAC as to the Akeson's:  It was impossibly beyond

24  my very limited contractual authority, power and duty to do so, and was factually and legally impossible for

25  me to do so because of my termination. At any rate, despite the Akeson's allegations to the contrary in their

26  redundant Motion for Sanctions, the Plaintiffs' refusal to dismiss the suit against them is not by itself

27  dispositive of bad faith, improper purpose, or any other sanctionable act.  I cannot be sanctioned for such.

28  **Fourthly, a court cannot impose §1927 sanctions unless the motion for such is made <u>as soon as the</u>**

1   **misconduct appears, in order to avoid the appearance of "impermissible postjudgment retribution."**

2   *Salstrom v. Citicorp Credit Svcs., Inc.* (9th Cir. 1996) 74 F3d 183, 185 ("*Salstrom*"). It appears from their

3   many unjustifiable months' delay in filing this Motion, indeed waiting until after the case's settlement and

4   dismissal, that the Akeson's have filed this Motion for exactly such reasons: "impermissible postjudgment

5   retribution." This timeliness and notice requirements serve Due Process rights. *Id.* A §1927 motion for

6   sanctions may be brought after the end of trial in *extremely rare situations*, such as where the sanctions are

7   based on the *cumulative* effect of the attorney's misconduct, particularly including such conduct *at the time*

8   *of the actual trial*, and where such conduct *could not be* otherwise ascertained *before* the end of the trial.

9   *Salstrom* at 185. This is by no means the case here, for as discussed above, the Akeson's and Mr. Postar

10   both had reason to know of *any allegedly* sanctionable actions by me at least **4 months** before Mr.

11   Akeson's dismissal, **7 months** before Mr. Akeson's first Sanctions Motion against me, and **14 months**

12   before the end of this case and the filing of this redundant Sanctions Motion. The Akeson's have provided

13   no reasons whatsoever to justify such untimely motion for §1927 sanctions, or as predicated by the court's

14   sparingly-used and potent inherent powers. **Fifthly, it would be unjust to sanction me under §1927**

15   **since I was never given timely notice as required to warn me to cease any allegedly sanctionable**

16   **acts; this offends Due Process.** *Hill v. Norfolk & W. R. Co.* (7th Cir. 1987) 814 F.2d 1192, 1206 (""The

17   purpose in deterring delay would be more effectively achieved if judges warn attorneys in anticipation of a

18   violation of section 1927 . . ."", quoting House Conf. Rep. No. 96-1234, 96th Cong., 2nd Sess. 8, *reprinted*

19   *in* 1980 U.S. Code Cong. & Admin. News 2716, 2782-83); *Proctor & Gamble Co. v. Amway Corp.* (5th Cir.

20   2002) 280 F.3d 519, 525 ("The courts often use repeated filings despite warnings from the court, or other

21   proof of excessive litigiousness, to support imposing sanctions"); *Riddle v. Egensperger* (6th Cir. 2001) 266

22   F.3d 542, 556 ("A district judge should not await the aggregation of what he considers multiple acts of

23   misconduct and then levy an aggregated sanction without at least warning the attorneys at the time of each

24   act . . ."). As noted above, this Court has consistently refuted to find my work in this case as sanctionable.

25   III.  **SANCTIONS UNDER THE COURT'S INHERENT POWERS MAY NOT BE IMPOSED AGAINST ME.**

26   A.      **"Because inherent *powers* are shielded from direct democratic controls, they must be**

27   **exercised with restraint and discretion."** *Roadway Express, Inc. v. Piper* (1980) 447 US 752, 764

28   ("*Roadway*"). **Firstly**, the moving party must provide "clear and convincing" evidence of the allegedly

23

1  sanctionable actions of the offending party.  *Shepherd v. American Broadcasting Cos., Inc.* (DC Cir. 1995)

2  62 F3d 1469, 1477.  The Akeson's provide no such evidence.  The Court's  inherent powers are used

3  sparingly and only to sanction truly reprehensible bad faith conduct, such as fraud on the court (*Chambers*

4  *v. NASCO, Inc.* (1991) 501 US 32, 54 ("*Chambers*")), destruction of evidence *(Leon v. IDX Systems* (9th Cir.

