```
 1  JOHN F. PRENTICE, ESQ. SBN 087606
    ROBERT D. POSTAR, ESQ. SBN 103538
 2  JOHN F. PRENTICE & ASSOCIATES, P.C.
    2200 Powell Street, Suite 740
 3  Emeryville, CA 94608
    Telephone: (510) 420-9000
 4  Facsimile: (510) 597-0718

 5  Attorneys for Defendants,
    DAVID AKESON AND CRISTINA AKESON
 6

 7

 8                      UNITED STATES DISTRICT COURT

 9                     NORTHERN DISTRICT OF CALIFORNIA

10  JAMES TALADA, III, and MELODY           CASE NO. C08-02771 WHA
    LABELLA
11
                    Plaintiffs,             SUPPLEMENTAL DECLARATION OF
12                                          ROBERT D. POSTAR, ESQ. IN
            vs.                             SUPPORT OF DEFENDANT CRISTINA
13                                          AKESON'S MOTION FOR MONETARY
    CITY OF MARTINEZ, CALIFORNIA; CITY      SANCTIONS PURSUANT TO FRCP
14  OF MARTINEZ POLICE DEPARTMENT;          RULE 11, 28 USC §1927 AND THE
    CHIEF DAVE CUTAIA, Martinez Chief of    COURT'S INHERENT AUTHORITY TO
15  Police; SERGEANT GARY PETERSON, a       IMPOSE SANCTIONS
    Martinez Police Officer; COMMANDER
16  MARK SMITH, a Martinez Police Officer;  Date: January 7, 2010
    GUARDSMARK GP, LLC, a California        Time: 8:00 a.m.
17  Corporation and Parent Corporation for
    Guardsmark, LLC; GUARDSMARK, LLC, a     Courtroom 9, 19th Floor,
18  California Corporation; CRISTINA AKESON,450 Golden Gate Ave.
    a Guardsmark employee and Security Guard;San Francisco, CA
19  and DOES 1 through 100, inclusive,
                                            Honorable William H. Alsup
20                  Defendants.
                                         /
21
22
23
24
25
26
27
28
```

I, ROBERT D. POSTAR, ESQ., declare:

1. I am an attorney duly licensed to practice before all of the courts of the State of California and the United States District Court for the Northern District of California and am the senior associate of the law firm of John F. Prentice & Associates, P.C., attorneys of record for Defendants CRISTINA AKESON and DAVID AKESON ("Defendants Akeson").

2. I have personal knowledge of the matters stated in this declaration, and, if called upon to testify, I could and would be able to testify competently regarding the matters set forth in this declaration.

3. Attached herewith as Exhibit M and incorporated herein by this reference as if set forth in its entirety is a true and correct copy of additional excerpts from the Deposition of David Akeson, Vol. II, dated July 22, 2009. These excerpts respond to issues raised in Attorney Henning's Opposition Brief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on December 24, 2009, at Emeryville, California.

                               _ROBERT D. POSTAR_
                               ROBERT D. POSTAR

Page 48

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

    JAMES L. TALADA, III, and MELODY LaBELLA,
 4                                   Case No. C08-02771 WHA
            Plaintiffs,
 5                                           Volume II
    vs.
 6                                   Pages 48 - 140
    CITY OF MARTINEZ, CALIFORNIA; CITY OF MARTINEZ
 7  POLICE DEPARTMENT; CHIEF DAVE CUTAIA, Martinez
    Chief of Police; SERGEANT GARY PETERSON, a Martinez
 8  Police Officer; COMMANDER MARK SMITH, a Martinez
    Police Officer; GUARDSMARK GP, LLC, a California
 9  Corporation and Parent Corporation for Guardsmark,
    LLC; GUARDSMARK, LLC, a California Corporation;
10  CRISTINA AKESON, a Guardsmark employee and Security
    Guard; and DOES 1 through 100, inclusive,
11
            Defendants.
12  _____/

13  CRISTINA AKESON,

14          Cross-Claimant,

15  vs.