5  2006) 464 F3d 951, 959), *consistently* engaging in *excessive* dilatory tactics, *repeatedly* and *in bad faith*

6  failing to meet filing deadlines, filing a *series* of meritless pleadings and simultaneously engaging in other

7  knowing and bad faith delay tactics, despite *sufficient warnings* from the Court to the contrary (*Lipsig v.*

8  *National Student Marketing Corp.* (DC Cir. 1980) 663 F2d 178, 181.  The Akeson's do not clearly allege or

9  evidence that I have acted in such a way.  Courts may use their inherent powers to sanction parties and

10  their attorneys for "bad faith" conduct or for "willful disobedience" of court orders.  *Chambers* at 43;

11  *Roadway* at 764-766.  The Akeson's do not or cannot justifiably make any substantiated allegations against

12  me of "willful disobedience" of court orders, fraud on the court, destruction of evidence, filing multiple

13  meritless pleadings, engaging in excessive dilatory tactics, or similar egregious acts against the Court itself.

14  The Akeson's fail to clearly and convincingly prove that I committed any sanctionable acts.

15  **Secondly**, in this redundant Motion for Sanctions, the Akeson's wrongly rely on *Chambers* for the

16  faulty proposition that somehow a court may casually use its inherent powers to do an "end-run" around the

17  strict procedural requirements of Rule 11 and §1927 in a case such as this.  In the case underlying

18  *Chambers,* the federal district court went to *necessarily extreme lengths* to protect and preserve the crucial

19  procedural requirements of Rule 11 and §1927 for the benefit of Mr. Chambers and the Rule of Law.

20  Chambers committed repeated, intentional, and shocking acts of fraud on the Court, and extreme willful

21  disrespect for the judiciary, all despite the Court's repeated warnings to him of its right to sanction him via

22  its inherent powers.[2]  *Chambers* at 37-42. Even there, the Court preserved the very Rule 11 and §1927

23  _____

24  [2] Mr. Chambers, had willfully and secretly defrauded the court and intentionally and strategically sought to
   obstruct and defy the court's jurisdictional powers by creating a sham trust for property over the weekend
25  after he was notified by opposing counsel that they were seeking a Temporary Restraining Order ("TRO")
   over certain properties owned by Mr. Chambers.  By immediately transferring such property to his
26  daughters, an idea conjured by him and his attorney, Mr. Chambers sought to take the property in question
   out of the jurisdiction of the court so that its TRO would not impact the properties.  It does not end there:
27  Mr. Chambers was held in contempt for willful defiance of a later preliminary injunction by refusing to allow
   inspection of corporate records; then he filed a series of utterly meritless motion and pleadings in a crystal
28  clear case of intentional dilatory tactics.  Mr. Chambers received multiple warnings throughout this entire

procedural protections of notice, timeliness, warnings, non-delegability and other Due Process requirements that the Akeson's now carelessly urge the Court to flout. *Id.* By no means is Mr. Chambers' conduct comparable to mine. The Akeson's cannot reasonably draw any comparison. *Chambers* is extremely factually differentiable from this case. Its holding should not be so vastly expanded as to apply to the facts loosely alleged here. The Akeson's Motion fails to draw a factual comparison to any case where somebody who had acted like me was sanctioned under the court's inherent powers – there is none.  I have not committed any fraud upon this court, nor any destruction of this court's process.  I have always acted reasonably, competently, and in good faith. The court's lofty and sparingly-used inherent powers are meant for the protection of the Court itself. It is only reasonable for a court to take the great steps to subvert any procedural protections of Rule 11 or of §1927 when acting out of the rare and extreme necessity to uphold the sanctity of its judicial power, such as in the *Chambers* case.  *Id.* at 44, 45.