16  GUARDSMARK GP, LLC, a Delaware Limited Liability
    Company; GUARDSMARK, LLC, a Delaware Limited
17  Liability Company,

18          Cross-Defendants.
    _____/
19
          CONTINUED DEPOSITION OF DAVID AKESON
20
    DATE:          July 22, 2009
21  TIME:          10:10 a.m.

22  LOCATION:      JOHN F. PRENTICE & ASSOCIATES
                   2200 Powell Street, Suite 740
23                 Emeryville, California  94608

24  REPORTED BY:   Katy Leonard
                   Certified Shorthand Reporter
25                 License Number 11599
```

Page 49

1           A P P E A R A N C E S
2
3  For the Plaintiffs, James L. Talada, III, and Melody
   LaBella:
4
            JOHN F. HENNING, III, ESQ.
5           LAW OFFICES OF JOHN F. HENNING, III
            1337 Oak Street
6           San Francisco, California   94117
            (415)255-7675
7           (415)255-7676 (Fax)
            henninglawfirm@hotmail.com
8
9
10 For the Defendant and Cross-Claimant, Cristina Akeson,
   and Deponent, David Akeson:
11
            ROBERT D. POSTAR, ESQ.
12          JOHN F. PRENTICE & ASSOCIATES
            2200 Powell Street
13          Suite 740
            Emeryville, California   94608
14          (510)420-9000
            (510)597-0718 (Fax)
15          rpjfprenticelaw@yahoo.com
16
17
   Also present:
18
            JAMES L. TALADA, III
19          Plaintiff
20
            MELODY LaBELLA
21          Plaintiff
22
            CRISTINA AKESON
23          Defendant and Cross-Claimant
24
25              ---oOo---

```
 1                        I N D E X

 2                                                    PAGE

 3   CONTINUED EXAMINATION BY:

 4       MR. HENNING                                    51

 5
                            ---oOo---
 6

 7

 8

 9                       E X H I B I T S

10                                                    PAGE

11   PLAINTIFFS' EXHIBIT:

12       36   United States Civil Court Subpoena In A   51

13            Civil Case, 4 pages

14
         37   Packet of receipts from newegg.com,       54
15
              27 pages
16

17            (Exhibits attached to the transcript)

18
                            ---oOo---
19

20

21

22

23

24

25
```

Page 51

1        (Whereupon Plaintiffs' Exhibit 36
2          was marked for identification.)
3
4              DAVID AKESON,
5  called as a witness by the Plaintiffs, who, having been
6  duly resworn by me, was examined and testified as
7  hereinafter set forth.
8                ---oOo---
9
10
11  CONTINUED EXAMINATION BY COUNSEL FOR THE PLAINTIFFS
12
13        MR. HENNING: Good morning, Mr. Akeson.
14        Before we go forward, I guess we should state
15  appearances and then discuss the fact that some other
16  counsel aren't here.
17        John Henning for the Plaintiffs.
18        MR. POSTAR: Robert Postar for Cristina
19  Akeson, and counsel today for David Akeson in this
20  deposition.
21        MS. LaBELLA: Melody LaBella.
22        MR. TALADA: James Talada.
23        MS. AKESON: Cristina Akeson.
24        THE WITNESS: Dave Akeson.
25        MR. HENNING: And then we did -- Counsel

Page 52

1  received E-mails from Noah Blechman representing City of
2  Martinez defendants, and Jenny Li representing
3  Guardsmark defendants. Jenny Li said they would not be
4  attending. Noah Blechman said they would possibly be
5  attending, but if they were late to start without them,
6  because they may not show up.
7  BY MR. HENNING:
8      Q.  Mr. Akeson, is there any reason you feel today
9  you can't have this deposition go forward?
10     A.  No.
11     Q.  You feel okay healthwise?
12     A.  Healthwise?
13     Q.  Yes.
14     A.  Yes.
15     Q.  Okay. Great.
16         MR. POSTAR: Counsel, one note I wanted to
17 make. Handing you -- this is the per diem mileage and
18 fees for David Akeson. The total mileage and fees is
19 $89.50.
20         MR. HENNING: Okay.
21         MR. POSTAR: We're requesting those fees, but
22 we'll be happy to accept the check from you by mail.
23         MR. HENNING: That's fine.
24         And it's my understanding we did provide the
25 check when he was initially served, so we can figure out

Page 53