  **Thirdly**, <u>courts have indicated that the inherent sanctioning power should not be used without providing timely warnings and notices that the court will use such sanctions against the party if he/she continues along a sanctionable path, precisely as the *Chambers* court provided multiple such warnings against Mr. Chambers</u>.  *Id.*  The court should timely warn the parties that the court may use its inherent authority to sanction particular conduct.  *In re Tutu Wells Contamination Litig.* (3rd Cir. 1997) 120 F3d 368, 379; *Mickle v. Morin* (2nd Cir. 2002) 297 F3d 114, 126.  This Court has never issued any warnings to me.  I never acted sanctionably, nor possessed the authority or duty to cause or correct any sanctionable acts.

---

litigation from the judge that if he carried on his horrendous disrespect for the court, the Court would sanction him.  Yet again <u>on the very eve of judgment</u>, Chambers acted contemptuously by <u>intentionally trying to defraud the court</u> and the other party by moving properties around to evade the court's reach.  After the court's judgment against him (still no sanctions), the impossible Mr. Chambers conspired with counsel and other parties to <u>file certain pleadings in direct and willful opposition to court orders and injunctions explicitly prohibiting such pleadings</u>. The opposing party and the <u>court again warned</u> Mr. Chambers to not further tempt the court to use its lofty inherent sanctioning powers against him, and again it fell on deaf ears.  During a few days of recess from one of his hearings, <u>again Mr. Chambers fraudulently and secretly removed certain properties that were subject to the court's injunctions</u>. So, the court used its inherent powers to overcome a procedural hurdle to punish such aggressive fraud upon the court and willful obstruction of the court's powers.  <u>The Court used its inherent powers to sanction Mr. Chambers, and not his attorney-of-record, despite Mr. Chambers' prop-defense of merely following his attorney's advice and orders.</u>  In so doing, the Court used its inherent powers because Rule 11 could not apply to such acts because "pleadings" were not at issue, and because §1927 did not apply either because it only applies to attorney misconduct and because the statute is not broad enough to reach acts that degrade the judicial system, the kind of acts that inherent powers are meant to sanction.  *Chambers* at 37-42.

25

1     <u>**Fourthly**, I acted in good faith, reasonably and competently towards the Akeson's and in my very</u>

2   <u>limited work for the Plaintiffs at all times.</u>  In the context of "inherent powers" sanctions, it is required to

3   prove "bad faith," which is a high threshold (*Mendez v. County of San Bernardino* (9th Cir. 2008) 540 F3d

4   1109, 1131-1132) and is shown where an attorney "*knowingly*" or "*recklessly*": raises a frivolous argument,

5   harasses an opponent, delays or disrupts litigation, or hampers the enforcement of court orders. *Primus*

6   *Automotive Fin'l Svcs., Inc. v. Batarse* (9th Cir. 1997) 115 F3d 644, 649 ("*Primus*").  <u>The Akeson's have</u>

7   <u>failed to "clearly and convincingly" evidence or *at all* evidence any facts to show that I personally acted in</u>

8   <u>any way that would be sanctionable under the court's inherent powers.</u>

9   B.     **The Akeson's Motion recklessly urges this Court to lightly use its inherent powers to do an**

10  **"end-run" around crucial procedural Due Process requirements of Rule 11 and §1927**.  *Hutchinson v.*

11  *Pfeil* (10th Cir. 2000) 208 F3d 1180, 1186-87 ("*Hutchinson*") ["<u>We must be especially cautious in invoking</u>

12  <u>inherent authority to cure a procedurally defective Rule 11 order, lest . . .the restrictions in (Rule 11)</u>

13  <u>become meaningless.</u>" (emphasis and parentheses added; internal quotes omitted)];  *Methode Electronics,*

14  *Inc. v. Adam Technologies, Inc.* (7th Cir 2004) 371 F3d 923, 927 ("*Methode*") (<u>holding that inherent powers</u>