```
 1  if there's a deduction to be made.  But we're agreeable
 2  to pay these per diem and mileage fees.
 3          MR. POSTAR:  Great.  Thank you.
 4  BY MR. HENNING:
 5      Q.  Mr. Akeson, if I could have you look at
 6  Exhibit 36 in front of you.  I'll represent that's a
 7  copy of a subpoena.
 8          When you're done looking at it, let me know.
 9  The first question I'll be asking you is whether you've
10  seen this document before, or a copy of this document.
11      A.  (Witness reviews the document.)
12      Q.  Is this a document you've seen before?
13      A.  It looks like a subpoena that I received for a
14  deposition.
15      Q.  All right.
16          Did an individual hand this to you in the last
17  few months?
18          In other words, were you served with it?
19      A.  Um, I believe we were.  I'm not positive.
20      Q.  Okay.
21          Well, do you --
22          MR. POSTAR:  In any event, Counsel, he's
23  appearing at this deposition per the subpoena.
24          MR. HENNING:  I'm aware of that.
25          MR. POSTAR:  Okay.
```

1    A.   No.

2    Q.   Aside from your son, has anyone done any work
3 on your computers from January 1st, 2006 to the present?

4    A.   No.

5    Q.   Now, could you explain to me -- looking at
6 Exhibit 37, what do those documents reflect, basically?

7    A.   You had asked for a clarification on what
8 happened with our computer, and this document is a group
9 of receipts for parts.

10   Q.   Is there any receipt in here for a new
11 computer purchase?

12   A.   Parts.

13   Q.   Well -- okay.

14        So, is it fair to say, then, that there's no
15 receipt here showing a receipt for the purchase of a
16 brand-new computer?

17   A.   The parts that would be making up a computer.

18   Q.   Again -- so, yes or no, is there any receipt
19 in here showing the purchase of a brand-new computer?

20   A.   You're saying a whole computer --

21   Q.   Correct.

22   A.   -- as a single piece?  No.

23   Q.   And is it your testimony -- well, tell me,
24 after -- from January of 2007 to the present time, when
25 was the first time, to your knowledge, that you were