15  <u>shall not be used to do an end-run around the 21-day Safe Harbor requirement of Rule 11 where</u>

16  <u>compliance with such was possible</u>).  **Firstly**, the Akeson's knew or should have known of the allegedly

17  sanctionable FAC at least by early November when I informed Mr. Postar via email that I drafted the FAC

18  (an email which he attached and acknowledged receiving in the 5/15/09 Sanctions Motion). <u>They were</u>

19  <u>required to serve a 21-day Rule 11 letter, provided a §1927 warning, and make a timely motion for</u>

20  <u>sanctions at least in November 2008 (**14 months ago**), well before the end of David and Cristina Akeson's</u>

21  <u>respective cases and *before* the end of my termination from the case, so that I could actually have a *fair*</u>

22  <u>*opportunity* to address or correct any potentially sanctionable issues at that time.</u> *Barber* at 710. Over a

23  year ago, the Akeson's had as much reason to know, as they allegedly do now, of the allegedly

24  sanctionable aspects of the FAC and of the allegedly sanctionable aspects of my performance of my limited

25  scope duties.  It was very possible for them to bring this Motion for Sanctions then, because the Plaintiffs'

26  presenting of the FAC is the Akeson's primary predicate for this redundant Motion against me.  <u>In this</u>

27  <u>Motion, the Akeson's provide no reason whatsoever for allowing so much time to pass before filing this</u>

28  <u>Motion.</u>  Yet, it is clear from their January 16, 2009 letter to the Plaintiffs that the Akeson's and counsel

                                          26

were actually "aware" that I and the other respondents had <u>allegedly</u> "engaged in sanctionable conduct"
(See David Akeson's Motion for Sanctions, Decl. of Robert Postar, Exh. E). <u>I have not ever engaged in any</u>
<u>sanctionable conduct; but at any rate, if the Akeson's were to *timely* bring any such Motion for Sanctions</u>
<u>against me, they **should and could have** done it appropriately a whole year ago before their case was</u>
<u>partially dismissed and before I was publicly terminated on 11/19/08, because the court's inherent powers</u>
<u>to sanction must only be used very rarely and justifiably to cure essential procedural requirements of Rule</u>
<u>11, such as those noted above, where it would be otherwise outside the realm of possibility for the</u>
<u>sanctioning party to have abided by such procedures in the first place.</u> *Hutchinson* and *Methode*, supra.
<u>Similarly, this Court's inherent powers should not be used to subvert key procedural requirements of §1927,</u>
<u>such as those regarding timeliness and non-delegability of §1927 sanctions.</u> *Id; Salstrom*, supra.
**Secondly**, there are several substantive reasons to not apply Rule 11 and §1927 sanctions against me, as
detailed above. The inherent powers of the court cannot and should not be used to overcome such
**substantive requirements** to sanction me. *Hutchinson, Methode, Salstrom,* supra; *Gillette Foods Inc. v.*
*Bayernwald-Fruchteverwertung, GmbH* (3rd Cir. 1992) 977 F2d 809, 814, fn. 9. **Thirdly**, the doctrine of
<u>laches</u> bars the filing of the Akeson's Motion. I am unfairly prejudiced by such untimely filing of this Motion.
I presently do not have nor did I ever have the authority or duty to sign, file, present and advocate the FAC,
or the same to dismiss, amend, or withdraw the FAC as to the Akeson's; and I never had reasonable
opportunity or authority to interview the Akeson's before the filing of the FAC, nor the practicable
opportunity to conduct any discovery of the Akeson's after the FAC's filing. Were I ever given the authority
and opportunity to actually conduct discovery, such discovery would likely assist me in either preventing or
defending myself against this Motion. Yet, I was publicly terminated before I could conduct discovery.