```
 1   having computer problems?
 2        A.  We've -- I'm sure like anybody else has
 3   computer problems here and there.  The computer had been
 4   getting worse and finally died in February of '08.
 5        Q.  And you say "died."
 6            What specifically -- what do you mean when you
 7   say "died"?
 8        A.  I'm not good enough with computers to be able
 9   to tell you.  I do know that the hard drive died.
10        Q.  And is that based on information that your son
11   told you?
12        A.  The hard drive fried.
13        Q.  Well, how do you know the hard drive fried?
14        A.  Because it didn't do anything.  It would take
15   electricity, but it wouldn't even come up on the screen.
16        Q.  And so, what steps did you take at that time
17   in February of 2008 to fix the computer?
18        A.  There's a receipt for February of '08 showing
19   a group of parts.
20        Q.  Is this -- it gives a date, February 18th,
21   2008?
22        A.  Mm-hm.
23        Q.  Is that a "yes"?
24        A.  Yes.
25            And with those parts, then, the computer was
```

1   assembled.
2       Q.  And so, I guess, turning through these
3   documents, I find a bill.  It totals 278.51 at the
4   bottom.  Take your time, if you can find that.
5       A.  What's the date on that one?
6       Q.  This says, "Submitted February 16th, 2008."
7       A.  Yes.  Mm-hm.
8       Q.  So, take your time to find that.
9       A.  Let's see.  This would be --
10      Q.  It's about halfway through the pile.
11      A.  Most of these are David working on his own
12  computer.  Here we go.  (Indicating)
13          MR. POSTAR:  Is this the page you're --
14          MR. HENNING:  Yes.
15          I'll read it into the record.  There's
16  handwriting on the top.  It says, "For office, hyphen,
17  rebuild."  And, "Order No. 91027588."
18  BY MR. HENNING:
19      Q.  Looking at this page, are these the items, to
20  your knowledge, that were purchased in or about February
21  of 2008 when the hard drive had problems?
22      A.  That's correct.
23      Q.  And who actually decided to purchase these
24  items?
25          Is this your son who --

1    A.  Yes.
2        He picked the parts and got them and put them
3    together.
4    Q.  And then did he do the actual installation of
5    these parts on your computer?
6    A.  Correct.
7    Q.  And then to your knowledge, did he transfer
8    any data from the -- as you put it -- fried hard drive
9    to the newly purchased hard drive?
10   A.  No.
11       The fried hard drive was fried and not usable,
12   not accessible in any way.
13       What he did do was, on the new hard drive, use
14   a disk from many months earlier of the bid -- contract
15   bids, and installed that on there so I would have my
16   bids.  Unfortunately, this record was many months old,
17   so I'm missing some of them.
18   Q.  And then once that occurred in February, 2008,
19   were there any other significant computer issues that
20   arose subsequently?
21   A.  Well, later on in '08 back in December.
22       It's further back in the pages there.
23   Q.  And what happened in December of '08?
24   A.  The newer hard drive died again.  So, the
25   other parts around it were okay, but the newer hard

Page 116

1  drive died.
2      Q.  Well, I'm looking -- it's basically the --
3      A.  Let's see.  Back here.  (Indicating)  Way
4  back.  It says, "Office" up on top.
5      Q.  Right.
6          Is this the December 26th, 2008?
7      A.  Correct.
8      Q.  Order 13035 -- sorry -- 13036576.
9          Could you -- in your own words, could you
10 explain what this receipt reflects?
11     A.  Well, basically, this is a side part for
12 Vista, because there was -- down -- a handwritten note
13 just under the parts box.  XP was no longer supported
14 online.  And so, he had to buy some fresh hardware and
15 make the new one work.  It doesn't show a hard drive
16 being purchased again.
17         What happened was, during his own rebuilding
18 of his own machine, he had a spare hard drive, and with
19 this breakdown, then I got his old, used hard drive.
20     Q.  Well, so, at any time in 2008, did you
21 actually purchase a new computer?
22         I'm not talking about parts or hard drives or
23 anything.  I'm talking about a complete computer.
24     A.  A whole computer that people see on shelves,
25 no.  These were components that were put together -- the

Page 117

1   box, the hard drive, the other components.
2       Q.  So, is it fair to say there -- well, looking
3   at this receipt, noting that it says, "Software return
4   policy," and it says, "Microsoft Windows Vista Home
5   Basic," it's your understanding that this receipt
6   actually just refers to the actual computer software and
7   not a hard drive.
8       A.  Not a hard drive, correct.
9       Q.  Are you aware of any documentation existing
10  showing that a -- that there was a new hard drive or