C.        **Most importantly, alleged misconduct that may activate inherent powers sanctions are not**
**imputable or delegable to parties other than those who committed and controlled the sanctionable**
**actions.** *Primus* at 650. The Akeson's allege that the sanctionable action is the filing or presenting of an
allegedly frivolous FAC against them and the subsequent failure to withdraw and voluntary dismiss it
against them. Against my explicit advice and warning regarding potential sanctions they may face for doing
so, Plaintiffs signed, filed and presented an incomplete FAC *in Pro Per* (Exh. A). Only they had the duty
and authority to file, amend, withdraw, and/or dismiss it as to the Akeson's – not me. I never had the

27

1   practicable opportunity to conduct any discovery of the Akeson's; the Plaintiffs did. Plaintiffs were not

2   bound as my agents here, nor were they my subordinates in any way. I cannot be reasonably sanctioned

3   by way of the court's inherent powers acting under a vicarious theory of liability.  *Bonilla v. Volvo Car Corp.*

4   (1st Cir. 1998) 150 F3d 88, 93 (no vicarious liability theory shall apply in the context of "inherent power"

5   sanctions, even as between co-defendants conducting a "joint defense") ("*Bonilla*").  Therefore, inherent

6   powers sanctions cannot be applied to me because any sanctionable misconduct shall not be delegated or

7   imputed to any other party or attorney. *Primus* and *Bonilla,* supra*; Chambers* at 37-42.  If Plaintiffs or Mr.

8   Henning acted sanctionably towards the Akeson's or the court, they are liable for such actions, not me.

9   IV. **<u>IN DETERMINING REASONABLE SANCTIONS UNDER THE INHERENT POWERS OF THE COURT,</u>**

10  **<u>THE COURT MUST FIRST DETERMINE IF LESSER REMEDIES WOULD BEFIT THE SANCTIONABLE</u>**

11  **<u>CONDUCT, INCLUDING NONMONETARY REMEDIES.</u>  First**, a court shall consider lesser sanctions

12  available to it before imposing more grievous sanctions, especially where less drastic alternatives to

13  sanctions, like a warning to the party, would resolve the potentially sanctionable conduct and prevent

14  undue prejudice to the non-offending party.  *Hamilton Copper & Steel Corp. v. Primary Steel, Inc.* (9th Cir.

15  1990) 898 F2d 1428, 1429-1430; *Hernandez v. City of El Monte* (9th Cir. 1998) 138 F3d 393, 399. It is

16  unfair to sanction me since I committed no sanctionable acts and received no warnings from the Court or

17  the Akeson's about my work being sanctionable. Given my very limited authority as fully discussed in this

18  Memo, it would be an inequitable use of the court's inherent sanctioning power to sanction me for the

19  allegedly offending actions which I had no control, authority or reasonable opportunity to affect.  **Second**,

20  the Akeson's have failed to prove that they have at all paid their fees and costs, or that such costs and fees

21  are reasonable – all of them are unreasonable because of the Akeson's attorneys' unreasonably high

22  hourly rate for his subpar work, Mr. Postar's excessive time spent filing frivolous and harassing pleadings

23  and letters related to these Sanctions Motions, filing streams of ridiculous motions in limine that were

24  virtually all denied by the court, filing discovery motions and drafting letters meant to attack Mr. Henning

25  during his family crisis, time spent trying to explain his client's destruction of the family laptop, filing Motions

26  to Dismiss (especially Mrs. Akeson's) and Summary Judgment Motions which were denied in large part,

27  unnecessarily prolonging litigation and avoiding Mr. Henning's valid discovery requests only to settle the

28  case for a trivial amount in the 11th hour (having intensely resisted settlement negotiations all along), and

28

1   then breaching the Settlement Agreement by bringing this Motion despite an agreement to the contrary.