11  another hard drive used to replace the one in your
12  computer in December of 2008?
13      A.  Way back at the beginning.
14      Q.  Well, right.  Aside from that one.
15      A.  Um, there -- he had -- Dave had a leftover
16  hard drive after his.  So, the second time mine broke
17  down, I got his leftover hard drive.
18          This is why it was hard to explain all this at
19  the first deposition.
20      Q.  Well, did you make any efforts to return the
21  Western Digital Caviar hard drive which you purchased in
22  February of 2008 after it had problems?
23      A.  No.
24      Q.  If I could have you look at the next page
25  after this -- this is the February 16th, 2008 invoice.

Page 118

1  If you'd turn to the next page -- sorry. You turned one
2  too far.
3       A.   Wait a minute.
4            February of '08?
5       Q.   Yes.
6       A.   Okay.
7            And the one after that?
8            So, we're looking at May of '08?
9       Q.   Never mind. I'll withdraw the question.
10           In December of 2008, what specifically was it
11  that malfunctioned in your computer?
12      A.   Um --
13           MR. POSTAR: Well, I'm going to object to the
14  extent it calls for expert testimony. You're entitled
15  to his understanding.
16           MR. HENNING: Of course. And if he doesn't
17  know, he can say so, Counsel. Please stop coaching the
18  witness. We know he's not a computer expert.
19           MR. POSTAR: I'm not coaching the witness. I
20  made the objection.
21  BY MR. HENNING:
22      Q.   What was it that, to your understanding,
23  malfunctioned with the computer in December of 2008?
24      A.   In December, the new -- newer hard drive that
25  we had just purchased some months before, it apparently

Page 119

1  was a not real good hard drive and it also fried.
2      Q.  So, just so I'm clear:  When you testified in
3  January 22nd, 2009 that you bought a new computer, that
4  is actually incorrect in that you only bought computer
5  parts.
6      A.  Right.
7          Do you remember my confusion and not really
8  knowing the whole history of it?  And this is why.
9  There's many factors going into this.
10     Q.  But it's fair to say in the second half of
11 2008, all you bought was new software for the computer,
12 because the hard drive was one your son had; right?
13     A.  The -- up until December was the one we had
14 purchased, and then in December, that one also got
15 destroyed, and so, the one that went in in December was
16 his old, used hard drive.
17     Q.  Are you aware that your -- do you have any
18 knowledge that your wife bought a voice-activated
19 recording device in 2006?
20     A.  No.
21     Q.  Did you ever at any time find a
22 voice-activated recording device in your vehicle in
23 2006?
24     A.  No.
25         I wouldn't know it if I looked at it, no.

1  computer -- computer part, computer-repair issues
2  referred to?
3       A.  To my knowledge, this is it.
4       Q.  Okay.
5           And when you say, "this is it," you're
6  pointing to Exhibit?
7       A.  37.
8       Q.  37.  Okay.
9           MR. HENNING:  What I'll do now is we'll
10 suspend the deposition.
11          MR. POSTAR:  Well, you either complete it or
12 you don't complete it.
13          Is it over?
14          You done?
15          MR. HENNING:  I'm suspending it based on
16 this -- there's a questionable production and compliance
17 issues relating to Category No. 6.
18          MR. POSTAR:  Okay.
19          So, you're suspending it subject to bringing a
20 motion to compel.  That's --
21          MR. HENNING:  You're putting words in my
22 mouth, Counsel.  I said I'm suspending the deposition.
23          MR. POSTAR:  Okay.
24          We consider the deposition to be completed.
25 If you want to get Mr. Akeson back, you're going to need

Page 136

1  to bring a motion. Okay.
2          THE REPORTER: Mr. Postar, would you like a
3  copy of this deposition?
4          MR. POSTAR: Yes.
5          THE REPORTER: Thank you.
6          (Whereupon, at 12:53 p.m., the deposition
7          of DAVID AKESON was adjourned.)
8                      ---oOo---
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATION OF DEPOSITION OFFICER

    I, KATY LEONARD, CSR, duly authorized to administer oaths pursuant to Section 2093(b) of the California Code of Civil Procedure, hereby certify that the witness in the foregoing deposition was by me sworn to testify to the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of the said witness was thereafter transcribed by means of computer-aided transcription; that the foregoing is a full, complete, and true record of said testimony; and that the witness was given an opportunity to read and correct said deposition and to subscribe the same.

    I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, or in any way interested in the outcome of this cause named in said caption.

Katy Leonard

CSR No. 11599