2   <u>The Akeson's wasteful, dilatory and harassing litigation should be sanctioned, not rewarded.</u> **Finally**, "a

3   sanction which a party clearly cannot pay [by himself, even where joint and several liability is imposed to

4   multiple parties for the monetary sanctions,] does not vindicate the court's authority because it neither

5   punishes nor deters." So, the court should consider the fact that I am a 2007-licensed solo practitioner and

6   single father who affordably represents low-income clients and serves the public interest. I have an

7   extremely limited financial ability to pay the unmerited attorney's fees and costs of the Akeson's – which

8   approximate 3 or more times an entire year's gross salary for me and may bankrupt me. I do not own any

9   real estate. I own less than $45,000 total of all assets.  Thus, law and equity favor <u>denying</u> the Akeson's

10  motion.  *Martin v. Automobili Lamborghini Exclusive, Inc.* (11th Cir. 2002) 307 F3d 1332, 1337.

11  V.  **THE AKESON'S AND MR. POSTAR'S KNOWING FAILURE TO ABIDE BY THE REQUIREMENTS**

12  **OF THESE THREE DIFFERENT SANCTIONING THEORIES IS SANCTIONABLE.**  On August 12, 2009, I

13  sent Mr. Postar an email to notify him that this redundant Motion is sanctionable as noted herein.  (Exhibit

14  K).  I have incurred costs in defending these two motions for sanctions, comprised of $109.50 for a copy of

15  the 1/14/09 Transcript of the Akeson's Motion to Dismiss Hearing, travel costs to this court for both

16  sanctions hearings from Watsonville, CA totaling $186 (.50 cents per mile for a total of 352 miles, plus $10

17  in BART tickets), plus $32.88 in ECF and photocopying costs, **for a grand total of $328.38.**  (Exhibit L).

18  VI.  **THE AKESON'S AND THE PLAINTIFFS SIGNED A STIPULATED AGREEMENT WHICH FORBIDS**

19  **THIS MOTION FOR SANCTIONS.**  On 11/20/09, Plaintiffs filed the parties' Stipulation and Order

20  Dismissing Defendant C. Akeson.  On 11/20/09, this Court approved that Stipulation and closed this case.

21  That Stipulation expressly notes that the parties mutually waive "any claims for sanctions against the other

22  and/or their attorneys."  Since Mrs. Akeson is contractually barred from bringing this Motion against me (as

23  Plaintiff's former limited scope attorney), Mr. Akeson is also barred from doing so given the 7/9/09 Order.[3]

24  VII.  **THE AKESON'S MOTION FOR SANCTIONS IS BARRED BY *RES JUDICATA* AND COLLATERAL**

25  ────────────────────

26  [3] This Court's 7/9/09 Order denying Mr. Akeson's Motion for Sanctions noted that any new sanctions

27  motion by Mr. Akeson would be entertained *only* if there is **no** evidence against Mrs. Akeson **after trial**,
    thereby predicating any right that Mr. Akeson may have to bring a new sanctions motion such as this upon

28  any potential right of Mrs. Akeson to bring such a motion **after a trial** in which she is vindicated and no
    evidence is proffered against her.

29

1   **ESTOPPEL.  First**, the doctrine of *res judicata* promotes finality of judgments and judicial economy, and

2   bars redundant and piecemeal litigation, such as this Motion. *Jones v. Nesom* (E.D. Cal., 2009) 2009 WL

3   3698509 at 4 ("*Jones*"). Mr. Akeson's prior Motion for Sanctions filed on or about May 15, 2009 against me

4   in this case was based on identical claims and issues, identical facts and identical law as this present

5   motion, seeking sanctions against me under Rule 11, §1927, and the court's inherent sanctioning powers

6   based on my identical actions for the Plaintiffs and against the Akeson's. That prior Motion was heard and

7   denied by way of a final and valid judgment on the merits by this Court on 7/9/09. [4] *Id*. There were sufficient

8   procedural safeguards in place for the prior Motion and its hearing, and the Akeson's have already had

9   their chance to fully litigate these sanctions against me. It does not work any injustice upon them to bar

10  them from bringing this Motion against me again. To allow this redundant and untimely Motion to be

11  litigated again against me brings an injustice upon me.  My work in this case ceased as of 11/19/08. All its

12  elements being satisfied, the doctrine of res judicata bars the Akeson's and each of them from litigating this

13  redundant Motion against me.  Also, as detailed in this Memo, since Mrs. Akeson could have and should

14  have brought a Motion for Sanctions against me at the time of Mr. Akeson's first Motion for Sanctions, but

15  she failed to do so, thus she is barred by *res judicata* as well from bringing this untimely Motion. *Id*. at 6.,

16  *Clark v. Yosemite Community College Dist*. (9th Cir.1980) 785 F.2d 781, 786-787 ["the doctrine of res

17  judicata applies not only to those claims actually litigated in the first action but also to those which might

18  have been litigated as part of that cause of action."]; *Kootenai Elec. Co-op. Inc. v. Lamar Corp* (Idaho,

19  2009) WL 3153077 at 4 ("*Lamar*"). Even though the Akeson's are asking for more monetary damages now

20  than they did in their prior identical Motion for Sanctions, they are still barred by *res judicata*.  *Lamar* at 7

21  ["the rule against splitting a claim applies even though the remedies or form of relief demanded in one suit

22  are different from those demanded in another."].  **Second**, the Akeson's are barred from litigating this

23  redundant Motion against me by the doctrine of Collateral Estoppel. Mr. Akeson litigated that first Motion

24  against me based on the identical 3 sanctioning theories and my work for the Plaintiffs. This Court heard

25

26  ────────────────

27  4 "The "prerequisite elements" to apply the *res judicata* doctrine to an entire cause of action or one or more
    issues are: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior
    proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against

28  whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding."" *Jones* at
    4.

and denied that motion, finding that I acted reasonably and in good faith in my work against the Akeson's; the issues therein were essential to this Court's 7/9/09 final judgment on the merits. Mrs. Akeson is a party who was privy to and a beneficiary of Mr. Akeson's prior Motion for Sanctions against me. Specifically, the Akeson's liability in this action is inextricably tied together by the facts and by their mutual defense efforts in this litigation.[5] Also, Mr. Akeson's prior motion was based on my alleged misdeeds against both the Akeson's; thus, Mr. Akeson represented both the Akeson's interests and sought to vindicate both himself and his wife by way of that prior Sanctions Motion. Had he won, both his and his wife's legal fees, which are one and the same (as noted in the 7/9/09 Order, pp. 2, ll. 1), would have been awarded to them by this Court. Further, as the wife and codefendant of Mr. Akeson, Mrs. Akeson had equal control over the prior Sanctions Motion and was affected by the outcome of that motion equally to Mr. Akeson. Therefore, since Mr. Akeson's prior identical Motion for Sanctions was litigated and denied via a final valid judgment, and Mrs. Akeson was in privity to Mr. Akeson in that Motion, the Akeson's and each of them are collaterally estopped from bringing this redundant Motion against me.[6] *County of Imperial v. Farmer, Sinclair* (Cal.App. 4 Dist., 1988) 205 Cal.App.3d 479, 486, fn. 3 (quoting *Southwell v. Mallery, Stern & Warford* (1987) 194 Cal.App.3d 140, 144) ("*Farmer*").

## PRAYER

Since I have not committed any sanctionable acts, for all the reasons above and for any further reasons that I may present at a hearing on this Motion, I respectfully pray the Court to rule in my favor in this Motion and thus **DENY WITH PREJUDICE the Akeson's Motion for Sanctions** against me. I pray for such other relief as this Court deems appropriate in its discretion, and to grant my costs of defending myself here (i.e., **$328.38**). I declare under penalty of perjury and by the laws of the USA that all the facts alleged above and in the Declaration of Ali Ebrahimzadeh are true and correct to the best of my knowledge.

Respectfully Submitted,

/s/  Ali Ebrahimzadeh, Esq.    December 11, 2009

---

[5] Please See FN 4.

[6] "A party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." *Farmer* at 486, fn. 3.